EXECUTION VERSION

# AIRCRAFT OPERATING LEASE AGREEMENT

dated as of June 9, 2014

between

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**,
not in its individual capacity,
but solely as trustee under the Trust Agreement,
as Lessor

and

**FRONTIER AIRLINES, INC.**,
as Lessee

———————————————

Relating to the leasing of one ex-factory new Airbus A320-200
Aircraft manufacturer's serial number 6184

———————————————

THIS LEASE HAS BEEN EXECUTED IN SEVERAL COUNTERPARTS.  TO THE EXTENT, IF ANY, THAT THIS LEASE CONSTITUTES CHATTEL PAPER (AS SUCH TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS LEASE MAY BE PERFECTED THROUGH THE TRANSFER OR POSSESSION OF ANY COUNTERPART HEREOF OTHER THAN THE ORIGINAL EXECUTED COUNTERPART HEREOF CONTAINING THE RECEIPT THEREFOR EXECUTED BY LESSOR OR, IF LESSOR HAS ASSIGNED ITS RIGHTS TO A THIRD PARTY IN ACCORDANCE WITH THIS LEASE, SUCH THIRD PARTY, IN EACH CASE ON THE SIGNATURE PAGE THEREOF.

#29720188_v4

**THIS AIRCRAFT OPERATING LEASE AGREEMENT** is made as of June 9, 2014 between **WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, a national banking association formed under the federal laws of the United States of America, not in its individual capacity (except when referred to as "**WFB**"), but solely as trustee under the Trust Agreement (as defined below) (the "**Lessor**"); and **FRONTIER AIRLINES, INC.**, a corporation incorporated under the laws of Colorado (the "**Lessee**").

**IT IS AGREED** as follows:

**Section 1** Interpretation.

1.1     Definitions.  In this Agreement, unless the context otherwise requires, capitalized words and expressions shall have the respective meanings given to them in paragraph 1 of Schedule 1.

1.2     Construction.  The conventions on construction and usage set out in paragraph 2 of Schedule 1 shall apply to this Agreement.

1.3     Sections and Schedules.  References in this Agreement to Sections or Schedules are, unless otherwise specified, references to Sections of and Schedules to this Agreement and together the Sections and Schedules shall constitute this Agreement.  Certain provisions including (without limitation) conditions precedent and representations and warranties have been placed in the Schedules but shall take effect as part of this Agreement as if fully set forth herein.

**Section 2** Agreement to Lease.  Subject to and in accordance with the terms and conditions of this Agreement, Lessor agrees to lease the Aircraft to Lessee and Lessee agrees to take the Aircraft on lease from Lessor, in each case for the Lease Period.

**Section 3** Delivery.

3.1     Delivery.  Subject to the terms and conditions of this Agreement, Lessor shall deliver and Lessee shall accept the Aircraft on lease on the Scheduled Delivery Date or such other date as the parties may agree.  Lessor shall immediately notify Lessee of the date that Airbus advises Lessor is the exact planned date of delivery of the Aircraft pursuant to the Aircraft Purchase Agreement.  Immediately following the transfer of title to the Aircraft to Lessor by Seller pursuant to the Aircraft Purchase Agreement, Lessor shall tender delivery of the Aircraft to Lessee under the Lease.  Upon such tender of delivery of the Aircraft by Lessor to Lessee, Lessee shall accept delivery of the Aircraft under the Lease, **as is, where is, in its then condition**.  Lessee shall effect acceptance of the Aircraft by execution and delivery to Lessor of the Lease Supplement.  Execution and delivery of the Lease Supplement shall be conclusive evidence that the delivery and acceptance of the Aircraft under this Agreement have taken place. Lessee's acceptance pursuant to the Lease Supplement shall be absolute, unconditional and irrevocable.

3.2     Delayed Delivery or Non-Delivery.  Lessee acknowledges that the Aircraft is currently being built for delivery to Seller, which is under contract to purchase the Aircraft from Airbus.  Lessee agrees that Lessor's obligation to deliver the Aircraft to Lessee under the

each such monthly period shall thereafter itself bear interest at the rate provided in this Section 8.2.

