# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.                          Case No.:  1:20-cv-09713-LLS

            Plaintiff,

       -against-

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK,
N.A., solely in its capacity as OWNER
TRUSTEE,

           Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Neil S. Binder
Binder & Schwartz LLP
366 Madison Avenue, 6th Floor
New York, New York  10017
Telephone No.:  212.510.7008
Facsimile No.:  212.510.7299
Email:  nbinder@binderschwartz.com

Peter D. Hawkes
David G. Hosenpud (*pro hac vice*)
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, Oregon  97204-3158
Telephone No.:  503.778.2100
Facsimile No.:  503.778.2200
Email:  hawkesp@lanepowell.com
Email:  hosenpudd@lanepowell.com

*Counsel for Plaintiff Frontier Airlines, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................1

ARGUMENT ..................................................................................................................6

    A.    Defendants' Motion Improperly Attempts to Incorporate Documents. ................7

    B.    The Complaint States a Claim Against Accipiter and Vermillion. .........................9

    C.    Frontier Has Sufficiently Alleged a Claim for Breach of the Lease Agreements. ..........................................................................................................10

    D.    Frontier Has Sufficiently Alleged a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing. .......................................................................13

    E.    Frontier Has Sufficiently Alleged a Claim for Breach of the Covenant of Quiet Enjoyment. .......................................................................................15

    F.    Frontier Has Sufficiently Alleged a Claim for Promissory Estoppel. ..................17

    G.    Frontier Has Sufficiently Alleged a Claim for Fraud. ..........................................20

    H.    Accipiter, Vermillion, UMB, and Wells Fargo Are Necessary Parties and Should Not Be Dismissed. ..........................................................................23

CONCLUSION ..............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1301 Prop. Owner LP v. Abelson*,
    37 N.Y.S.3d 207 (N.Y. Sup. Ct. Apr. 1, 2016)..................................................................19

*A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC*,
    No. 17 Civ. 3529, 2018 WL 10517080 (E.D.N.Y. Mar. 6, 2018) ..........................17

*All-Year Golf, Inc. v. Prods. Invs. Corp.*,
    310 N.Y.S.2d 881 (App. Div. 1970).................................................................19

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)...............................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................6

*Ashland Inc. v. Morgan Stanley & Co., Inc.*,
    700 F. Supp. 2d 453 (S.D.N.Y. 2010)...............................................................17

*Atlas El. Corp. v. United El. Group, Inc.*,
    77 A.D.3d 859 (N.Y. App. Div. 2010) ..............................................................13

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ........................................................................10

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*,
    697 N.Y.S.2d 128 (App. Div. 1999).............................................................14, 15

*BankUnited, N.A. v. Blue Wolf Invs., LLC*,
    No. 18 Civ. 8196, 2019 WL 3416084 (S.D.N.Y. July 1, 2019) ...........................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6

*Brenner v. Brenner*,
    No. 10 Civ. 4857, 2012 WL 3597247 (E.D.N.Y. Aug. 20, 2012) ..........................17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................7, 8, 22

*Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*,
    434 F. Supp. 3d 95 (S.D.N.Y. 2020).............................................................10, 22

i

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*,
  97 A.D.3d 781 (N.Y. App. Div. 2012) ...............................................................13

*Envirotech Corp. v. Bethlehem Steel Corp.*,
  729 F.2d 70 (2d Cir. 1984)................................................................................9

*In re Food Mgmt. Grp., LLC*,
  425 F. App'x 54 (2d Cir. 2011) ........................................................................11

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*,
  7 N.Y.3d 96 (2006) ...................................................................................11, 19

*Gander Mountain Co. v. Islip U-Slip LLC*,
  923 F. Supp. 2d 351 (N.D.N.Y. 2013) ...........................................................20, 21

*Goel v. Bunge, Ltd.*,
  820 F.3d 554 (2d Cir. 2016)..............................................................................7

*Gutierrez v. Gov't Employees Ins. Co.*,
  136 A.D.3d 975 (N.Y. App. Div. 2016) .........................................................13, 14

*Hadami, S.A. v. Xerox Corp.*,
  272 F. Supp. 3d 587 (S.D.N.Y. 2017).............................................................7, 20

*Harris v. Provident Life & Accident Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002)..............................................................................14

*Herbert Paul, CPA, PC v. 370 Lex, L.L.C.*,
  794 N.Y.S.2d 869 (N.Y. Cty. 2005) .............................................................16, 17

*Kamco Supply Corp. v. On the Right Track, LLC*,
  49 N.Y.S.3d 721 (App. Div. 2017)....................................................................19

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007)..............................................................................7

*Leberman v. John Blair & Co.*,
  880 F.2d 1555 (2d Cir. 1989)..........................................................................14

*Matter of Niagara Frontier Transp. Auth.*,
  619 N.Y.S.2d 449 (App. Div. 1994) ..................................................................11

*Of A Feather, LLC v. Allegro Credit Servs., LLC*,
  No. 19 Civ. 9351, 2020 WL 3972752 (S.D.N.Y. July 14, 2020) ............................9

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019)..............................................................................8

022510.0155/8351346.11

*Plenitude Capital LLC v. Utica Ventures, LLC*,
   No. 18 Civ. 2702, 2020 WL 6255250 (E.D.N.Y. Oct. 23, 2020) ............................................9

*QK Healthcare, Inc. v. InSource, Inc.*,
   965 N.Y.S.2d 133 (App. Div. 2013).....................................................................................15

*Red Fort Capital, Inc. v. Guardhouse Prods. LLC*,
   397 F. Supp. 3d 456 (S.D.N.Y. 2019)...................................................................................10

*S.E.C. v. Miller*,
   808 F.3d 623 (2d Cir. 2015)..................................................................................................23

*Saggio v. Select Portfolio Servicing, Inc.*,
   No. 15 Civ. 4300, 2015 WL 6760132 (E.D.N.Y. Nov. 5, 2015)...........................................14

*Sherwood v. Gordon Bros., Inc.*,
   116 N.Y.S.2d 306 (City Ct. 1952) ........................................................................................11

