UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.,

        Plaintiff,

v.

AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,

        Defendants.

20 Civ. 9713 (LLS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Dated: March 12, 2021

    Jeff E. Butler
    John P. Alexander
    Karleene Diaz
    CLIFFORD CHANCE US LLP
    31 West 52nd Street
    New York, New York 10019

    *Attorneys for Defendants AMCK Aviation Holdings Ireland Limited, Accipiter Investments Aircraft 4 Limited, Vermillion Aviation (Two) Limited, UMB Bank, N.A., as owner trustee, and Wells Fargo Trust Company, as owner trustee*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ....................................................................................................................................2

    I.     Frontier's Claims for Breach of the Framework Agreement Should Be Dismissed as to Accipiter and Vermillion. ............................................................2

    II.    Frontier's Claim for Breach of the Lease Agreements Should Be Dismissed. ...............................................................................................................3

    III.   Frontier's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed. ..................................................................4

    IV.   Frontier's Claim for Breach of the Covenant of Quiet Enjoyment Should Be Dismissed. .......................................................................................5

    V.    Frontier Fails to State a Promissory Estoppel Claim. .............................................6

    VI.   Frontier's Fraud Claim Should Be Dismissed. .......................................................7

    VII.  UMB and Wells Fargo Should Not Be Retained as Nominal Defendants. ...............................................................................................................8

CONCLUSION ................................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

Cases

*Benson v. RMJ Sec. Corp.*,
   683 F. Supp. 359 (S.D.N.Y. 1988) ............................................................................................ 9

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ....................................................................................................... 2

*Envirotech Corp. v. Bethlehem Steel Corp.*,
   729 F.2d 70 (2d Cir. 1984) ......................................................................................................... 2

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ....................................................................................................... 8

*Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*,
   No. 17 Civ. 8078, 2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018) .............................................. 7

*Gray v. Wesco Aircraft Holdings, Inc.*,
   454 F. Supp. 3d 366 (S.D.N.Y. 2020) ........................................................................................ 8

*Gutierrez v. Gov't Empls. Ins. Co.*,
   136 A.D.3d 975 (2d Dep't 2016) ............................................................................................... 4

*Harris v. Provident Life & Acc. Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002) ......................................................................................................... 4

*Paxi, LLC v. Shiseido Americas Corp.*,
   636 F. Supp. 2d 275 (S.D.N.Y. 2009) ........................................................................................ 6

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
   648 F. Supp. 2d 507 (S.D.N.Y. 2009) ........................................................................................ 7

*Red Fort Capital, Inc. v. Guardhouse Prods. LLC*,
   397 F. Supp. 3d 456 (S.D.N.Y. 2019) ........................................................................................ 3

*SEC v. Miller*,
   808 F.3d 623 (2d Cir. 2015) ....................................................................................................... 9

*Toto, Inc. v. Sony Music Entertainment*,
   No. 12 Civ. 1434, 2012 WL 6136365 (S.D.N.Y. Dec. 11, 2012) .............................................. 4

*Trump v. Vance*,
   977 F.3d 198 (2d Cir. 2020) .................................................................................................. 2

*Vill. on Canon v. Bankers Tr. Co.*,
   920 F. Supp. 520 (S.D.N.Y. 1996) ........................................................................................ 5

Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 2

Fed. R. Civ. P. 9(b) ....................................................................................................................... 8

Defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), UMB Bank, N.A., solely in its capacity as owner trustee ("UMB"), and Wells Fargo Trust Company, N.A., solely in its capacity as owner trustee ("Wells Fargo") (collectively, "Defendants") submit this Reply Memorandum of Law in further support of their Partial Motion to Dismiss.

## PRELIMINARY STATEMENT

The "Background" section of Frontier's opposition brief confirms that the central issue in this action is the termination of the Framework Agreement by AMCK. The Framework Agreement provided for the sale and leaseback of six aircraft, five of which remained to be delivered at the time of the termination. Frontier contends that AMCK "repudiated" the Framework Agreement when AMCK gave notice of termination on May 8, 2020.

AMCK does not agree with Frontier's characterization of the termination in the opposition brief. In particular, Frontier's account leaves out the important fact that Frontier unilaterally stopped making payments due under the Lease Agreements in April 2020 for fourteen other aircraft. These payment defaults gave AMCK a valid right to terminate under a cross default provision contained in the Framework Agreement.

AMCK has not moved to dismiss the First and Second Claims for breach of the Framework Agreement, although those claims ultimately will fail on the merits. Rather, this motion addresses the variety of other claims set forth in the Complaint, which should be dismissed as legally flawed and/or duplicative. Since Frontier has had the opportunity to amend the Complaint, the claims other than the First and Second Claims against AMCK should be dismissed with prejudice.

