UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>    Defendants. | 20 Civ. 9713 (LLS)<br><br>**ANSWER AND COUNTERCLAIM** |

  Defendant AMCK Aviation Holdings Ireland Limited ("Defendant" or "AMCK"), by and through its undersigned counsel, hereby responds to the Complaint of Plaintiff Frontier Airlines, Inc. ("Frontier") as follows:

  1. Defendant admits the allegations in paragraph 1.

  2. Defendant denies the allegations in paragraph 2, except admits that AMCK is a company incorporated in Ireland with its principal place of business in Dublin, Ireland.

  3. Defendant denies the allegations in paragraph 3, except admits that Accipiter is a company incorporated in Ireland with its registered office in Dublin, Ireland.

  4. Defendant denies the allegations in paragraph 4, except admits that Vermillion is a company incorporated in Ireland with its registered office in Dublin, Ireland.

  5. Defendant denies the allegations in paragraph 5, except admits that WFTC is a national banking association.

  6. Defendant denies the allegations in paragraph 6, except admits that UMB is a national banking association.

7. Defendant denies the allegations in paragraph 7, except admits that Defendants WFTC and UMB are nominal defendants named solely in their capacity as owner trustees.

8. Defendant denies the allegations in paragraph 8, except admits that the amount in controversy is greater than $75,000 and states that no response is required to legal conclusions.

9. Defendant denies the allegations in paragraph 9, except states that no response is required to legal conclusions.

10. Defendant denies the allegations in paragraph 10, except admits that Defendant is a party to certain agreements and refers to those documents for their contents and states that no response is required to legal conclusions.

11. Defendant denies the allegations in paragraph 11, except admits that Frontier is a U.S.-based passenger airline, states that it is without knowledge or information sufficient to form a belief about the truth of the allegations concerning Frontier's arrangements with various other aircraft lessors, and admits that AMCK affiliates, through certain owner trustees, own and lease to Frontier multiple aircraft.

12. Defendant denies the allegations in paragraph 12, except admits that the parties entered into a Framework Agreement on March 16, 2020 and refers to that document for its contents.

13. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13.

14. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14, except admits that the COVID-19 pandemic caused airline passenger traffic to drop dramatically in the United States and other countries.

15. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15, except admits that Frontier is a U.S. airline that operates North American, Central American and Caribbean routes.

16. Defendant admits the allegations in paragraph 16.

17. Defendant denies the allegations in paragraph 17, except refers to the Framework Agreement for its contents.

18. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19. Defendant denies the allegations in paragraph 19.

20. Defendant denies the allegations in paragraph 20, except states that it is without knowledge or information sufficient to form a belief about the truth of the allegations concerning Frontier's communications with Airbus, admits that AMCK sent Frontier a Notice of Termination dated May 8, 2020 and refers to that document for its contents, admits that the only aircraft delivered under the Framework Agreement was MSN 10038, and admits that Frontier has made rent payments for MSN 10038.

21. Defendant denies the allegations in paragraph 21, except states that it is without knowledge or information sufficient to form a belief about the truth of the allegations concerning Frontier's communications with other leasing companies.

22. Defendant denies the allegations in paragraph 22.

23. Defendant denies the allegations in paragraph 23, except admits that Accipiter entered into guarantees in connection with certain lease agreements with Frontier and refers to those documents for their contents.

24. Defendant denies the allegations in paragraph 24, except admits that Vermillion provided a guarantee in connection with the MSN 10038 lease and refers to that document for its contents.

25. Defendant denies the allegations in paragraph 25, except admits that WFTC, not in its individual capacity but solely as owner trustee, is the lessor under certain lease agreements with Frontier.

26. Defendant denies the allegations in paragraph 26, except admits that UMB, not in its individual capacity but solely as owner trustee, is the lessor under certain lease agreements with Frontier.

27. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27, except admits that sale and leaseback arrangements are widely used by airlines to finance new aircraft acquisitions.

28. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29, except admits that on June 28, 2019, AMCK sent an email to Frontier and refers to that document for its contents, and admits that the parties entered into a LOI dated September 10, 2019 and refers to that document for its contents.

