

DAVID G. HOSENPUD
503.778.2141
hosenpudd@lanepowell.com

March 4, 2022

**By ECF**

The Honorable Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:    *Frontier Airlines v. AMCK Aviation, et al.*, Case No. 20-cv-09713-LLS

Dear Judge Stanton:

Plaintiff Frontier Airlines, Inc. files this response to Defendant AMCK Aviation Holdings
Ireland Limited's request for a pre-motion conference regarding a protective order precluding
the depositions of Messrs. Gerald Ma and Francis Lee.  AMCK Letter (ECF No. 77).

As the Court recognized in its order denying AMCK's motion to dismiss, the circumstances of
this case "are so based on oral discussions, e-mails, conflicting beliefs about what was
understood and expected, and the like," that any resolution of the merits "must rest upon a
fuller understanding of the facts" arising from such evidence.  Order (ECF No. 45) at 3.
AMCK attempts to narrow this case to a breach of contract matter, and the factual inquiry to
"communications between AMCK and Frontier."  AMCK Letter at 1.  But this case includes
claims not just for breach of contract, *see* Compl. (ECF No. 1) Claims 1–3, but also breach of
the implied duty of good faith and fair dealing, breach of the covenant of quiet enjoyment,
promissory estoppel, and fraud, *see id.* Claims 4–7; *see also* Order at 3 ("Frontier has stated
claims upon which relief can be granted in its First through Seventh Claims").  The intent,
actions, and personal knowledge of AMCK's key decision-makers—as well as their
interactions among themselves—go directly to each of these claims, even if that information
was not communicated to Frontier at the time of the dispute.  In fact, AMCK's failure to
disclose its true intent and motivations to Frontier directly supports the claims for breach of
the implied duty of good faith and fair dealing and fraud.  *See, e.g.*, *Crigger v. Fahnestock
& Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (citing the five elements of a fraud claim under New
York law:  "(1) a material misrepresentation or omission of fact (2) made by defendant with
knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the
plaintiff; and (5) resulting damage to the plaintiff.").  Based on the evidence produced in
discovery, it appears that Messrs. Ma and Lee were AMCK's key decision-makers.

The Honorable Stanton
March 4, 2022
Page 2

"[H]ighly-placed executives are not immune from discovery," and "are not automatically given special treatment which excuses them from being deposed." *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (internal citations and quotations omitted); *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 PKL JCF, 2006 WL 468314, at *1 (S.D.N.Y. Feb. 28, 2006).   Depositions of the high-level corporate executives may be prevented "where the person sought to be deposed *has no personal knowledge of the events in dispute.*"   *Murray v. Cty. of Suffolk*, No. CV 01-3118 (TCP)(ETB), 212 F.R.D. 108, 109 (E.D.N.Y. 2002) (emphasis added).  But when "it is apparent that [the witness] has personal knowledge of facts relevant to th[e] lawsuit, plaintiff must carry a heavy burden to demonstrate good cause for a protective order." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984). "Even where * * * a high-ranking corporate officer denies personal knowledge of the issues at hand, this claim * * * is subject to testing by the examining party." *Six. W. Retail Acquisition*, 203 F.R.D. at 102 (citation omitted).  To be sure, "[a]n order barring a litigant from taking a deposition is most extraordinary relief." *Spreadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997) (citation omitted).

This is not a case where the directors/shareholders have "no personal knowledge of the events in dispute."   *Contra* AMCK Letter at 2 (quoting *Murray* 212 F.R.D. at 109, a case in which the Police Commissioner had no personal knowledge of the alleged misconduct).

Contrary to AMCK's assertions, Frontier has substantial evidence[1] demonstrating that Messrs. Ma and Lee have unique, relevant, personal knowledge of the events in dispute. Multiple documents demonstrate that Messrs. Ma and Lee, as well as AMCK's other shareholders, were the key decision-makers.  Evidence shows that they directed AMCK's negotiations with Frontier related to the matters in dispute, including AMCK's anticipatory repudiation and termination of the Framework Agreement.  This type of evidence directly relates to all the claims in this case.

Further, there are numerous communications from AMCK executives Paul Sheridan and Jane O'Callaghan—who AMCK claims in its letter are the relevant decision-makers—explaining that they have no authority to make a decision about the aircraft deferral discussions, but instead are relying on direction from AMCK's board/shareholders (*i.e.*, Messrs. Ma and Lee).

The depositions of Messrs. Ma and Lee will not be duplicative, nor can all necessary topics be sufficiently answered by Mr. Sheridan and Ms. O'Callaghan.   The evidence shows that Messrs. Ma and Lee often disagreed with AMCK's executives regarding how to handle the Frontier situation—with AMCK ultimately following Messrs. Ma and Lee's directives. Moreover,  neither  Mr. Sheridan  nor  Ms. O'Callaghan (nor  the  other  three  AMCK

---

[1] Frontier produced examples of this evidence under seal because AMCK designated these documents "Confidential" pursuant to the stipulated protective order. *See* Declaration of David G. Hosenpud (ECF No. 80), Exs. 1–3.  Accordingly, at this time, Frontier will not discuss this evidence in depth in this response letter.

The Honorable Stanton
March 4, 2022
Page 3

representatives that Frontier has noticed for deposition) could have any knowledge about discussions solely between AMCK's shareholders and board members that informed AMCK's actions regarding Frontier. In short, in a case where the decision-makers' intent is at the core of the claims, Messrs. Ma and Lee have the relevant knowledge.

Courts have required purported apex individuals to sit for depositions based on less involvement in the action. *See, e.g.*, *Six W. Retail Acquisition*, 203 F.R.D. at 104 (ordering the deposition of apex individuals who "had been well-informed about" one of issues in dispute, and "had *some* unique knowledge" about another disputed area).

Frontier also opposes AMCK's request that Frontier be required to petition the Court for the depositions of Messrs. Ma and Lee only after deposing the other AMCK individuals and ascertaining whether the shareholders have "any unique, relevant knowledge." AMCK Letter at 2. In one of the cases AMCK cites to support this proposition, the Court specifically found that "several factors weigh in favor" of deposing the apex individuals, including that the case involved "multimillion dollar claims and counterclaims" with relevant "internal investigations and conversations," quite similar to the present matter. *Treppel*, 2006 WL 468314, at *2. The *Treppel* Court, however, determined that the depositions should be postponed because "[t]he plaintiff has not explained why the noticed individuals are believed to have personal knowledge of the underlying events, nor why that knowledge is believed to be unique." *Id.* at *3. Frontier has explained both.

In another of AMCK's cited cases, the Court ordered depositions of multiple directors, and then allowed the defendant to seek additional director depositions if necessary. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 2017 WL 2266983, at *3 (S.D.N.Y. Apr. 26, 2017). Here, there are many other AMCK directors, shareholders, and board members that Frontier has not noticed for deposition. Instead, Frontier only seeks the depositions of Messrs. Ma and Lee—the two directors/shareholders with the most unique, personal knowledge.

Respectfully submitted,

LANE POWELL PC

s/David G. Hosenpud

David G. Hosenpud

cc:    Counsel of Record (via ECF)

022510.0155/8901037.2