UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>                Plaintiff,<br><br>    v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>                Defendants. | 20 Civ. 9713 (LLS) |

**DECLARATION OF JANE O'CALLAGHAN**

Jane O'Callaghan declares and states as follows:

1. From 2017 to April 2022, I was the Chief Commercial Officer of AMCK Aviation Holdings Ireland Limited ("AMCK"). I am signing this declaration in support of AMCK's motion for summary judgment in this matter. The statements in this document are based on my personal knowledge and, where indicated, my knowledge of internal records from AMCK.

2. AMCK was an aircraft leasing company based in Ireland. As AMCK's Chief Commercial Officer, I was responsible for all airline, lessor and manufacturer-related commercial activities. In this role, I reported to AMCK's Chief Executive Officer, Paul Sheridan.

3. One of the methods by which AMCK leased aircraft was through "sale and leaseback" or "SLB" transactions. In a typical sale and leaseback transaction, an aircraft owner or purchaser entity (usually an airline) enters into an arrangement for an aircraft leasing company to purchase the aircraft and then lease it back to that entity.

**Original Frontier Leases**

4. At the beginning of 2020, AMCK, through its affiliate and certain owner trusts, leased 14 Airbus A320 aircraft to Frontier Airlines, Inc. ("Frontier"). Each of these aircraft was identified by a manufacturer's serial number ("MSN") associated with it. These 14 leases were governed by separate, but in all substantive respects similar, lease agreements. Frontier is the lessee under each agreement, and the lessor is either UMB Bank, N.A. ("UMB") or Wells Fargo Trust Company, N.A. ("Wells Fargo"). In these leases, UMB and Wells Fargo act as "owner trustees" for the benefit of the "owner participant," an affiliate of AMCK called Accipiter Investments Aircraft 4 Limited ("Accipiter").

5. As reflected in the lease agreements, the date, MSN and lessor under these leases are as follows:

| Lease Date | MSN | Lessor |
| --- | --- | --- |
| June 9, 2014 | 6184 | Wells Fargo |
| February 19, 2016 | 7524 | Wells Fargo |
| March 6, 2018 | 8102 | Wells Fargo |
| June 5, 2018 | 8239 | Wells Fargo |
| August 29, 2018 | 8307 | Wells Fargo |
| July 31, 2018 | 8357 | Wells Fargo |
| August 30, 2018 | 8402 | Wells Fargo |
| March 22, 2019 | 8766 | UMB |
| April 23, 2019 | 8857 | UMB |
| May 9, 2019 | 8913 | UMB |
| June 27, 2019 | 8977 | UMB |
| June 28, 2019 | 9026 | UMB |
| August 19, 2019 | 9068 | UMB |
| September 30, 2019 | 9177 | UMB |

6. Attached as Exhibit 1 are true and correct excerpts from the lease agreement concerning MSN 6184. The excerpted portions of Section 8.3(a), Section 9.1, Section 23.1,

and Section 23.13 are identical to the equivalent provisions of the lease agreement concerning MSN 7524.

7. Attached as Exhibit 2 are true and correct excerpts from the lease agreement concerning MSN 9177. The excerpted portions of Section 4.3(a), Section 6.4, and Section 20.4 are identical to the equivalent portions of the lease agreements concerning MSN 8102, MSN 8239, MSN 8307, MSN 8357, MSN 8402, MSN 8766, MSN 8857, MSN 8913, MSN 8977, MSN 9026 and MSN 9068.

8. Each of these 14 leases gives Frontier the right to possess and operate an individual aircraft for a term of 12 years. In exchange, Frontier is required to make monthly payments of rent to the lessor. The lease payment amount varies by aircraft, but ranges from approximately $320,000 to $360,000 per month. The payment due date is determined with reference to the date of delivery of the aircraft. For example, if an aircraft was delivered on the fifth day of a month, the payment due date for that aircraft would be the fifth day of each month. If that day falls on a weekend or legal holiday, the payment due date would be the next business day.

9. Accipiter serves as "lessor guarantor" under some of the original leases, guaranteeing the performance by the lessor under each such lease. Attached as Exhibit 3 are true and correct excerpts of a Guaranty, dated as of September 30, 2019, by Accipiter in favor of Frontier, relating to the aircraft bearing MSN 9177. The excerpted portion of Section 1 is identical to the equivalent portions of other guarantees provided by Accipiter in favor of Frontier.

