| | |
|---|---|
| Date: | Wednesday, March 25 2020 05:31 AM |
| Subject: | AMCK/Frontier Rent Deferral Agreement |
| From: | Miao, Qingqing <MiaoQ@LanePowell.com> |
| To: | Jane O'Callaghan <jane.ocallaghan@amck.aero>; |
| CC: | Lambert, Paul M. <LambertP@LanePowell.com>; robert.fanning@flyfrontier.com; Sashikumar Bindu, Sharath <Sharath.Sashikumar@flyfrontier.com>; |
| Attachments: | Frontier (MSN 6184 N227) - Lease Payment and Waiver Agreement - AMCK.docx |

Hi Jane,

Please find enclosed the draft rent deferral and waiver agreement for AMCK's review. Let us know if you have any questions. Thanks.

Best,
Qingqing



**QINGQING MIAO**
Associate  Bio | vCard
miaoq@lanepowell.com
D 206.223.7031  C 206.954.3643
**LANEPOWELL.COM**

---

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

# LEASE PAYMENT DEFERRAL
# AND WAIVER AGREEMENT

THIS LEASE PAYMENT DEFERRAL AND WAIVER AGREEMENT (this "**Agreement**") is dated as of March ___, 2020, and effective as of April 1, 2020 (the "**Effective Date**"), by and between Wells Fargo Trust Company, N. A., not in its individual capacity but solely as owner trustee ("**Lessor**"), on the one hand, and Frontier Airlines, Inc., a Colorado corporation ("**Lessee**"), on the other hand.  Lessor and Lessee are sometimes referred to herein individually as a "**Party**," and collectively as the "**Parties**." Except as otherwise defined herein, and except where the context requires otherwise, capitalized terms used herein without definition shall have the meanings ascribed to them in the Lease Documents (as defined below).

RECITALS:

A. Lessee and Lessor are parties to that certain Aircraft Lease Agreement dated June 9, 2014 as further described in the attached Schedule 1 (the "**Lease**")(together with all exhibits, schedules, appendices, attachments and other documents attached thereto, and as amended, supplemented or otherwise modified from time to time, together with all other documents and agreements entered into in connection therewith, collectively the "**Lease Documents**"), the terms of which govern the lease of that certain aircraft also described on Schedule 1 (the "**Aircraft**").

B. For purposes hereof, the term "**Lease Obligations**" shall mean all debts, liabilities and obligations of Lessee to Lessor under the Lease Documents, all tasks or duties for the performance of covenants or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) by Lessee under the Lease Documents, and all covenants and duties of Lessee regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any agreement or other instrument, arising under the Lease Documents.

C. Lessee has requested that Lessor waive payment of all scheduled Rent payments falling due under the Lease from the Effective Date through June 30, 2020 (the "**Deferral Period**"), (collectively, the "**Concessions**").

D. In exchange for the Concessions, Lessee shall repay any Deferred Lease Payments (as defined in Clause 2 of this Agreement) with interest pursuant to the terms and conditions thereof.

AGREEMENT:

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions described herein, the Parties hereto agree as follows:

1. <u>Adoption of Recitals</u>.  The recitals set forth above are adopted as a part of the agreement of the Parties, and the facts set forth therein are acknowledged and agreed by the Parties to be true, accurate and complete as of the Effective Date.

2. <u>Deferred Lease Payments; Accommodation</u>.  Notwithstanding anything to the contrary in the Lease, Lessor and Lessee agree that the Rent payments currently due and owing under the Lease

in the months of April 2020, May 2020 and June 2020, each such Rent payment in the amount of $343,186 (the "**Deferred Lease Payments**"), shall be deferred from the Effective Date for the Deferral Period in accordance with Clause 3 below. For the avoidance of doubt, non-payment of such amounts on any originally applicable Rent Date shall not be an Event of Default or Default under the Lease, provided that the Lessee repays such Deferred Lease Payments in accordance with Clause 3 below.

       3.      <u>Repayment</u>. Interest at a rate of three per cent (3%) per annum shall be payable on the Deferred Lease Payments. The Deferred Lease Payments and all accrued interest shall be paid to Lessor over a period of nine (9) consecutive months in equal instalments starting from the Rent Date falling immediately after the end of the Deferral Period and on each following Rent Date until the full of amount of Deferred Rent and accrued interest are repaid (the "**Repayment Period**"). For the avoidance of doubt, during the Repayment Period, Lessee shall pay to Lessor on each Rent Date an aggregate sum including (i) the monthly Rent due and payable under the Lease, (ii) an instalment of Deferred Lease Payments calculated in accordance with this Clause 3 and (iii) the accrued interest on such instalment of Deferred Lease Payments. A table setting out the revised amounts payable through the Deferral Period and the Repayment Period is attached as Schedule 2. Any breach by Lessee of this provision will automatically result in the termination of the Repayment Period whereupon the unpaid balance of the Deferred Lease Payments shall immediately and without further act become due and payable.