  8.3 <u>Absolute Obligations</u>.

  (a) <u>This Agreement is a Net Lease</u>.  Lessee shall be responsible for all costs associated with the delivery, possession, use, operation, ownership, management and return of the Aircraft, including, but not limited to, maintenance, insurance, import/export clearances and compliance with applicable laws and Airworthiness Directives (but excluding Taxes, which shall be governed by Section 21 of this Agreement, Lessor's contribution towards the costs of Airworthiness Directives as set forth in Schedule 18 and certain other amounts to be paid by Lessor as set forth herein).  Lessee's obligations under this Agreement and the other Operative Documents are absolute and unconditional, irrespective of any contingency or circumstance whatsoever, including (but not limited to):

  (i) any right of set-off, counterclaim, recoupment, reimbursement, defense or other right which Lessor or Lessee may have against the other or against any other person;

  (ii) any unavailability of the Aircraft for any reason, including, but not limited to, requisition of the Aircraft or any prohibition or interruption of or interference with or other restriction against Lessee's use, operation or possession of the Aircraft;

  (iii) any lack or invalidity of title or any other defect in title, airworthiness, merchantability, fitness for any purpose, condition, design, or operation of any kind or nature of the Aircraft for any particular use or trade, or for registration or documentation under the laws of any relevant jurisdiction, or any Total Loss in respect of or any damage to the Aircraft;

  (iv) any insolvency, bankruptcy, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceedings by or against Lessor or Lessee or any other person;

  (v) any invalidity, unenforceability, disaffirmance or lack of due authorization of, or other defect in, this Agreement or any other Operative Document; and

  (vi) any other cause or circumstance which (but for this provision) would or might otherwise have the effect of terminating or in any way affecting any obligation of Lessee under this Agreement or any other Operative Document.

  (b) Lessee hereby waives, to the extent permitted by applicable law, any and all rights which it may now have or which may at any time hereafter be conferred upon it (by law or otherwise) to terminate, cancel, quit or surrender this Agreement or any obligations imposed upon Lessee under this Agreement except as expressly provided in this Agreement.

(c) The provisions of this Section 8.3 shall not limit Lessee's right to take such legal action as Lessee shall deem appropriate as a consequence of a breach by Lessor or any other person of its obligations to Lessee under this Agreement, applicable laws or otherwise. Nothing contained in the preceding sentence shall relieve Lessee of its obligations under the Operative Documents while pursuing any such legal action.

8.4 Application of Payments by Lessor. If any sum paid to Lessor or recovered by Lessor in respect of the liabilities of Lessee under this Agreement is less than the amount then due, Lessor may apply that sum to amounts then due and owing under this Agreement in such proportions and order and generally in such manner as Lessor may determine.

8.5 Currency. All amounts payable under this Agreement shall be payable in United States dollars.

8.6 Lessor's Determination of Amounts Due. Any certificate or determination by Lessor as to any rate of interest or as to any other amount payable under this Agreement or any other Operative Document shall be (1) calculated as required by this Agreement in good faith by Lessor, (2) evidenced by a certificate of Lessor, if requested by Lessee, setting forth the relevant calculations and (3) in the absence of manifest error, conclusive and binding on Lessee.

8.7 Time for Payments. If any payment due under this Agreement or any other Operative Document (other than a payment of Rent) would otherwise be due on a day which is not a Business Day, it shall be due on the next succeeding Business Day (and no interest shall accrue on the amount of such payment from and after such scheduled date to such next succeeding Business Day), or, if that Business Day falls in the following month, or after the Expiry Date, on the preceding Business Day.