*Telecom Int'l America, Ltd. v. AT&T Corp.*,
   280 F.3d 175 (2d Cir. 2001)..................................................................................................20

*Toto, Inc. v. Sony Music Entm't*,
   No. 12 Civ. 1434, 2012 WL 6136365 (S.D.N.Y. Dec. 11, 2012).........................................14

*Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.*,
   26 F. Supp. 2d 698 (S.D.N.Y. 1998).....................................................................................16

*United States v. Wells Fargo Bank, N.A.*,
   972 F. Supp. 2d 593 (S.D.N.Y. 2013), *abrogated in part on other grounds*,
   *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S.
   650 (2015)..............................................................................................................................22

**Statutes**

N.Y. U.C.C. §§ 2-A-102, 2-A-103 ................................................................................................18

N.Y. U.C.C. § 2-A-208(3) .............................................................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 8 ........................................................................................6, 9, 10

Federal Rule of Civil Procedure 9(b).........................................................................................6, 22

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................7

Federal Rule of Civil Procedure 12(d) ...........................................................................................8

Federal Rule of Civil Procedure 56 ................................................................................................7

## INTRODUCTION

Plaintiff Frontier Airlines, Inc. ("Frontier") respectfully submits this Memorandum of Law in opposition to the partial motion to dismiss ("Partial Motion") submitted by defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments Aircraft 4 Limited ("Accipiter"),[1] Vermillion Aviation (Two) Limited ("Vermillion"), UMB Bank, N.A., solely as owner trustee ("UMB"), and Wells Fargo Trust Company, N.A., solely as owner trustee ("Wells Fargo") (collectively, "Defendants"). Defendants seek dismissal in part of Frontier's complaint. Because Defendants' Partial Motion lacks any merit, it should be denied in its entirety.

## BACKGROUND

Frontier is a passenger airline, based in Denver, Colorado, that operates commercial passenger aircraft leased from various aircraft lessors. (Complaint ("Compl.") ¶¶ 1, 11.) Commercial airlines commonly rely on sale and leaseback arrangements with aircraft leasing companies to finance aircraft acquisition. (Compl. ¶ 27.) Under this arrangement, airlines such as Frontier will sell new aircraft that are on its own order book with an aircraft manufacturer to an aircraft leasing company, who will then pay the sale price directly to the aircraft manufacturer at the time of new aircraft delivery and then lease the new aircraft back to the airline. *Id.* AMCK, through its wholly controlled subsidiaries and owner trustee entities, owns and leases multiple aircraft to Frontier through sale and leaseback arrangements. (Compl. ¶ 11.) Unless and until a lessor pays the sale price to the aircraft manufacturer at the delivery, the airline remains fully responsible, through its separate agreement with the manufacturer, for the purchase of the aircraft. (Compl. ¶ 28.)

---

[1] Defendants refer to Accipiter as "Accipiter Investments Aircraft 4 Limited." (Partial Motion at 1.) To the extent Frontier has omitted the full name of Accipiter in the caption, Frontier will use the correct name in all pleadings hereafter.

For regulatory reasons, foreign leasing companies such as AMCK are required to use a U.S. owner trustee such as Wells Fargo and UMB to own a U.S. registered commercial aircraft. AMCK, through its subsidiaries, formed multiple owner trusts to hold aircraft leased to Frontier and the owner trustees serve as the lessor of each of the aircraft on behalf of AMCK. UMB and Wells Fargo each serve as the owner trustees of the aircraft in question. AMCK, either through its wholly owned subsidiaries or directly, controls each of the owner trustee lessors, and AMCK acts on behalf of the owner trustee lessors under each of the aircraft leases. (Compl. ¶¶ 11, 33, 64.)

On September 10, 2019, Frontier and AMCK executed a Letter of Intent ("LOI") to govern the financing of six new aircraft manufactured by Airbus S.A.S. ("Airbus"). (Compl. ¶ 29.) Around the time of the LOI execution, AMCK already owned and leased 14 aircraft to Frontier, making it the airline's largest lessor. (Compl. ¶ 30.) On March 15, 2020, the parties executed the March 2020 Framework Agreement ("Framework Agreement"), which obligated AMCK to purchase the six aircraft and lease the aircraft back to Frontier through owner trustee lessor UMB. (Compl. ¶ 33.)[2] The following day, when AMCK paid for and leased to Frontier the first of the six aircraft, MSN 10038, the parties executed the lease agreement for the MSN 10038. (Compl. ¶ 35.)[3]

---

[2] Under the Framework Agreement, "Lessor" is defined as the "Trust Company," which is in turn defined as UMB. The "Lessor Guarantor" is defined as the "Owner Participant" or "AMCK," where "Owner Participant" is also defined as AMCK or an affiliate. Defendants write that Vermillion, an AMCK affiliate, is the lessor guarantor of MSN 10038, and that Accipiter, another AMCK affiliate, acts as guarantor of certain other leases. (Partial Motion at 3, 5.) In other words, AMCK (or one of its affiliates) acts as guarantor for UMB, the lessor. The Framework Agreement further requires AMCK to cause UMB to purchase the aircraft and lease it to Frontier. Under the Trust Agreement, UMB acts only as the owner trustee for the benefit of AMCK (or its affiliate), who is the beneficial owner of each aircraft.

[3] Under the Lease Agreement, the Lessor (UMB) delegates to the "Servicer" (defined as AMCK) all rights, powers, or discretions vested in it by the Lease Agreement. UMB also designates AMCK to deal directly with the Lessee (Frontier) with respect to all legal, financial, and other matters.

2

As the COVID-19 pandemic began to impact the aviation industry, many airlines began to request rent deferrals and rent abatements from leasing companies. Given the gravity of the COVID-19 crisis, aircraft leasing companies were generally open to considering those requests with the goal of preserving long-term partnerships with airlines in order to maximize the leasing companies' own long-term economic interest. (Compl. ¶ 39.)