## ARGUMENT

**I.   Frontier's Claims for Breach of the Framework Agreement Should Be Dismissed as to Accipiter and Vermillion.**

Accipiter and Vermillion are not parties to the Framework Agreement.  (*See* Butler Ex. 4.)[1]  Frontier does not dispute this, and Frontier also does not contest the well-established principle that non-parties generally cannot be sued for breach of contract.  Instead, Frontier states vaguely that Accipiter and Vermillion "have rights and obligations arising from the contracts at issue here."  (Pl.'s Br. 9.)  However, the only rights and obligations that Frontier identifies arise under the Lease Agreements, *not* the Framework Agreement.  For example, Frontier states that Accipiter and Vermillion provided guarantees "under the lease agreements."  (*Id.*)  Similarly, Frontier says that Accipiter and Vermillion are "trustors and beneficial owners" of the relevant aircraft under the "aircraft lease agreements."  (*Id.*)  These allegations do not suggest that Accipiter and Vermillion have any rights or obligations under the Framework Agreement.[2]

In short, because Frontier fails to allege any basis for holding Accipiter and Vermillion

---

[1] Frontier repeatedly asserts that the Court may not consider the Framework Agreement or the other exhibits attached to the Butler Declaration.  (Pl.'s Br. 8.)  This is incorrect.  On a Rule 12(b)(6) motion to dismiss, a court may consider a document where the complaint "relies heavily upon its terms and effect" or where the complaint makes a "clear, definite and substantial reference to" the document.  *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020) (internal quotation marks omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal quotation marks omitted).

[2] Frontier cites cases for the uncontroversial proposition that a guarantor may be sued for the breach of a contract it agreed to guarantee.  (Pl.'s Br. 9.)  These cases are inapposite because Accipiter and Vermillion did not provide guarantees under the Framework Agreement.  Frontier also cites *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70 (2d Cir. 1984) for the proposition that the "sole obligee on contracts possessed rights such that it could be an indispensable party."  (Pl.'s Br. 9.)  *Envirotech* involved a corporate parent that had been assigned certain contract rights and was therefore a real party in interest for diversity jurisdiction purposes.  729 F.2d at 74-75.  There is no allegation that Accipiter and Vermillion are the sole obligees of, or real parties in interest to, the Framework Agreement.

liable for alleged breaches of the Framework Agreement, the First and Second Claims should be dismissed as to Accipiter and Vermillion.[3]

## II. Frontier's Claim for Breach of the Lease Agreements Should Be Dismissed.

A breach of contract claim requires non-performance by the defendant. (*See* Defs.' Br. 10.) The Third Claim does not allege any failure of performance under the Lease Agreements. On the contrary, Frontier acknowledges that the Lease Agreements remain "in full force." (Compl. ¶ 93.) Absent an alleged failure to perform by the parties to the Lease Agreements, Frontier's Third Claim should be dismissed.

Frontier insists that declaring a default alone may be sufficient to establish a breach of contract. (Pl.'s Br. 10.) Frontier cites no authority for this proposition. Instead, Frontier attempts to distinguish a case cited by Defendants, *Red Fort Capital, Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456 (S.D.N.Y. 2019). In *Red Fort*, the borrower asserted that the creditor breached by prematurely declaring a default. The court dismissed the claim because there was no obligation the creditor had allegedly failed to perform: "[b]aseless accusations that a counter party has breached an agreement is not the equivalent of the accusing party's failure to perform its obligations under the entire contract." *Id.* at 470. This statement of the law is entirely consistent with the general rule that a breach of contract requires some failure to perform.

Frontier's claim also fails because the Complaint does not allege any damages associated with the Lease Agreements. (*See* Defs.' Br. 11.) Frontier asserts that AMCK's declaration that the Lease Agreements were in default "triggered the wrongful termination of the Framework Agreement," which resulted in $53 million in damages. (Pl.'s Br. 13.) This argument

---

[3] Frontier also suggests that future discovery will help shed light on its claims. (*See* Pl.'s Br. 9, 12.) But the possibility of future discovery should not impact this motion to dismiss.

underscores the defect in Frontier's claim.  The complained-of harm arises from the alleged breach of the Framework Agreement, not the Lease Agreements.  Frontier already has two claims for breach of the Framework Agreement, each seeking the same $53 million in damages.  (Compl. ¶¶ 84, 90.)  Absent an independent allegation of damages arising from a purported breach of the Lease Agreements, the Third Claim should be dismissed.