30. Defendant denies the allegations in paragraph 30, except admits that as of September 2019, AMCK affiliates, through certain owner trustees, owned and leased 14 aircraft to Frontier, and admits that AMCK affiliates, through certain owner trustees, started leasing aircraft to Frontier in 2017.

31. Defendant denies the allegations in paragraph 31, except admits that AMCK and Frontier entered into the LOI and the Framework Agreement and refers to those documents for their contents.

32. Defendant denies the allegations in paragraph 32.

33. Defendant denies the allegations in paragraph 33, except admits that AMCK and Frontier entered into the Framework Agreement and refers to that document for its contents.

34. Defendant denies the allegations in paragraph 34, except admits that AMCK and Frontier entered into the Framework Agreement and refers to that document for its contents.

35. Defendant denies the allegations in paragraph 35, except admits that Frontier took delivery of MSN 10038 on March 16, 2020, admits that Vermillion entered into a guarantee in connection with the MSN 10038 lease and refers to that document for its contents, and states that it is without knowledge or information sufficient to form a belief about the truth of the allegations concerning the original Airbus delivery schedule.

36. Defendant denies the allegations in paragraph 36.

37. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.

38. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38.

39. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.

40. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40.

41. Defendant denies the allegations in paragraph 41.

42. Defendant denies the allegations in paragraph 42.

43. Defendant denies the allegations in paragraph 43.

44. Defendant denies the allegations in paragraph 44.

45. Defendant denies the allegations in paragraph 45, except admits that AMCK sent Frontier a Notice of Termination and refers to that document for its contents.

46. Defendant denies the allegations in paragraph 46.

47. Defendant denies the allegations in paragraph 47, except admits that AMCK sent an email to Frontier on April 3, 2020 and refers to that document for its contents.

48. Defendant denies the allegations in paragraph 48.

49. Defendant denies the allegations in paragraph 49.

50. Defendant denies the allegations in paragraph 50.

51. Defendant denies the allegations in paragraph 51.

52. Defendant denies the allegations in paragraph 52.

53. Defendant denies the allegations in paragraph 53.

54. Defendant denies the allegations in paragraph 54, except admits that Paul Sheridan of AMCK sent an email to Frontier on April 6, 2020 and refers to that document for its contents.

55. Defendant denies the allegations in paragraph 55.

56. Defendant denies the allegations in paragraph 56, except admits that AMCK sent a draft letter to Frontier on April 9, 2020 and refers to that document for its contents.

57. Defendant denies the allegations in paragraph 57, except admits that Frontier failed to make rent payments due under 14 aircraft leases and admits that Frontier continued making rent payments for MSN 10038.

58. Defendant denies the allegations in paragraph 58, except admits that Paul Sheridan of AMCK sent an email to Frontier on April 30, 2020 and refers to that document for its contents.

59. Defendant denies the allegations in paragraph 59.

60. Defendant denies the allegations in paragraph 60.

61. Defendant denies the allegations in paragraph 61.

62. Defendant denies the allegations in paragraph 62.

63. Defendant denies the allegations in paragraph 63, except admits that AMCK sent a Notice of Termination to Frontier on May 8, 2020 and refers to that document for its contents.

64. Defendant denies the allegations in paragraph 64.

65. Defendant denies the allegations in paragraph 65.

66. Defendant denies the allegations in paragraph 66.

67. Defendant denies the allegations in paragraph 67.

68. Defendant denies the allegations in paragraph 68, except admits that Frontier made a payment on or about May 15, 2020.