### The Framework Agreement and MSN 10038 Lease

10. In September 2019, Frontier and AMCK agreed to a letter of intent regarding the future sale and leaseback of additional aircraft. After further negotiation, on March 16, 2020, Frontier and AMCK entered a Framework Agreement for the sale and leaseback of six

additional Airbus A320neo aircraft.  Under a separate purchase agreement between Airbus and Frontier, these aircraft were scheduled for delivery from Airbus to Frontier in 2020.  The Framework Agreement provides for the purchase of the aircraft by an affiliate of AMCK and for the lease of these aircraft back to Frontier.  Attached as Exhibit 4 is a true and correct copy of the Framework Agreement.  I understand that certain confidential financial information will be redacted.

11. On March 16, 2020, Frontier took delivery from Airbus of MSN 10038, the first of the six aircraft deliveries covered by the Framework Agreement.  On the same date, Frontier sold the aircraft to Vermillion Aviation (Two) Limited ("Vermillion"), a former affiliate of AMCK, in exchange for a cash payment of $51 million.  Frontier also entered into a 12-year lease for the aircraft with UMB, acting as the owner trustee.  The AMCK and Frontier teams had worked diligently over the previous weeks to complete this transaction.  By email on March 16, 2020, I congratulated the Frontier team on the delivery, and Spencer Thwaytes of Frontier replied to express his thanks as well.  Attached as Exhibit 5 is a copy of this email exchange.

12. The lease of MSN 10038 is documented in an aircraft lease agreement between Frontier and UMB, as owner trustee, dated as of March 16, 2020 (the "MSN 10038 Lease").  Attached as Exhibit 6 is a true and correct copy of excerpts from the MSN 10038 Lease.

13. For the MSN 10038 Lease, Vermillion is the owner participant and guarantor.  Attached as Exhibit 7 is a true and correct copy of excerpts from a Guaranty, dated as of March 16, 2020, by Vermillion in favor of Frontier relating to MSN 10038.

14. At all relevant times, AMCK acted as the servicer for the 14 original leases and the MSN 10038 Lease.

### Frontier's Request for a Rent Deferral

15. On March 16, 2020, a few hours after receiving $51 million from Vermillion for MSN 10038, Frontier sent a letter to AMCK requesting a three-month rent deferral and return of the security deposit for all aircraft leases serviced by AMCK. Attached as Exhibit 8 is a true and correct copy of a March 16, 2020 email and attached letter from Spencer Thwaytes to me.

16. In discussion with my colleagues at AMCK, we came to the view that, given the number of aircraft involved, Frontier's request represented a significant financial risk to AMCK. Nothing prevented Frontier from requesting further rent deferrals on the same aircraft in the future. Moreover, the Framework Agreement contemplated the sale and leaseback of five additional aircraft over the coming months. Frontier might seek to defer rent payments on these aircraft as well.

17. In addition, the AMCK team was surprised and displeased by the timing of Frontier's request. During negotiations relating to the sale and leaseback of MSN 10038, there was no warning from Frontier that such a request for rent deferral might be made. Suddenly, Frontier was asking for rent deferrals and security deposit refunds on all aircraft on lease, including the recently-purchased MSN 10038, for which AMCK's affiliate had just paid Frontier $51 million. At a minimum, we felt Frontier had not been transparent about the need for rent deferral in the lead-up to the sale and leaseback of MSN 10038.

18. AMCK was not willing to grant Frontier the requested deferral without a quid pro quo of some kind from Frontier. We were also adamant that any agreement on rent deferral should not include MSN 10038.

### Rent Deferral Discussions

19. Frontier's request triggered a series of negotiations between the parties over the terms of a potential rent deferral. From the AMCK side, Paul Sheridan and I were the

participants in these discussions. Although we consulted internally with other AMCK personnel and representatives of AMCK's shareholder, Paul and I handled the communications with Frontier. My principal point of contact at Frontier was Robert Fanning.

20.  Throughout these discussions, I expected that any potential rent deferral agreement would be documented in writing. This is consistent with industry practice. For instance, during the pandemic, whenever AMCK agreed to a rent deferral with an airline lessee, that arrangement was documented in a formal agreement or at least was confirmed in writing. Consistent with this practice, Frontier sent draft proposed rent deferral agreements to me by email on March 24 and April 1, 2020. Copies of these proposals are attached as Exhibit 9 and 10. The parties never reached agreement with respect to these drafts.

21.  I communicated to Frontier several of AMCK's proposals regarding Frontier's rent deferral request. On March 18, 2020, I sent an email with AMCK's initial proposal in response to Mr. Thwaytes's March 16 request. A few days later, Mr. Thwaytes sent me an email asking AMCK to reevaluate its position. On March 26, 2020, I sent an email to Frontier with another proposal. This March 26 proposal included as a condition of any rent deferral that Frontier agree with Airbus on a delay in the delivery of aircraft contemplated by the Framework Agreement. When I did not receive a response to this proposal, I sent a follow-up email to Frontier on March 31, 2020. During this time and over the coming weeks, I also communicated by text message with Mr. Fanning about the terms of any potential rent deferral. Attached as Exhibits 11-15 are true and correct copies of these emails and text messages.