       4.      <u>Conditions Precedent.</u> Lessor's accommodations under this Agreement are conditioned upon Lessee's full and timely satisfaction of each of the following conditions precedent on or before March 31, 2020:

          4.1      <u>Closing Documents</u>. Lessor shall have received, in form and substance satisfactory to Lessor, duly executed counterparts of this Agreement and any other reasonable and customary documents required by Lessor to be executed in connection herewith.

          4.2      <u>Accuracy of Representations and Warranties</u>. Lessee's representations and warranties herein shall be true and correct in all material respects.

          4.3      <u>Authorization Documents</u>. Lessee shall have received all necessary authority to enter into this Agreement and all other transactions contemplated hereby.

       5.      <u>Representations and Warranties</u>. Lessee hereby represents and warrants to Lessor as follows: (i) no material default, event of default, breach or failure of condition has occurred or exists under the Lease Documents (as modified by this Agreement), and the Lease Documents remain in full force and effect in accordance with their express terms (as modified by this Agreement); (ii) Lessee has all requisite power and authority to execute this Agreement and any other agreements or instruments required hereunder and to perform all of its obligations hereunder, and under this Agreement and all such agreements and instruments have been duly executed and delivered by Lessee and constitute the legal, valid and binding obligation of the Lessee, enforceable in accordance with its terms; (iii) all representations and warranties of Lessee in this Agreement and the Lease Documents, including the statements contained in the Recitals to this Agreement, continue to be true and correct in all material respects as of the Effective Date of this Agreement; and (iv) all consents, subordinations and other documents in favor of Lessor related to the Lease Documents remain in full force and effect.

CONFIDENTIAL          AMCK016076

6.   Creditor/Debtor Relationship.  Lessee acknowledges and agrees that the relationship between Lessor, on the one hand, and Lessee, on the other hand, is solely that of creditor and debtor. Nothing contained herein or in any document referred to herein or executed or delivered in connection herewith shall be deemed or construed to create a special relationship, or fiduciary duty, by or between Lessor and Lessee.

7.   Official Filings.  This Agreement shall not be filed in the official records of the Federal Aviation Administration registry or any similar public records filing office, and no international interest associated this Agreement shall be filed with the International Registry in Dublin, Ireland.

8.   Miscellaneous.

8.1   Notices.  Any notice to be given or other document to be delivered by any party to the other or others hereunder, may be delivered in person to an officer of any party, or may be deposited in the United States mail, duly certified or registered, return receipt requested, with postage prepaid, or by Federal Express or other similar overnight delivery service, or by fax machine if concurrently delivered by another permissible method set forth in this Section, and addressed to the Party for whom intended, as follows:

To Lessor:   Wells Fargo Trust Company, National Association

Address:   299 South Main Street, 5th Floor
           Salt Lake City, Utah 84111 2
Attention: Corporate Trust Lease Group
Fax:       (801) 246-7142
Email:     ctleasecompliance@wellsfargo.com

with a copy to:

AMCK AVIATION HOLDINGS IRELAND LIMITED
28-29 Sir John Rogerson's Quay
Dublin 2
Ireland
E-mail:  notices@amck.aero
Attention:  The Directors

To Lessee:   Frontier Airlines, Inc.
             4545 Airport Way
             Denver, CO  80239

             Attn: Treasurer
             Email: contract.manager@flyfrontier.com

3

CONFIDENTIAL                                                                                      AMCK016077

        With a copy to:        Frontier Airlines, Inc.
                                                    4545 Airport Way
                                                    Denver, CO  80239
                                                    Attn:  Howard Diamond
                                                    Email: howard.diamond@flyfrontier.com

Any Party hereto may from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.  Unless otherwise specifically provided for herein, all notices, payments, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given and received (i) upon personal delivery, or (ii) as of the third business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as set forth above, (iii) the immediately succeeding Business Day after deposit with Federal Express or other similar overnight delivery system, or (iv) upon confirmation of electronic printed receipt if delivered by fax.

        8.2        <u>Survival</u>.  All of Lessee's covenants, representations, warranties and other agreements under this Agreement shall survive the consummation of the transactions contemplated by this Agreement.

        8.3        <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, via facsimile or pdf, each of which shall be an original, but all of which shall constitute one and the same instrument.