**Section 9** Lessor Covenants.

9.1 Quiet Enjoyment. Lessor agrees that provided no Event of Default has occurred and is continuing, neither Lessor, any Financing Party, nor any person lawfully claiming through or under Lessor or any Financing Party shall interfere with the quiet use, possession and enjoyment of the Aircraft by Lessee or any Permitted Sublessee during the Lease Period, provided, that if any of the insurance coverages required by Section 16 are not in effect, Lessor may require that the Aircraft be grounded during the period while such insurances are not in effect. The lawful exercise by Lessor of its rights in accordance with this Agreement or any other Operative Document will not constitute such an interference. Lessee agrees that its only right with respect to a default by Lessor under this Agreement, including a breach of the foregoing covenant, is to make a claim against Lessor for injunctive relief and/or actual damages resulting directly therefrom, all the foregoing in any event subject to Section 18.3 hereof.

9.2 Letter to Maintenance Provider. Lessor agrees it shall hold in escrow the letter delivered to it pursuant to Section 1(b)(viii) of Schedule 3 and may only deliver it to the relevant maintenance provider after an Event of Default shall have occurred and while such Event of Default shall be continuing and this Agreement shall have been declared in default (except in the case of an Event of Default under Section 20.1(g), in which case no such declaration is necessary).

  and as an Additional Insured will not constitute an increase in Lessee's obligations, liabilities or risks;

(vi) any Transfer shall not affect the U.S. registration of the Aircraft (assuming the Aircraft is registered in the U.S. at the time of the transfer) or the registration of the Aircraft in any other country where the Aircraft may be registered at the time of the Transfer;

Upon compliance by Lessor, Beneficiary and Transferee with the foregoing terms and conditions, and at Lessor's cost and expense (as provided herein), Lessee shall execute and deliver in connection with such Transfer such documents and assurances (including a consent to the Transfer) and take such further action as Lessor or Beneficiary may reasonably request to establish or protect the rights and remedies created or intended to be created in favor of the Transferee in connection with such Transfer.

  **Section 23** <u>Miscellaneous Provisions</u>.

   23.1 <u>Rights Cumulative, Waivers</u>.  The rights of Lessor and Lessee under this Agreement are cumulative, may be exercised as often as Lessor considers appropriate and are in addition to its rights under the general law.  The rights of Lessor against Lessee, of Lessee against Lessor, or in relation to the Aircraft (whether arising under this Agreement or the general law) shall not be capable of being waived or varied otherwise than by an express waiver or variation in writing; and in particular any failure to exercise or any delay in exercising any of such rights shall not operate as a waiver or variation of that or any other such right; any defective or partial exercise of any of such rights shall not preclude any other or further exercise of that or any other such right; and no act or course of conduct or negotiation on Lessor's or Lessee's part, as applicable, or on its behalf shall in any way preclude it from exercising any such right or constitute a suspension or any variation of any such right.

   23.2 <u>Delegation</u>.  Lessor may delegate to any person or persons all or any of its rights, powers or discretions vested in it by this Agreement, and any such delegation may be made upon such terms and conditions and subject to such regulations (including power to sub-delegate) as Lessor in its absolute discretion thinks fit.  Lessor shall remain liable to Lessee for all of Lessor's obligations and liabilities under the Operative Documents notwithstanding any delegation by Lessor to another person of any such obligations or liabilities or any reliance by Lessor on another person to perform or discharge any such obligations or liabilities, whether or not such sub-delegation or reliance is permitted or contemplated by any other Operative Document (provided that to the extent any such obligation or liability is actually performed or discharged by such other person on Lessor's behalf, such performance or discharge shall constitute performance or discharge of the corresponding obligation or liability of Lessor).