Frontier requested all of its lessors to consider offering a one-time, three-month rent deferral, in exchange for which Frontier would pay back the deferred amounts with interest. (Compl. ¶ 40.) Frontier made clear that lessors' participation was entirely voluntary, and that Frontier had no intention of withholding its own performance without the lessors' consent or rescinding any existing lease agreements. At the time of its request, Frontier was – and continues to be – current on all its rent payments. (*Id.*)

AMCK's response was to repudiate its obligation to take delivery of the five remaining new aircraft under the Framework Agreement and to extract new and onerous conditions from Frontier on existing aircraft leases (including leases that are not covered under the Framework Agreement), such as extending lease terms and removing early termination options in exchange for AMCK's retraction of its repudiation. (Compl. ¶¶ 41, 59.) AMCK also told Frontier that as a prerequisite for any further discussions, Frontier needed to obtain a six-month deferral of new aircraft deliveries from Airbus. AMCK made clear that regardless of what the Framework Agreement said, it would not take delivery of the aircraft as originally scheduled, one of which was ready for delivery in approximately one month. At the same time, AMCK informed Frontier that while it could consider granting the three-month rent deferrals on 14 aircraft delivered before 2020, this consideration did not extend to the one aircraft that was already leased under the 2020 Framework Agreement. (Compl. ¶¶ 41, 47, 50.)

Frontier began negotiating with Airbus on April 4, 2020, the day after receiving AMCK's demand.  (Compl. ¶¶ 51-52.)  In parallel, and over the span of more than one month, Frontier and AMCK negotiated over a global solution that would enable AMCK to retract its repudiation while accommodating Frontier's need for short term rent relief.  (Compl. ¶ 56.)  AMCK informed Frontier that it was temporarily suspending rent payments on 14 aircraft right around the time when the rent payments on several of those aircraft became due.  (Compl. ¶ 54.)  While AMCK initially offered not to take any adverse action based on non-payment of rent for a ten-business day period – ending April 21, 2020 – on these 14 leased aircraft to accommodate Frontier's efforts, the parties' clear understanding was that this timeframe was a placeholder given the high probability that negotiations with Airbus would take longer.  (Compl. ¶¶ 54-55.)  Indeed, AMCK represented on various occasions that Frontier did not need to make rent payments on these 14 aircraft while the parties were working out a solution.  (Compl. ¶ 56.)  The parties also agreed that Frontier needed to continue making rent payments on MSN 10038, the 15th aircraft, and Frontier has done so per the lease agreement for that aircraft since the beginning of that aircraft's lease term.

The parties exchanged frequent emails and other communications regarding business solutions including rent deferrals and contract term modifications and both sides appeared to be working in good faith to come to an agreement on the terms and conditions.  They exchanged several rounds of proposals and on April 30, 2020, AMCK encouraged Frontier regarding the negotiations with Airbus.  AMCK informed Frontier that, in exchange for extending Frontier's timeline to conclude the Airbus delivery deferral negotiations, and as part of a proposal for the previously deferred rent payments, Frontier needed to make a catch-up payment by May 15, 2020.  (Compl. ¶ 58.)  Frontier advised AMCK on May 5, 2020, that Airbus had agreed to a partial

deferral of deliveries, and the parties continued to negotiate. (Compl. ¶ 60.) Notwithstanding this benefit conferred to AMCK, AMCK still did not agree to retract its repudiation of the Framework Agreement. Instead, AMCK attempted to extract even more economic benefits that it was not otherwise entitled to under any of the contracts. AMCK continued to insist on substantial commercial changes to the Framework Agreement and to the lease agreements as conditions for its retraction of its repudiation and while doing so, led Frontier to believe that so long as Frontier remained engaged in the active negotiations and followed AMCK's instructions, it was possible that the parties could eventually come to a business solution that would result in AMCK agreeing to take deliveries of the remaining aircraft. Although such a solution would result in material changes to the Framework Agreement and the aircraft lease agreements that would solely benefit AMCK, Frontier believed it was the most prudent commercial decision given that it would be extremely challenging for Frontier to seek alternative financing within such a short timeframe. (Compl. ¶¶ 61, 62.)

Instead, on May 8, 2020, while the parties were still negotiating a solution, and without any preceding warning or request for immediate payment, AMCK sent a notice of termination to Frontier asserting that Frontier had defaulted under 14 aircraft leases by not paying the temporarily deferred rent on each of the 14 aircraft. AMCK then used these alleged defaults to declare an event of default on behalf of the owner trustee lessor under the lease agreement for the MSN 10038 aircraft on which Frontier was current on all payments, and the only aircraft covered under the Framework Agreement. AMCK contended that the alleged default of the MSN 10038 lease agreement in turn constituted an Event of Default under the Framework Agreement that gave AMCK the right to terminate. (Compl. ¶¶ 63-65.)

5

In sum, AMCK responded to Frontier's request for an optional and temporary rent deferral on existing aircraft leases by anticipatorily repudiating a separate agreement that Frontier is and was duly performing, and forcing Frontier into high-pressure negotiations with Airbus at the significant risk of breaching Frontier's own obligations owed to Airbus.  AMCK attempted to extract concessions and significantly more favorable terms while Frontier worked in good faith to obtain the deferral from Airbus.  Based on AMCK's promises, Frontier temporarily suspended rent payments based on AMCK's promises, only to learn later that AMCK not only refused to retract its anticipatory repudiation but also justified its own breach by accusing Frontier of failing to make rent payments on time.  AMCK's clear purpose throughout the negotiations was to mislead Frontier into a false sense of security that the parties would come to an agreement and that Frontier could suspend its rent payment until May 15, 2020.  Instead, AMCK leveraged Frontier's good faith reliance to justify its repudiation, leaving Frontier in the untenable position of seeking new financing on short notice.  (Compl. ¶¶ 60, 62, 69-74.)  While Frontier did obtain alternative financing, it did so at great additional cost.  (Compl. ¶¶ 75-78.)