### III. Frontier's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed.

Frontier admits that a separate claim for breach of the implied covenant generally cannot stand alongside a breach of contract claim based on the same facts.  (Pl.'s Br. 14.)  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Frontier argues that there is an "exception" to this rule in cases "involving efforts by one party to a contract to subvert the contract itself."  (Pl.'s Br. 14.)  As support, Frontier principally relies on *Toto, Inc. v. Sony Music Entertainment*, No. 12 Civ. 1434, 2012 WL 6136365, at *13 (S.D.N.Y. Dec. 11, 2012).  In that case, however, the court clearly applied the general rule and dismissed as duplicative a good faith and fair dealing claim that "rest[ed] on the same facts" as an accompanying breach of contract claim.  *Id.* at *14.  Thus, *Toto* supports AMCK's argument that the Fourth Claim should be dismissed.  Frontier cites no authority for the proposition that a purely duplicative claim may survive a motion to dismiss.[4]

---

[4] Frontier cites a handful of state court decisions denying motions to dismiss good faith and fair dealing claims (Pl.'s Br. 13), but none supports a rule that duplicative claims should remain in a case.  For instance, in *Gutierrez v. Gov't Empls. Ins. Co.*, 136 A.D.3d 975 (2d Dep't 2016), the court expressly found that the good faith and fair dealing claim was not duplicative because it sought to recover on a different theory of damages.  *Id.* at 976-77.

Frontier contends that AMCK breached the covenant of good faith and fair dealing by allegedly "misleading Frontier into thinking that the parties would come to an agreement . . . ." (Pl.'s Br. 15.)  However, the implied covenant applies only to performance of an existing contract—it "does not encompass future dealings or negotiations between the parties." *Vill. on Canon v. Bankers Tr. Co.*, 920 F. Supp. 520, 535 (S.D.N.Y. 1996) (internal quotation marks omitted).  The implied covenant therefore does not apply to negotiations over a potential rent deferral.  *See id.* (dismissing implied covenant claim based on alleged failure to "negotiate in good faith for [contract] extension").

### IV. Frontier's Claim for Breach of the Covenant of Quiet Enjoyment Should Be Dismissed.

Frontier concedes that "[a]ctual or constructive eviction is required" to state a claim for breach of the covenant of quiet enjoyment.  (Pl.'s Br. 16.)  This means that, for its Fifth Claim, Frontier must allege, at a minimum, that Defendants prevented Frontier from using the leased aircraft.  (*See* Defs.' Br. 13-14.)  There is no such allegation in the Complaint.

Frontier tries to distract from this pleading deficiency by pointing to examples of other supposed "interference" with its rights.  For example, Frontier complains that AMCK allegedly refused to take "deliveries of new aircraft" under the Framework Agreement and insisted that new deliveries "be put into revenue service."  (Pl.'s Br. 16; Compl. ¶¶ 42-44.)  Similarly, Frontier asserts that the termination of the Framework Agreement delayed aircraft deliveries and disturbed fleet plans.  (Pl.'s Br. 16).  However, these allegations of interference relate only to future leases expected under the Framework Agreement, not to the use of aircraft already on lease and in Frontier's possession.  Frontier does not allege that it was prevented from using any of the aircraft in its possession, which is fatal to the quiet enjoyment claim.

Finally, Frontier notes that declaring a default "gives the lessor the right to ground the

aircraft" and to exercise other remedies under the Lease Agreements. (Pl.'s Br. 16.) However, the lessors were not under any obligation to exercise (and did not in fact exercise) those remedies. Moreover, the Complaint does not allege—and cannot truthfully allege—that the lessors grounded the aircraft (or tried to do so) or otherwise prevented Frontier from using the aircraft.

## V.     Frontier Fails to State a Promissory Estoppel Claim.

It is well-settled that promissory estoppel is a "narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason." *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) (internal quotation marks omitted). The parties agree that the Framework Agreement is a valid written contract. Frontier contends that it may assert promissory estoppel as an alternative claim because there is a dispute about whether the parties "reached agreement on a temporary rent suspension." (Pl.'s Br. 18.) This argument falls flat because the relationship between AMCK and Frontier was governed by written agreements, including the Framework Agreement. (*See* Defs.' Br. 15-16.)

Even if Frontier's promissory estoppel claim were compatible with the written agreements, Frontier fails to allege reasonable reliance. This is because the contract requires that any waivers or amendments be "express" and "in writing." (*See* Butler Ex. 4, §§ 8.4.1-8.4.2; *see also id.* Ex. 1, §§ 23.1, 23.13 & Ex. 2, §§ 20.4(a)-(b).) Thus, as a matter of law, Frontier could not reasonably have relied on any alleged informal or oral promise by AMCK. (*See* Defs.' Br. 16-17.)

In response, Frontier cites cases dealing with oral waivers or modifications, which sometimes are enforceable despite a provision requiring waivers and amendments to be in writing. (*See* Pl.'s Br. 18-19.) These cases are inapposite. Indeed, a promissory estoppel claim

may be precluded even where an oral waiver or modification may be permitted. *See Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 516-19, 523-24 (S.D.N.Y. 2009) (finding alleged waiver potentially enforceable as an exception to the Statute of Frauds, but rejecting promissory estoppel claim for lack of reasonable reliance where "the agreement between the parties contained an unambiguous no-oral-modification clause").