69. Defendant denies the allegations in paragraph 69.

70. Defendant denies the allegations in paragraph 70.

71. Defendant denies the allegations in paragraph 71.

72. Defendant denies the allegations in paragraph 72.

73. Defendant denies the allegations in paragraph 73.

74. Defendant denies the allegations in paragraph 74.

75. Defendant denies the allegations in paragraph 75.

76. Defendant denies the allegations in paragraph 76.

77. Defendant states that it is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77.

78. Defendant denies the allegations in paragraph 78.

79. In response to paragraph 79, Defendant incorporates by reference its responses to paragraphs 11-78 herein.

80. Defendant denies the allegations in paragraph 80.

81. Defendant denies the allegations in paragraph 81.

82. Defendant denies the allegations in paragraph 82.

83. Defendant denies the allegations in paragraph 83.

84. Defendant denies the allegations in paragraph 84.

85. In response to paragraph 85, Defendant incorporates by reference its responses to paragraphs 11-84 herein.

86. Defendant denies the allegations in paragraph 86.

87. Defendant denies the allegations in paragraph 87, except admits that Frontier has made rent payments for MSN 10038.

88. Defendant denies the allegations in paragraph 88.

89. Defendant denies the allegations in paragraph 89.

90. Defendant denies the allegations in paragraph 90.

91. In response to paragraph 91, Defendant incorporates by reference its responses to paragraphs 11-90 herein.

92. Defendant denies the allegations in paragraph 92, except admits that affiliates of AMCK, through certain owner trustees, have leased 15 aircraft to Frontier and Defendant refers to those documents for their contents.

93. Defendant denies the allegations in paragraph 93, except admits that each of the aircraft lease agreements is in full force.

94. Defendant denies the allegations in paragraph 94, except admits that Frontier has made rent payments for MSN 10038.

95. Defendant denies the allegations in paragraph 95.

96. Defendant denies the allegations in paragraph 96, except admits that Vermillion entered into a guarantee in connection with the MSN 10038 lease and refers to that document for its contents, and admits that Accipiter entered into guarantees in connection with certain other lease agreements with Frontier and refers to those documents for their contents.

97. Defendant denies the allegations in paragraph 97.

98. In response to paragraph 98, Defendant incorporates by reference its responses to paragraphs 11-97 herein.

99. Defendant denies the allegations in paragraph 99, except states that no response is required with respect to legal conclusions.

100. Defendant denies the allegations in paragraph 100.

101. Defendant denies the allegations in paragraph 101.

102. Defendant denies the allegations in paragraph 102.

103. Defendant denies the allegations in paragraph 103.

104. In response to paragraph 104, Defendant incorporates by reference its responses to paragraphs 11-103 herein.

105. Defendant denies the allegations in paragraph 105, except admits that Frontier entered into 15 aircraft leases and refers to those documents for their contents and states that no response is required with respect to legal conclusions.

106. Defendant denies the allegations in paragraph 106.

107. Defendant denies the allegations in paragraph 107.

108. Defendant denies the allegations in paragraph 108.

109. In response to paragraph 109, Defendant incorporates by reference its responses to paragraphs 11-108 herein.

110. Defendant denies the allegations in paragraph 110.

111. Defendant denies the allegations in paragraph 111.

112. Defendant denies the allegations in paragraph 112.

113. Defendant denies the allegations in paragraph 113.

114. In response to paragraph 114, Defendant incorporates by reference its responses to paragraphs 11-113 herein.

115. Defendant denies the allegations in paragraph 115.

116. Defendant denies the allegations in paragraph 116.

117. Defendant denies the allegations in paragraph 117.

118. Defendant denies the allegations in paragraph 118.

119. Defendant denies the allegations in paragraph 119.

120. Defendant denies the allegations in paragraph 120.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses:

1. Frontier's claims are barred, in whole or in part, because Frontier failed to perform its obligations under the Framework Agreement and the relevant lease agreements.

2. Frontier's claims are barred, in whole or in part, by the statute of frauds.

3. Frontier's claims are barred, in whole or in part, by the doctrine of unclean hands.

4.  Frontier's claims are barred, in whole or in part, by the limitation of liability clauses in the Framework Agreement and the relevant lease agreements.

5.  Frontier's claims are barred, in whole or in part, by the doctrine of mitigation of damages.

## COUNTERCLAIM

AMCK Aviation Holdings Ireland Limited ("AMCK"), for its Counterclaim against Frontier Airlines, Inc. ("Frontier"), alleges through its undersigned counsel as follows:

### Nature of the Case

1.  AMCK has a right to indemnification for its fees and expenses arising from Frontier's contractual defaults, including the legal fees and expenses incurred in connection with this action.