### Frontier's Failure to Pay Monthly Rent

22.  In early April 2020, Frontier reached out to request a short-term deferral of upcoming rent payments while the parties' discussions were ongoing. On April 6, 2020, Paul

Sheridan sent an email to Frontier granting Frontier a 10-day grace period. To my knowledge, this grace period was never extended beyond April 21, 2020.

23. Beginning on April 6, 2020, Frontier stopped making its monthly rent payments on the 14 original leases. Specifically, in the month of April 2020, Frontier owed 14 separate rent payments. These payment dates were reflected in invoices sent to Frontier. Based on my review of internal records, the payment dates were as follows:

| MSN | Payment Date | Payment Amount |
|---|---|---|
| 8239 | April 3, 2020 | $342,532.39 |
| 8102 | April 6, 2020 | $354,139.30 |
| 8913 | April 9, 2020 | $344,568.92 |
| 6184 | April 17, 2020 | $343,186.00 |
| 9068 | April 17, 2020 | $323,126.20 |
| 8766 | April 22, 2020 | $347,864.42 |
| 8857 | April 23, 2020 | $347,600.78 |
| 7524 | April 24, 2020 | $362,630.80 |
| 8977 | April 27, 2020 | $331,694.50 |
| 9026 | April 28, 2020 | $332,243.75 |
| 8307 | April 29, 2020 | $342,554.02 |
| 9177 | April 30, 2020 | $326,641.40 |
| 8357 | April 30, 2020 | $345,236.14 |
| 8402 | April 30, 2020 | $343,181.29 |

24. Frontier did not make any of the above-referenced rent payments in April 2020 or the first week of May 2020.

**Continued Discussions**

25. After the 10-day grace period was agreed, AMCK proposed a further period of forbearance that would cover the rest of the month of April. On April 9, 2020, I sent an email to Frontier attaching a draft rent forbearance letter for discussion. Attached as Exhibit 16 is a true and correct copy of this email and attachment. As indicated in the cover email, the draft related only to one of the 14 original leases, and my expectation was that it would be

replicated for the other leases once the parties agreed on the terms.  The draft letter proposed a temporary period of forbearance with respect to Frontier's non-payment of rent in April—in this case, the $362,630.80 in rent due on April 24, 2020 for MSN 7524.  The letter was based on the standard form of forbearance letter that AMCK used for other lessees with whom rent deferrals were agreed.  Frontier never signed the letter or otherwise informed me that they agreed with its terms.  I asked Frontier for feedback on this draft, as reflected in an April 21, 2020 text message to Mr. Fanning (Exhibit 15), but never received any.

26. By mid-April, Frontier informed AMCK that it would not be able to get the six-month delivery delay from Airbus that AMCK had requested.  To my knowledge, no one from AMCK was involved in Frontier's discussions with Airbus.  As discussions continued about other potential concessions, AMCK emphasized that it would not purchase future aircraft deliveries if any rent was outstanding.  For example, I made this point to Mr. Fanning in text messages on April 23 and April 25 (*see* Exhibit 15).

### Termination of the Framework Agreement

27. In early May 2020, Frontier had not made any of the April rent payments for the original leases.  The rent arrears in early May totaled approximately $4.79 million.  Frontier also did not make payments of rent due in May.  For example, the rent for MSN 8239 was due on May 5, 2020 and the rent for MSN 8102 was due on May 6, 2020.  Frontier did not make these rent payments on those dates.

28. On May 8, 2020, AMCK terminated the Framework Agreement with respect to future deliveries by providing a Notice of Termination to Frontier.  The Notice of Termination refers to Frontier's non-payment of rent under each of the original leases.

29. Several days after the termination, on May 14, 2020, Frontier paid all of the outstanding April and May rent.  This "catch-up" payment of approximately $5.8 million reflected only the invoiced rent amounts per the terms of the leases, and did not include any

interest on those amounts. A copy of an internal receivables report concerning this payment, and a related internal email I sent, are attached as Exhibits 17 and 18.

30. At the time I left AMCK in April 2022, the lease agreements with Frontier remained in force, and Frontier had continued to make monthly rent payments and to operate the leased aircraft. Neither AMCK nor any other party terminated any of the lease agreements. In addition, other than terminating the Framework Agreement, neither AMCK nor any other party exercised any other remedies against Frontier in connection with the payment defaults under the lease agreements. For instance, to my knowledge, AMCK has never grounded the aircraft or otherwise prevented Frontier from using them.

I declare under penalty of perjury under the laws of the United States America that the foregoing is true and correct.

Dated: November 10, 2022

Jane O'Callaghan