        8.4        <u>Attorneys' Fees</u>.  The Lessee shall bear all reasonable costs and expenses incurred by it, the Lessor and the Owner Participant and any financiers of the Aircraft in connection with the negotiations and documentation of this Agreement, and the transactions contemplated hereby or thereby, as applicable, including without limitation, reasonable legal fees, and the Lessee shall promptly reimburse the Lessor, the Owner Participant, any lease manager or servicer and any financiers of the Aircraft for the same upon presentation of supporting invoices.  For the avoidance of doubt, Lessor shall remain responsible for any reasonable attorney's fees, costs and expenses incurred by Lessee arising from or in connection with any transfers or assignments by Lessor pursuant to Section 22 of the Lease.

        8.5        <u>Time of Essence</u>.  Time is expressly declared to be of the essence in this Agreement and of every provision hereof in which time is an element.

        8.6        <u>Governing Law; Venue</u>.  This Agreement and the obligations of the Parties hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York.  The Parties mutually consent to venue in the state or federal courts located in the State of New York for any dispute under this Agreement.

        8.7        <u>Benefit and Burden</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and assigns.

        8.8        <u>Waiver and Amendment</u>.  No breach of any provision hereof can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only

CONFIDENTIAL        AMCK016078

by a written agreement executed by the Parties at the time of the modification. Except as expressly set forth in this Agreement, the Lease Documents remain in full force and effect.

    8.9  Captions and Interpretations. Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof. No provision in this Agreement is to be interpreted for or against either party because that party or his legal representative drafted such provision.

    8.10  Integration. This Agreement constitutes the entire, final and integrated agreement between the Parties hereto pertaining to the subject matter hereof, fully supersedes any and all prior understandings, representations, warranties and agreements between the Parties hereto, or any of them, pertaining to the subject matter hereof, and may be modified only by written agreement signed by all of the Parties hereto.

    8.11  Severance. If any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision will be deemed to be severed and deleted from the agreement as a whole and neither such provision, nor its severance and deletion shall in any way affect the validity of the remaining provisions of this Agreement; provided, however, if the deletion of any such provision interferes with the material purpose of this Agreement, the entire agreement shall terminate.

    8.12  Confidentiality. Except as may be required by law, court order or judicial process, the terms and conditions of this Agreement shall be kept strictly confidential by the Parties and not disclosed to anyone other than their respective employees, officers, directors, attorneys, advisors, servicers, affiliates and lenders who are each made aware of the confidentiality requirements of this provision and are bound to comply with it.

    8.13 Further Assurance. Lessor and Lessee each agrees to execute and deliver such further documents, and to do such further things, as the other Party may reasonably request, in order to more fully effect the intent and purpose of this Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE]

CONFIDENTIAL  AMCK016079

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the day and year first above written.

**LESSOR:**

WELLS FARGO TRUST COMPANY, NATIONAL ASSOCIATION, not in its individual capacity but solely as owner trustee
By:_____
Name:_____
Its:_____

**LESSEE:**

FRONTIER AIRLINES, INC.


By:_____
Name:_____
Its:_____

CONFIDENTIAL

## SCHEDULE 1

### DESCRIPTION OF LEASE AND AIRCRAFT

**DESCRIPTION OF LEASE:**

Aircraft Operating Lease Agreement dated as of June 9, 2014 between Wells Fargo Bank North West, National Association, now known as Wells Fargo Trust Company, National Association, as owner trustee, as lessor, and Frontier Airlines, Inc., as lessee, as supplemented, assigned and amended.

**DESCRIPTION OF AIRCRAFT:**

One (1) Airbus model A320-214 (shown on the IR as AIRBUS model A320) aircraft bearing manufacturer's serial number 6184 and U.S. Registration No. N227FR and two (2) CFM International, Inc. model CFM56-5B4/3 (shown on the IR as CFM model CFM56-5B) aircraft engines bearing manufacturer's serial numbers 569346 and 569347.

CONFIDENTIAL

## SCHEDULE 2

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED RENT PAYABLE | AMOUNT OF ACCRUED INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 17TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 17TH MAY 2020 | $0 | $0 | $0 | $0 |
| 17TH JUNE 2020 | $0 | $ 0 | $0 | $0 |
| 17TH JULY 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH AUGUST 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH SEPTEMBER 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH OCTOBER 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH NOVEMBER 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH DECEMBER 2020 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH JANUARY 2021 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH FEBRUARY 2021 | $343,186 | $ 114,395 | $1,716 | $459,297 |
| 17TH MARCH 2021 | $343,186 | $ 114,395 | $1,716 | $459,297 |

CONFIDENTIAL                                                                                                     AMCK016082