   23.3 <u>Lessor's Right to Remedy</u>.  If Lessee fails to comply with any provision of this Agreement, Lessor may, without being in any way obliged to do so or responsible for so doing and without prejudice to the ability of Lessor to treat such non-compliance as an Event of Default, effect compliance on behalf of Lessee, whereupon Lessee shall become liable, upon written demand of Lessor therefor, to pay immediately any reasonable sums expended by Lessor together with all reasonable, documented and out-of-pocket costs and expenses (including legal

Notwithstanding anything to the contrary set forth herein or in any other agreement to which the parties hereto are parties or by which they are bound, the obligations of confidentiality contained herein and therein, as they relate to the Operative Documents and the transactions contemplated therein (the "**Transaction**") shall not apply to the U.S. federal tax structure or U.S. federal tax treatment of the Transaction, and each party hereto (and any employee, representative, or agent of any party hereto) may disclose to any and all persons, without limitation of any kind, the U.S. federal tax structure and U.S. federal tax treatment of the Transaction. The preceding sentence is intended to cause the Transaction to be treated as not having been offered under conditions of confidentiality for purposes of § 1.6111-2(c) (or any successor provision) of the Treasury Regulations promulgated under Code § 6111, and shall be construed in a manner consistent with such purpose. In addition, each party hereto acknowledges that it has no proprietary or exclusive rights to the U.S. federal tax structure of the Transaction or any U.S. federal tax matter or U.S. federal tax idea related to the Transaction.

23.13   Variation. The provisions of this Agreement shall not be varied otherwise than by an instrument in writing executed by or on behalf of Lessor and Lessee.

23.14   Invalidity of any Provision. If any provision of this Agreement becomes invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired.

23.15   Survival. All indemnities and other obligations of Lessee, each Indemnitee and each Tax Indemnitee shall survive, and remain in full force and effect, notwithstanding the expiration or other termination of this Agreement and/or the leasing of the Aircraft hereunder.

23.16   True Lease. The parties intend and agree that this Agreement:

(i)   constitutes a "true lease" and not a "security interest" as defined in Section 1-201(37) of the UCC; and

(ii)   confers only a leasehold interest on Lessee in and to the Aircraft on and subject to the terms of this Agreement, and no ownership or other interest with respect to the Aircraft is provided to Lessee under this Agreement.

23.17   Section 1110. Lessee acknowledges that Lessor would not have entered into this Agreement unless it had available to it the benefits of a lessor under Section 1110 of Title 11 of the United States Code ("**Section 1110**"). Lessee covenants and agrees with Lessor that to better ensure the availability of such benefits, Lessee shall support any motion, petition or application filed by Lessor with any bankruptcy court having jurisdiction over Lessee whereby Lessor seeks recovery of possession of the Aircraft under Section 1110 and shall not in any way oppose such action by Lessor unless lessee shall have complied with the requirements of Section 1110 to be fulfilled in order to entitle Lessee to continued use and possession of the Aircraft hereunder. In the event Section 1110 is amended, or if it is repealed and another statute is enacted in lieu thereof, Lessor and Lessee agree to amend this Agreement and take such other action not inconsistent with this Agreement as Lessor reasonably deems necessary so as to afford to Lessor the rights and benefits that such amended or substituted statute confers upon owners and lessors of aircraft similarly situated to Lessor.

Aircraft Operating Lease Agreement

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date shown at the beginning of this Agreement.

LESSOR:

WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION, not in its individual capacity (except when referred to as "WFB"), but solely as trustee under the Trust Agreement

By: _____
Name: Joseph H. Pugsley
Title: Assistant Vice President

LESSEE:

FRONTIER AIRLINES, INC.

By: _____
Name:
Title:

- Signature Page -
- Aircraft Operating Lease Agreement -
- MSN 6184 -

Aircraft Operating Lease Agreement

**IN WITNESS WHEREOF** the parties hereto have executed this Agreement on the date shown at the beginning of this Agreement.

**LESSOR**:

**WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION**, not in its individual capacity (except when referred to as "**WFB**"), but solely as trustee under the Trust Agreement

By:_____
    Name:
    Title:

**LESSEE**:

**FRONTIER AIRLINES, INC.**

By: *[signature: Holly L. Nelson]*
    Name:
    Title: **Holly L. Nelson**
         **Chief Accounting Officer**
         **& Treasurer**