Frontier filed this action shortly thereafter.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court accepts all well-pleaded factual allegations as true but need not accept legal conclusions as true.  *Twombly*, 550 U.S. at 555.  Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") further requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud."  Under Rule 9(b), the plaintiff must "detail the fraudulent

statements, identify the speaker, state when and from where the statements were made, and explain why the statements are fraudulent." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 599 (S.D.N.Y. 2017).

In ruling on a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[4] ("Rule 12(b)(6)"), the court "draw[s] all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). As explained below, the Complaint more than clears the hurdle of plausibility under both Rule 8 and Rule 9(b), and the Partial Motion should be denied in its entirety.

A.    **Defendants' Motion Improperly Attempts to Incorporate Documents.**

As an initial matter, Frontier objects to Defendants' transparent attempt to turn a partial motion to dismiss into an untimely summary judgment motion by way of cherry-picked and excerpted exhibits, none of which are properly before the court.

A motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "The test of a claim's 'substantive merits' is 'reserved for the summary judgment procedure, governed by Federal Rule of Civil Procedure 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" *Id.* at 558-59 (quoting *Global Network Commc'ns, Inc.*, 458 F.3d at 155) (alteration omitted).  In contrast, because a Rule 12(b)(6) motion challenges the sufficiency of the plaintiff's complaint, only documents "appended to the complaint or incorporated in the complaint by reference," *id.* (internal quotation marks omitted), or otherwise "integral to the complaint," *Chambers v. Time Warner,*

---

[4] Although Defendants do not cite the federal rule under which they make their Partial Motion, it appears to be a motion under Rule 12(b)(6).

*Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), are before the Court. To be integral, the complaint must do more than cite it or even quote it – it must "rel[y] heavily upon its terms and effect." *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).

Defendants have submitted, as exhibits to a declaration (Dkt. No. 39 ("Butler Declaration")), nine documents, including excerpts from the Framework Agreement and lease agreement for the MSN 10038, excerpts from other agreements between the parties, the notice of termination, and email correspondence dated April 9, 2020, and April 30, 2020. None of these documents are properly before the Court. The Complaint does not "rel[y] heavily upon [the] terms and effect" of the terms of the contracts, *id.*, but rather alleges, among other claims, that Defendants repudiated their contracts, causing damages. While Frontier expects the many internal emails and other communications including those between the parties from between March 2020 and May 2020 to prove its claims, those emails and communications are far more extensive than the two email chains submitted by Defendants. Nor are those two particular email chains integral to the Complaint, which does not even quote, much less rely upon, the April 9, 2020, email. And while the Complaint does discuss the April 30, 2020, email, it is clear from the Complaint that that email is just one piece of evidence of Defendants' course of conduct.

For these reasons, Frontier respectfully requests that the Court disregard the exhibits. To the extent the Court chooses to rely on the exhibits, Frontier requests notice and the opportunity to conduct full discovery and present additional material in accordance with Federal Rule of Civil Procedure 12(d). *See Palin v. New York Times Co.*, 940 F.3d 804, 812 (2d Cir. 2019). At this stage, however, Frontier submits that the exhibits presented by Defendants only support its claims, as discussed in more detail below.

**B.**     **The Complaint States a Claim Against Accipiter and Vermillion.**

Defendants argue that Counts One and Two may only be asserted against AMCK, and not Accipiter or Vermillion. Defendants' arguments are misguided.

Defendants first argue that a non-signatory to a contract cannot be named in a breach of contract action unless it has assumed or been assigned the contract. To the contrary, Accipiter and Vermillion, as alleged in the Complaint, have rights and obligations arising from the contracts at issue here. (Compl. ¶¶ 23-24 (providing that both "irrevocably and unconditionally guarantee[] the due and punctual payment and performance of all of the lessor's obligations" under the lease agreements).) Frontier expects discovery to shed light on the parties' relationships, but at this stage, the Complaint sufficiently alleges their involvement. *See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (sole obligee on contracts possessed rights such that it could be an indispensable party); *BankUnited, N.A. v. Blue Wolf Invs., LLC*, No. 18 Civ. 8196, 2019 WL 3416084, at *7 (S.D.N.Y. July 1, 2019) (guarantor defendants contractually responsible for loan amounts and attorneys' fees and costs). Indeed, guarantors are often named as defendants. *E.g.*, *Plenitude Capital LLC v. Utica Ventures, LLC*, No. 18 Civ. 2702, 2020 WL 6255250, at *2 (E.D.N.Y. Oct. 23, 2020); *Of A Feather, LLC v. Allegro Credit Servs., LLC*, No. 19 Civ. 9351, 2020 WL 3972752, at *1 n.1 (S.D.N.Y. July 14, 2020).

Nor does the Complaint violate Rule 8 by grouping Accipiter and Vermillion together with AMCK. The Complaint clearly sets forth distinct allegations as to each of these three entities. Accipiter and Vermillion are the lessors' guarantors and each are a wholly owned subsidiary of AMCK; as alleged in the Complaint, these entities guarantee the lessors' obligations, including the payment of attorneys' fees incurred by Frontier in connection with enforcing the guarantees. (Compl. ¶¶ 23-24; *see also*, *e.g.*, *id.* ¶ 97.) Both Vermillion and Accipiter are also trustors and beneficial owners of the relevant aircraft as well as the underlining aircraft lease agreements.

Rule 8 requires only that the Complaint put Defendants on notice by sufficiently setting forth Frontier's grounds for believing it is entitled to relief. *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 434 F. Supp. 3d 95, 97, 100 (S.D.N.Y. 2020). The allegations in the Complaint are more than "sufficient 'to give fair notice of a claim and the grounds upon which it rests.'" *Id.* (quoting *Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008)). Accipiter and Vermillion cannot reasonably claim they are not on notice about Frontier's allegations. *Cf. Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (complaint need not "exhaustively present the facts alleged" so long as it gives defendants "fair notice" of claims against them (internal quotation marks omitted)); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 422-23 (S.D.N.Y. 2010) (same).