Frontier also states that it "has alleged that AMCK provided a written waiver by way of the promises it made by email." (Pl.'s Br. 19.) Tellingly, Frontier does not identify the email containing such promise. As discussed in the opening brief, the emails referenced in the Complaint contain no promises or waivers but rather reflect discussion about hypothetical amendments (none of which were finalized, documented or entered into). "It is well-established that a mere willingness to execute a contract or enter into a transaction is insufficient to make out a claim for promissory estoppel." *Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*, No. 17 Civ. 8078, 2018 WL 4757961, at *3 (S.D.N.Y. Sept. 30, 2018).

## VI.   Frontier's Fraud Claim Should Be Dismissed.

As established in the opening brief, the few communications identified with particularity in the Complaint do not contain any misleading statements. (*See* Defs.' Br. 18-20.) In its opposition brief, Frontier tries to place its own spin on these communications:

- Frontier suggests that AMCK's April 3, 2020 email contains some unspecified promise or misrepresentation about a rent deferral. (Pl.'s Br. 22.) The email actually states only that AMCK was "authorized" to grant a deferral under certain conditions, and makes clear that it was "for discussion purposes only" and does not create any "binding obligations." (*See* Butler Ex. 7.)

- Frontier asserts that AMCK's April 6, 2020 email "provided a clear confirmation that AMCK would not call a default." (Pl.'s Br. 22.) In fact, the email states only that AMCK will not take action for the next 10 working days until April 21, 2020. (*See* Butler Ex. 7.) Consistent with this, AMCK did not terminate the Framework Agreement until May 8, 2020. (Compl. ¶ 63.)

- Frontier argues that AMCK's April 30, 2020 email represents "that AMCK was

willing to extend the temporary rent suspension" until May 15, 2020. (Pl.'s Br. 22.) However, the email contains no such promise and merely states that full payment by that date was one of the several conditions required for a deal. Moreover, the email states that it was "for discussion purposes only" and does not create any "binding obligations." (*See* Butler Ex. 7.)

These documents speak for themselves. Frontier entreats the Court not to look at these emails and to let "Frontier's allegations stand on their own." (*See* Pl.'s Br. 21-22.) The documents, however, are properly before the Court because the Complaint specifically refers to them as the basis for a fraud claim. The Court therefore need not accept Frontier's characterization of the documents. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." (internal quotation marks omitted)).

Frontier argues that it used the emails discussed above only as "examples." (Pl.'s Br. 22.) The difficulty for Frontier is that the Complaint does not particularize any other allegedly fraudulent statement. For example, Frontier points to Paragraph 56 of the Complaint, which states that "AMCK, on various occasions, represented that Frontier did not need to make rent payments . . . ." (Compl. ¶ 56.) That conclusory assertion lacks the particularity required by Rule 9(b) because it does not "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

**VII.  UMB and Wells Fargo Should Not Be Retained as Nominal Defendants.**

Frontier asserts that UMB and Wells Fargo should remain in the case as "nominal

defendants." (Pl.'s Br. 23.)[5] Frontier states that because these entities hold title to the leased aircraft, their "participation in this action is necessary" so that they will be "bound by any judgment." (*Id.*) This argument makes no sense. The Complaint seeks no relief concerning the title to or possession of the aircraft. Rather, Frontier requests only a money judgment against "AMCK and AMCK entities." (Compl. p. 24-25.) Frontier does not explain how the presence of UMB and Wells Fargo are necessary for the Court to award that relief. *See Benson v. RMJ Sec. Corp.*, 683 F. Supp. 359, 378 (S.D.N.Y. 1988) (dismissing nominal defendant because "the assets sought are not in the hands of the [nominal defendant]").[6]

UMB and Wells Fargo are not parties to the contract at issue in this dispute, Frontier seeks no relief from them, and they should be dismissed from the case with prejudice.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants' Partial Motion to Dismiss should be granted.

Dated: March 12, 2021
New York, New York

Respectfully submitted,

 /s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Karleene Diaz
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Defendants AMCK Aviation Holdings Ireland Limited, Accipiter Investments Aircraft 4 Limited, Vermillion Aviation (Two) Limited, UMB Bank, N.A., as owner trustee, and Wells Fargo Trust Company, N.A., as owner trustee*

---

[5] Frontier does not assert that Accipiter or Vermillion should remain as nominal defendants.

[6] Frontier cites *SEC v. Miller*, 808 F.3d 623, 637 n.77 (2d Cir. 2015), but that case is wholly inapposite. In *Miller*, the Court addressed the SEC's equitable powers to freeze ill-gotten gains held by "relief defendants." *Id.* at 635, 637. No such relief is sought here.