2.  At the beginning of 2020, Frontier operated 14 Airbus A320 aircraft leased from AMCK through AMCK's affiliate and certain owner trusts.  Each of these leases is documented in an individual aircraft lease agreement requiring Frontier to make monthly payments of rent. In March 2020, Frontier and AMCK entered into a Framework Agreement (the "Framework Agreement") for the sale and leaseback of six additional A320 aircraft.  The first aircraft delivery under this agreement (being the 15th aircraft leased by Frontier) occurred on March 16, 2020.

3.  Beginning in April 2020, Frontier stopped making payments due under the first 14 lease agreements.  This breached Frontier's contractual obligations and constituted events of default under the lease agreements and the Framework Agreement.  As a result, on May 8, 2020, AMCK terminated the Framework Agreement with respect to future deliveries.  At that time, Frontier had failed to pay about $4.79 million in rent.

4. Frontier has refused to recognize the validity of AMCK's termination of the Framework Agreement.  Instead, Frontier has brought this lawsuit challenging that termination.

5. In the course of defending itself in this litigation and preserving its contractual rights, AMCK reasonably has incurred and continues to incur various legal fees and expenses.  Pursuant to the Framework Agreement and the relevant lease agreements, Frontier is required to indemnify AMCK for these reasonable fees and expenses.

**Parties**

6. AMCK is an aircraft leasing company organized under the laws of Ireland and with its principal place of business in Ireland.

7. Frontier is a passenger airline organized under the laws of Colorado and with its principal place of business in Denver, Colorado.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between a citizen of a foreign state and a citizen of a U.S. state, and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. This Court has personal jurisdiction over Frontier because Frontier consented to the personal jurisdiction of this Court in the Framework Agreement and each of the Lease Agreements (defined below).  In addition, Frontier is subject to personal jurisdiction based on its filing of the Complaint in this action.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Frontier is subject to personal jurisdiction in this District and consented to venue in this District.

**Factual Background**

**A.     The Original 14 Leases.**

11.     At the beginning of 2020, Frontier operated 14 Airbus A320 aircraft leased from AMCK, through its affiliate and certain owner trusts. Each of these aircraft is identified by a manufacturer's serial number (or "MSN"). The 14 leases (the "Original Leases") were governed by separate, but in all relevant respects similar, lease agreements. Frontier is the lessee under each agreement, and the lessor is either UMB Bank, N.A. ("UMB") or Wells Fargo Trust Company ("Wells Fargo"). However, UMB and Wells Fargo are not lessors in their individual capacities. Rather, UMB and Wells Fargo are "owner trustees" acting for the benefit of the "owner participant," an affiliate of AMCK called Accipiter Investments Aircraft 4 Limited ("Accipiter").

12.     The 14 Original Leases are briefly identified below:

| Agreement Dated as of | MSN | Lessor |
|---|---|---|
| June 9, 2014 | 6184 | Wells Fargo |
| February 19, 2016 | 7524 | Wells Fargo |
| March 6, 2018 | 8102 | Wells Fargo |
| June 5, 2018 | 8239 | Wells Fargo |
| August 29, 2018 | 8307 | Wells Fargo |
| July 31, 2018 | 8357 | Wells Fargo |
| August 30, 2018 | 8402 | Wells Fargo |
| March 22, 2019 | 8766 | UMB |
| April 23, 2019 | 8857 | UMB |
| May 9, 2019 | 8913 | UMB |
| June 27, 2019 | 8977 | UMB |
| June 28, 2019 | 9026 | UMB |
| August 19, 2019 | 9068 | UMB |

| Agreement Dated as of | MSN | Lessor |
|---|---|---|
| September 30, 2019 | 9177 | UMB |

13.     Each of the 14 Original Leases gives Frontier the right to possess and operate the individual aircraft at issue.  In exchange, Frontier is required to make monthly payments of rent to the lessor.  Each lease agreement includes a "hell or high water" clause specifying that Frontier's obligation to pay monthly rent was "absolute and unconditional."  The failure to make any required payment constitutes an event of default under each lease.

14.     Each of the 14 Original Leases gives the lessor and its beneficiaries various rights to indemnification for fees and expenses in the event of a default.  For instance, Section 23.4 of the MSN 6184 and MSN 7524 lease agreements provide:

> Lessee shall pay to Lessor . . . all expenses (including legal, survey and other costs) payable or incurred by Lessor after a Default has occurred in connection with the enforcement of or preservation of any of Lessor's rights under this agreement, or in respect of the repossession of the Aircraft.