## C.   Frontier Has Sufficiently Alleged a Claim for Breach of the Lease Agreements.

Defendants argue that wrongfully declaring a default does not amount to a breach. The case on which Defendants rely, *Red Fort Capital, Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456 (S.D.N.Y. 2019), is inapposite. Defendants in that case had argued that the claim for breach of contract should be dismissed, because the plaintiff had anticipatorily breached the loan agreement by demanding repayment before the loan maturity date. The court dismissed this argument because the plaintiff had already performed its obligations, and under defendants' theory, any lender that made a premature demand for repayment would be "precluded forever from recouping the proceeds," which would be an "absurd result." *Id.* at 470.

Unlike *Red Fort Capital*, where the party accused of anticipatory repudiation had already performed, Defendants here have wholly failed to honor their contractual obligations. As alleged in the Complaint, Defendants wrongfully declared that Frontier materially breached existing aircraft lease agreements by not making rent payment and then used Frontier's alleged breaches as a predicate for terminating the already-repudiated Framework Agreement. AMCK granted

Frontier a temporary rent suspension and Frontier acted based on AMCK's express permission, but instead of demanding suspended rent payment before the originally agreed deferral deadline, AMCK declared wrongfully that Frontier breached the aircraft lease agreements and exercised contractual remedies under these aircraft lease agreements to achieve AMCK's ultimate financial goal. This is clearly distinguishable from merely demanding repayment early.

It is well-settled law that "a wrongful repudiation of the contract by one party . . . entitles the non-repudiating party to immediately claim damages for total breach." *In re Food Mgmt. Grp., LLC*, 425 F. App'x 54, 55 (2d Cir. 2011) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 587 (2d Cir. 2005)). Defendants do not seriously engage with the allegation that AMCK's notice of termination was wrongful, and for good reason: it is abundantly clear from the parties' communications that AMCK waived its right to declare a rent payment default by engaging Frontier in negotiations over the rent deferral and substantial lease amendments and in encouraging Frontier to continue its negotiations with Airbus over aircraft delivery deferrals. *E.g.*, *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (abandonment of a contractual right "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage"); *Matter of Niagara Frontier Transp. Auth.*, 619 N.Y.S.2d 449, 449 (App. Div. 1994); *Sherwood v. Gordon Bros., Inc.*, 116 N.Y.S.2d 306, 308 (City Ct. 1952) ("[T]he well-settled rule [is] that though a party to a contract is in default, if the other party continues to negotiate with him after such default, he cannot then require literal performance, without notice to the party in default to comply within a specified time.").

Defendants argue that there is no allegation that UMB and Wells Fargo agreed to guarantee anything, but Defendants know well that UMB and Wells Fargo were sued in their capacities as

owner trustees, as indicated in the case caption.  As owner trustees, UMB and Wells Fargo are the lessors acting at the direction of and for the sole benefit of AMCK or an AMCK entity.  UMB and Wells Fargo's obligations and liabilities are guaranteed by AMCK (or an AMCK affiliate, i.e., Vermillion or Accipiter) as beneficial owner and servicer.  Frontier sufficiently alleges that AMCK owns and leases aircraft through its various subsidiaries and owner trustee entities, and further alleges that UMB and Wells Fargo are lessors under the relevant lease agreements.  (*See* Compl. ¶¶ 11, 25-26.)  Frontier expects discovery to bear out the alleged inter-relationships as described in the Complaint, but to the extent the Complaint does not sufficiently allege UMB's and Wells Fargo's roles, Frontier will move to amend.

Defendants also improperly rely on the exhibits to the Butler Declaration to suggest that the Accipiter and Vermillion guarantees do not apply because "Lessor" is not defined as AMCK, but rather owner trustee.   To the contrary, Frontier alleges that Accipiter and Vermillion "irrevocably and unconditionally guarantee[] . . . *all* of the lessor's obligations."  (Compl. ¶¶ 23-24 (emphasis added).)   The language quoted by Defendants confirms that Accipiter's and Vermillion's guarantees apply to "*all* the obligations of Lessor."  (Partial Motion at 11 (emphasis added).)  And, as Defendants know, the Lessor – i.e., UMB – delegates to AMCK, as Servicer, all rights, powers, or discretions vested in it by the lease agreement for the MSN 10038.  Thus, to the extent UMB and Wells Fargo are the relevant lessors in any of the breached aircraft lease agreements, the guarantees of Accipiter and Vermillion would apply.  Again, to the extent the Complaint does not sufficiently allege Accipiter's and Vermillion's roles, Frontier will move to amend, but Frontier expects discovery to bear out the alleged inter-relationships as described in the Complaint.

Defendants' argument that Frontier has not alleged damages is also spurious.  Frontier has alleged that each guarantor is obligated to pay or perform if the lessor fails to pay or perform; that the lessor of MSN 10038, UMB, wrongfully declared a default, through its Servicer AMCK, which triggered the wrongful termination of the Framework Agreement which in turn interrupted Frontier's fleet operations and management; and that the lessors' breaches resulted in not less than $53 million in damages to Frontier.  (Compl. ¶¶ 23-24, 64, 96.)  Such allegations more than suffice to state a claim.

**D.    Frontier Has Sufficiently Alleged a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing.**

The fourth cause of action alleges that AMCK breached its duty of good faith and fair dealing by using its repudiation to obtain new one-sided terms from Frontier and by agreeing to suspend rent payments only to use Frontier's non-payment as a basis to improperly terminate the Framework Agreement.

Implicit in every contract is an implied covenant of good faith and fair dealing.  *Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 97 A.D.3d 781, 784 (N.Y. App. Div. 2012). "The implied covenant of good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *Gutierrez v. Gov't Employees Ins. Co.*, 136 A.D.3d 975, 976 (N.Y. App. Div. 2016); *see also Atlas El. Corp. v. United El. Group, Inc.,* 77 A.D.3d 859, 861 (N.Y. App. Div. 2010) (holding that plaintiff sufficiently alleged a breach of the covenant of good faith and fair dealing implied in a confidentiality agreement).