As to the remaining lease agreements, Section 17.1(a) provides, for example:

> Upon the occurrence of any Event of Default, and at any time thereafter, whether or not Lessor shall have exercised, or shall thereafter exercise, any of its rights under Clause 16.2, Lessee shall upon receipt of notice from Lessor . . . pay and indemnify Lessor, Owner Participant and Affiliates of Owner Participant against all losses, fees, costs and expenses (including legal, professional, inspection and other out-of-pocket expenses but without duplication of any amounts referred to in paragraphs (i) or (iii) of this paragraph (a)) payable or incurred by Lessor, Owner Participant or Affiliates of Owner Participant in connection with such Event of Default, the drawing under any letter of credit provided as Security, or the enforcement of, or preservation of any of Lessor's or Owner Participant's rights under, this Agreement or the other Lessee's Documents or in respect of recovering possession of the Aircraft or carrying out any works or modifications required to place the Aircraft in the condition specified in Clause 18[.]

### B. The Framework Agreement.

15. On March 16, 2020, Frontier and AMCK entered into a Framework Agreement for the sale and leaseback of six additional Airbus A320 aircraft.

16. The Framework Agreement specifies a number of possible "Framework Events of Default" by Frontier. (Section 6.) These include any event of default under a lease agreement entered into pursuant to the Framework Agreement. (Section 6.1.7.) If a Framework Event of Default has occurred and is continuing, the Framework Agreement gives AMCK various non-exclusive remedies, including terminating its obligations under the Framework Agreement. (Section 6.2.)

17. Under Section 7 of the Framework Agreement, Frontier is required to indemnify AMCK for any fees or expenses relating to a default by Frontier. Section 7.1 provides:

> Frontier hereby agrees at all times to indemnify, protect, defend and hold harmless each Indemnitee from and against all and any liabilities, losses, claims, proceedings, damages, penalties, fines, fees, costs and expenses whatsoever (any of the foregoing being referred to as a "Claim") that any of them at any time suffers or incurs arising, directly or indirectly out of or in any way connected with a breach by Frontier of any of its obligations under the Transaction Documents or any Framework Event of Default.

### C. Lease of MSN 10038.

18. On the date that the Framework Agreement was entered, AMCK and Frontier took delivery of MSN 10038, the first of the six aircraft deliveries covered by the Framework Agreement. This was the 15th aircraft leased by Frontier pursuant to a lease involving AMCK.

19. This lease is documented in an aircraft lease agreement between Frontier and UMB, as owner trustee, dated as of March 16, 2020 (the "MSN 10038 Lease" and, together with the 14 Original Leases, the "Lease Agreements"). In this case, AMCK's affiliate, Vermillion, is the owner participant. Like the 14 Original Leases, the MSN 10038 Lease provides that the obligation to pay rent for the leased aircraft is absolute and unconditional. (Section 6.4.)

20. The MSN 10038 Lease specifies a number of events of default, including Frontier's failure to pay rent under any "Other Agreements." (Section 16.1(l).) "Other Agreements" is defined to include any other aircraft lease agreement between Frontier and lessor, Vermillion, or a Vermillion affiliate (*i.e.*, any of the 14 Original Leases). (Section 1.1.)

21. In the event of a default, Frontier is required to indemnify lessor and its beneficiaries for any fees and expenses incurred relating to Frontier's defaults. For instance, Section 17.1(a) provides:

> Upon the occurrence of any Event of Default, and at any time thereafter, . . . Lessee shall upon receipt of notice from Lessor . . . pay and indemnify Lessor, Owner Participant and Affiliates of Owner Participant against all losses, fees, costs and expenses (including legal, professional, inspection and other out-of-pocket expenses, but without duplication of any amounts referred to in paragraphs (i) or (iii) of this paragraph (a)) payable or incurred by Lessor, Owner Participant or Affiliates of Owner Participant in connection with such Event of Default, the drawing under any Letter of Credit provided as Security, or the enforcement of, or preservation of any of Lessor's or Owner Participant's rights under, this Agreement or the other Lessee's Documents or in respect of recovering possession of the Aircraft or carrying out any works or modifications required to place the Aircraft in the condition specified in Clause 18[.]