Defendants argue that Count Four should be dismissed because it cannot stand alongside Frontier's breach of contract claim.  While Frontier acknowledges that New York law generally

does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the facts underlying such a claim also form the basis of a breach of contract claim, *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002); *see also Saggio v. Select Portfolio Servicing, Inc.*, No. 15 Civ. 4300, 2015 WL 6760132, at *5 (E.D.N.Y. Nov. 5, 2015), New York law provides for an exception to this rule "in cases involving efforts by one party to a contract to subvert the contract itself." *Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434, 2012 WL 6136365, at *13 (S.D.N.Y. Dec. 11, 2012) (internal quotation marks omitted).  In such cases, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (App. Div. 1999); *see also Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989) (covenant of good faith and fair dealing precludes a party to a contract from engaging in conduct that will deprive the other party of the benefits of their agreement).  A claim for breach of the implied covenant of good faith and fair dealing is thus "not necessarily duplicative of a cause of action alleging breach of contract." *Gutierrez*, 136 A.D.3d at 976.

Count Four, as alleged in the Complaint, falls squarely within this exception.  Frontier alleges that, in addition to AMCK's anticipatory repudiation of the Framework Agreement, AMCK saw an opportunity to exploit the situation by refusing to retract its repudiation and insisting on onerous concessions from Frontier.  AMCK knew Frontier's hands were tied because AMCK's repudiation of its imminent performance left Frontier with no other commercially practical option but to consider AMCK's demands.  Along the way, AMCK led Frontier to believe that the parties would be able to come to a business solution and, by representing that certain lease payments were deferred, induced Frontier to temporarily suspend rent payments on aircraft lease

14

agreements so that AMCK could manufacture a dubious technical default. By misleading Frontier into thinking that the parties would come to an agreement, AMCK also prevented Frontier from immediately seeking damages under the Framework Agreement.[5]

Frontier sufficiently pled that AMCK not only breached the Framework Agreement by repudiation but also attempted to conceal its own repudiation by misleading Frontier to take further actions that AMCK later relied on to deprive Frontier of its right to enforce the Framework Agreement and to seek damages. In short, AMCK's actions misled Frontier into a downstream technical default and deprived Frontier of the benefits of the parties' agreements. *Aventine*, 697 N.Y.S.2d at 130. Because Frontier's allegations supporting Count Four pertain to Defendants' deliberate efforts to stymie Frontier's performance of other separate lease agreements and to withhold the benefits of the Framework Agreement from Frontier, Count Four is sufficient to state a claim under New York law.

**E.    Frontier Has Sufficiently Alleged a Claim for Breach of the Covenant of Quiet Enjoyment.**

Defendants argue that Count Five should be dismissed because the Complaint does not allege that Frontier's use of the aircraft was interrupted or curtailed in any way by the Defendants. Not so.

Frontier alleges that "[u]nder each of the aircraft lease agreements, as long as Frontier pays the rent and complies with the lease terms, Frontier is entitled to quiet enjoyment of the aircraft."

---

[5] Indeed, although Frontier would have been justified in seeking immediate damages and refusing further performance due to AMCK's anticipatory repudiation, Frontier believed – because AMCK led it to believe – that the parties would be able to come to an agreement. AMCK had no right to claim that Frontier had defaulted given that Frontier had in fact no obligation to continue performance after AMCK's anticipatory repudiation. *QK Healthcare, Inc. v. InSource, Inc.*, 965 N.Y.S.2d 133, 139 (App. Div. 2013) (in the event of an anticipatory repudiation, "the nonrepudiating party may immediately claim damages for total breach and be absolved from its obligations of future performance" (internal quotation marks omitted)).

(Compl. ¶ 43, *see also id.* ¶ 105.)  Under the right of quiet enjoyment, a lessor may "not interfere with the rights granted" to a lessee.  *Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.*, 26 F. Supp. 2d 698, 706 (S.D.N.Y. 1998).  Actual or constructive eviction is required.  "A constructive eviction does not require physical removal from the premises; it is sufficient to demonstrate that the lessee could not use the premises for the purpose(s) intended and had to abandon the premises under the circumstances."  *Herbert Paul, CPA, PC v. 370 Lex, L.L.C.*, 794 N.Y.S.2d 869, 872 (N.Y. Cty. 2005).

The Complaint sufficiently alleges that Defendants "interfere[d] with the rights granted" to Frontier.  *Trans Pacific Leasing Corp.*, 26 F. Supp. 2d at 706.  Specifically, Frontier describes how AMCK's controlling shareholder would refuse "to take deliveries of new aircraft only to have them parked in storage even if Frontier continue[d] to pay rent as required."  (Compl. ¶ 42.) AMCK also demanded that the new aircraft financed under the Framework Agreement "be put into revenue service and not parked while any reduced flight activity might be in force."  (Compl. ¶ 44.)  AMCK did not explain how such demands would benefit it, or Frontier.  And, finally, by declaring default and unexpectedly terminating the Framework Agreement, Defendants "compromised Frontier's overall fleet plans" by forcing Frontier to delay aircraft deliveries, and disturbed Frontier's "ability to effectively utilize" the existing fleet leased from Defendants. (Compl. ¶ 107.)  Frontier has a modest-sized fleet of aircraft and not being able to fully mobilize a significant number of aircraft can have a significant impact on its use of each of the fleet aircraft that are in service.  Declaring default gives the lessor the right to ground the aircraft and to inspect them at the lessor's discretion, and the flight scheduling department must exercise extra caution in setting schedules for these aircraft in order to avoid delays or flight cancellations caused by grounding or the lessor's other demands relating to the aircraft.  For a commercial airline whose

business success rests on timely and reliable passenger service, this is a significant disruption. Such claims go far beyond mere "diminution in their enjoyment." *A&L Auto Repair, Inc. v. Hudson Petroleum Realty, LLC*, No. 17 Civ. 3529, 2018 WL 10517080, at *8 (E.D.N.Y. Mar. 6, 2018). Rather, the facts in the Complaint demonstrate that Frontier "could not use the [aircraft] for the purpose(s) intended." *Herbert Paul, CPA, PC*, 794 N.Y.S.2d at 872. Count Five should therefore not be dismissed.