**D.     Payment Defaults and Termination of the Framework Agreement.**

22. On March 16, 2020—the same day that Frontier entered into the Framework Agreement and the MSN 10038 Lease and took delivery of MSN 10038—Frontier sent a letter to AMCK requesting a three-month rent deferral and return of one month's rent security deposit, based on disruptions caused by the COVID-19 pandemic.

23. Frontier's letter triggered discussion between AMCK and Frontier over a potential rent deferral. In the context of these discussions, AMCK agreed not to take any action with respect to Frontier's payment defaults for a period of 10 working days running from April 6, 2020 to April 21, 2020.

24. Around this time, Frontier suspended its monthly rent payments on the 14 Original Leases. However, after the 10-working day period expired on April 21, 2020, Frontier continued not to make any payment under the 14 Original Leases. AMCK did not agree to any such continued non-payment of rent, nor did AMCK waive Frontier's obligations or any of AMCK's rights in connection therewith.

25. On May 8, 2020, AMCK terminated the Framework Agreement with respect to future deliveries by providing a Notice of Termination to Frontier. The Notice of Termination refers to Frontier's non-payment of rent under each of the Original Leases, which outstanding amounts came to a total of approximately $4.79 million. AMCK explained that this non-payment of rent constituted events of default under (i) the Original Leases, (ii) the "Other Agreements" clause of the MSN 10038 Lease, and (iii) the Framework Agreement.

26. Frontier has refused to recognize AMCK's rights based on Frontier's various defaults. On the contrary, Frontier commenced this action on November 18, 2020. In addition to claims for breach of contract based on AMCK's termination of the Framework Agreement, the Complaint includes multiple other claims, including claims for breach of the Lease Agreements and a claim for common law fraud. The Complaint names as defendants not only AMCK, but also Accipiter, Vermillion, UMB and Wells Fargo. With respect to UMB and Wells Fargo, the Complaint names them only as "nominal defendants," and not in their individual capacities, but solely as owner trustees.

27. AMCK has reasonably incurred and continues to incur various legal fees and expenses in preserving its contractual rights upon Frontier's defaults, including in connection with this action.

## Count One
### (Breach of Contract – Indemnification)

28. AMCK repeats and incorporates the allegations in paragraphs 1 to 27 as if fully set forth herein.

29. AMCK and Frontier are parties to the Framework Agreement, a binding contract governed by New York law.  In addition, Frontier is a party to the Lease Agreements, each of which is a binding contract governed by New York law.

30. AMCK fully performed its obligations under the Framework Agreement and the lessors fully performed their obligations under the Lease Agreements.

31. Pursuant to the Framework Agreement and the Lease Agreements, Frontier agreed to indemnify AMCK for any fees or expenses incurred by AMCK in connection with any default by Frontier.

32. Frontier breached its payment obligations under each of the 14 Original Leases.  This constituted an event of default under each of these agreements, as well as under the "Other Agreements" clause of the MSN 10038 Lease.  The default under the MSN 10038 Lease constituted a Framework Event of Default under the Framework Agreement.  Based on these defaults by Frontier, AMCK validly terminated the Framework Agreement.

33. As a result of Frontier's defaults and its pursuit of this litigation, AMCK has incurred and continues to incur various legal fees and expenses.  Frontier is required to indemnify AMCK for all of these reasonable fees and expenses.

## Request for Relief

WHEREFORE, AMCK respectfully requests that the Court enter judgment in its favor as follows:

a) Awarding AMCK all fees and expenses incurred in connection with Frontier's payment defaults, including the legal fees and expenses incurred in this action;

b) Awarding pre- and post-judgment interest at the maximum lawful rate; and

c) Awarding AMCK such other and further relief as the Court may deem just and proper.

Dated: May 19, 2021
New York, New York

Respectfully submitted,

 /s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for AMCK Aviation Holdings Ireland Limited, Accipiter Investments Aircraft 4 Limited, Vermillion Aviation (Two) Limited, UMB Bank, N.A., as owner trustee, and Wells Fargo Trust Company, N.A., as owner trustee*