F. **Frontier Has Sufficiently Alleged a Claim for Promissory Estoppel.**

Defendants argue that Frontier's promissory estoppel claim, Count Six, is duplicative of its breach of contract claim. Again, Defendants' arguments are meritless.

Under New York law, promissory estoppel requires "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Ashland Inc. v. Morgan Stanley & Co., Inc.,* 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)). "A promissory estoppel claim may proceed jointly with a breach of contract claim only where it is not clear that a valid contract exists." *Brenner v. Brenner*, No. 10 Civ. 4857, 2012 WL 3597247, at *7 (E.D.N.Y. Aug. 20, 2012) (quoting *BLD Prods., LLC v. Viacom, Inc.*, No. 10 Civ. 2625, 2011 WL 1327340, at *15 (S.D.N.Y. Mar. 31, 2011), *rev'd on other grounds sub nom. BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013)). Where the existence of a contract is in doubt, a plaintiff is "entitled to plead the alternative theory of promissory estoppel." *Id.* (quoting *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 Civ. 9578, 2006 WL 903184, at *3 (S.D.N.Y. Apr. 7, 2006)).

Here, Frontier has alleged that after AMCK's repudiation of the Framework Agreement, the parties were actively engaged in negotiating a rent deferral agreement that would cover the existing 14 aircraft not covered under the Framework Agreement and other terms that would

improve AMCK's overall economic position.  (*E.g.*, Compl. ¶ 56.)   In the course of these negotiations, "AMCK made clear and unambiguous promises that it would not require Frontier to make rent payments before May 15, 2020 . . .  in light of the parties' on-going negotiations." (Compl. ¶ 110.)  Frontier expects that AMCK will challenge Frontier's allegations that the parties reached agreement on a temporary rent suspension while negotiations for aircraft delivery deferrals and a more extended rent deferral were underway.  For its part, Frontier believes it is clear that AMCK made promises and representations with respect to the temporary rent suspension on the 14 aircraft.  In reasonable and foreseeable reliance on those promises and representations, Frontier incurred considerable expenses and made considerable concessions and, in the end, suffered at least $53 million in damages.  The Framework Agreement does not govern this claim, and because Frontier's promissory estoppel claim does not rise and fall with its breach of contract claim, dismissal is unwarranted.

Defendants next argue that Frontier has failed to allege reasonable reliance in light of caselaw upholding anti-waiver provisions and point to the existence of such provisions in the Framework Agreement and the lease agreement for the MSN 10038.  Defendants' argument appears to be that since these documents contain an anti-waiver provision, Frontier could not reasonably have relied on AMCK's promises to suspend rent payments in exchange for various promises and actions from Frontier, and thus Frontier's promissory estoppel claim must be dismissed.  This argument fails.  Not only are the Framework Agreement and lease agreement for the MSN 10038 not properly before the Court, as discussed above, but Defendants are also incorrect on the law.  The rent deferral dispute relates to a lease, and thus is governed by Article 2A of the UCC.  *See* N.Y. U.C.C. §§ 2-A-102, 2-A-103.  The UCC provides that the parties' attempt to modify an agreement may "operate as a waiver" even if not in writing.  N.Y. U.C.C.

022510.0155/8351346.11

§ 2-A-208(3).  Frontier has alleged that AMCK provided a written waiver by way of the promises it made by email.  *See Fundamental Portfolio Advisors, Inc.*, 7 N.Y.3d at 104 ("Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned.").

In addition to AMCK's written waivers, under New York law the existence of a non-waiver provision does not prohibit the court from considering course of conduct and past performance when determining whether or not a waiver was given.  The Appellate Division has explained that "the roots of waiver lie firmly in equity, and are designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then either suing for noncompliance or demanding compliance for the purpose of avoiding the transaction."  *Kamco Supply Corp. v. On the Right Track, LLC*, 49 N.Y.S.3d 721, 727 (App. Div. 2017) (internal quotation marks omitted); *see also All-Year Golf, Inc. v. Prods. Invs. Corp.*, 310 N.Y.S.2d 881, 884-85 (App. Div. 1970); *1301 Prop. Owner LP v. Abelson*, 37 N.Y.S.3d 207, at *5 (N.Y. Sup. Ct. Apr. 1, 2016) (Table).  In this case, AMCK made clear that it was not going to perform its contractual obligations under the Framework Agreement and then held Frontier hostage to negotiate improved terms in various contracts with no regard of whether AMCK had such right to do so for AMCK's sole benefit.  (Compl. ¶¶ 36, 41, 45-46, 48.)  (Among other new and onerous terms, AMCK asked Frontier to agree to extend the terms of 12 existing leases by four years, a significant capital outlay, and to remove Frontier's early termination option on all six of the aircraft covered by the Framework Agreement.  (Compl. ¶ 59.))  Contemporaneous with these ongoing negotiations, AMCK made promises to Frontier that it could temporarily suspend rent payments on 14 aircraft.  (Compl. ¶¶ 53, 56, 62.)  As described above, AMCK's continued negotiations and promises constituted a clear waiver of its right to accuse Frontier of default, not to mention AMCK's improper motive in wrongfully declaring default.  Thus, the non-waiver

provision does not render Frontier's reliance unreasonable.  Furthermore, Frontier's reliance was otherwise reasonable given the circumstances in which AMCK's promises were made, the parties' long course of dealing, and the allegations that other airlines were simultaneously seeking – and obtaining – rent deferrals from their lessors.  (*E.g.*, Compl. ¶¶ 30, 37-39.)

**G.    Frontier Has Sufficiently Alleged a Claim for Fraud.**

With respect to Count Seven, Defendants argue, first, that Frontier's claim is redundant because it relates to a breach of contract.  This argument is misguided.

"Under New York law, to state a claim for fraud, a plaintiff must allege facts showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Hadami, S.A.*, 272 F. Supp. 3d at 599 (internal quotation marks omitted).  A plaintiff may not base a fraud claim on the same facts as a "breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties."  *Telecom Int'l America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).  Rather, "the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."  *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013).

Here, Frontier has alleged that, among other elements of the scheme, AMCK used false representations to induce Frontier to negotiate with Airbus and to temporarily withhold rent payments.  AMCK first repudiated the Framework Agreement and refused to retract the repudiation unless Frontier negotiated aircraft delivery deferrals and used the impending uncertainty to extract concessions from Frontier.  Once Frontier began negotiating with Airbus,

and to facilitate those negotiations, AMCK agreed to temporarily defer rent payments on 14 aircraft, with full knowledge that such a deferral would be attractive to Frontier in light of the ongoing global crisis.  In short, AMCK led Frontier to believe that the parties would come to a solution, and then deliberately orchestrated Frontier's alleged default with the purpose of covering up its repudiation and evading its own obligations.  The resulting damages include, in addition to the costs of alternative financing, the loss of use of the aircraft that were deferred and damage to Frontier's business reputation with Airbus, as well as punitive damages.  (Compl. ¶ 118.)  AMCK's contrivance of Frontier's default was thus a fraudulent scheme designed to benefit AMCK at Frontier's expense that caused damages distinct from those recoverable under contract.  *See Gander Mountain Co.*, 923 F. Supp. 2d at 366.

Defendants next argue that Frontier has not alleged the elements of fraud because it has failed to allege any fraudulent statement with particularity or any plausible theory of reasonable reliance.  To the contrary, Frontier alleged with specificity that AMCK promised that no action would be taken regarding rent payments on the 14 aircraft during the negotiations and that Frontier need not bring deferred rents current until May 15, 2020.  Frontier also alleged that AMCK knowingly engaged in continued negotiations leading Frontier to believe that AMCK would retract its repudiation when AMCK in fact had no intention whatsoever to continue performing under the Framework Agreement.  For the reasons discussed above, Frontier's reliance on AMCK's promises and representations was reasonable.  And although Defendants concede that the Complaint cites to several specific emails, Defendants' contention that these communications were not misleading is unpersuasive.

As an initial matter, and as discussed above, none of these emails are properly before the Court.  Quoting an email is an insufficient basis to convert a motion to dismiss into a summary

022510.0155/8351346.11

judgment motion, much less merely identifying an email. *Chambers*, 282 F.3d at 153. Frontier pointed to certain emails in its Complaint simply as examples from the extensive course of communication between Frontier and AMCK during the pendency of the deferral negotiations. The selected exhibits do not accurately represent or capture the history of those negotiations, and Defendants' suggestions otherwise are specious.

Frontier's allegations stand on their own (*see* Compl. ¶¶ 47-48, 54, 56-59), and are sufficient to plead Count Seven. But even if the Court were to consider the emails attached to the Butler Declaration, the promises and misrepresentations AMCK made in them provide strong support for Count Seven. The April 3, 2020 email noted that AMCK had been authorized to grant a rent deferral; the April 6, 2020 email provided a clear confirmation that AMCK would not call a default. The parties continued to negotiate for several more weeks after the date that AMCK later decided rent had been due (April 21, 2020). On April 30, 2020, AMCK praised Frontier's progress on delivery deferrals with Airbus and offered a further extension to May 15, 2020, thereby falsely representing that AMCK was willing to extend the temporary rent suspension until then. As it turns out, AMCK had no intent to wait that long. Nevertheless, these misrepresentations – upon which Frontier reasonably relied – caused Frontier to incur financial and other costs.

The Court need not rely upon these emails to find Frontier's allegations sufficient. To be sure, the emails provide strong support for Frontier's claims. But even without them, Count Seven meets the heightened pleading standards of Federal Rule of Civil Procedure 9(b). For every communication alleged in its Complaint, Frontier has alleged the statement at issue, who made it, the speaker, and why the statement was fraudulent. Frontier has thus adequately alleged fraud. *See TFS-ICAP, LLC*, 434 F. Supp. 3d at 99-100; *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593 (S.D.N.Y. 2013) ("The purpose of Rule 9(b)'s specificity requirement is to provide

the defendant with fair notice of a plaintiff's claim and adequate information to frame a response." (internal quotation marks omitted)), *abrogated in part on other grounds*, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650 (2015).

**H.**    **Accipiter, Vermillion, UMB, and Wells Fargo Are Necessary Parties and Should Not Be Dismissed.**

Finally, Defendants make several arguments as to why AMCK is the only proper party to Frontier's suit.  These arguments are meritless.  As discussed above, Counts One and Two are properly alleged against Accipiter and Vermillion.  As for UMB and Wells Fargo, Defendants apparently take issue with the fact that they are nominal defendants.  Nominal defendants are frequently named when they are necessary to obtaining relief, such as in derivative actions.  *S.E.C. v. Miller*, 808 F.3d 623, 637 n.77 (2d Cir. 2015).  Here, as Defendants note, the banks, acting as owner trustees, receive title to the aircraft and serve as lessors while delegating their rights and powers to AMCK as beneficial owner.  (Partial Motion at 21 n.3.)  UMB and Wells Fargo are thus parties to the underlying contracts, and their participation in this action is necessary to ensure that the aircraft trust formed for the aircraft leases will be bound by any judgment in favor of Frontier in this action and that relief to satisfy such judgment is possible.

## CONCLUSION

For the reasons set forth above, Defendants' Partial Motion should be denied in its entirety.

DATED:  February 26, 2021

LANE POWELL PC


By:   s/David G. Hosenpud
     Peter D. Hawkes
     David G. Hosenpud (*pro hac vice*)
     601 SW Second Avenue, Suite 2100
     Portland, Oregon  97204-3158
     Telephone No.:  503.778.2100
     Facsimile No.:  503.778.2200
     Email:  hawkesp@lanepowell.com
     Email:  hosenpudd@lanepowell.com

-and-

**BINDER & SCHWARTZ LLP**
Neil S. Binder
366 Madison Avenue, 6th Floor
New York, New York  10017
Telephone No.:  212.510.7008
Facsimile No.:  212.510.7299
Email:  nbinder@binderschwartz.com

*Attorneys for Plaintiff, Frontier Airlines, Inc.*

24