| Date: | Wednesday,  April 1 2020 08:45 AM |
|---|---|
| Subject: | RE: rent deferral request & upcoming 5 x A320neo SLB deliveries |
| From: | Miao, Qingqing <MiaoQ@LanePowell.com> |
| To: | Jane O'Callaghan <jane.ocallaghan@amck.aero>; |
| CC: | Fanning, Robert <robert.fanning@flyfrontier.com>; Sashikumar Bindu, Sharath <Sharath.Sashikumar@flyfrontier.com>; Thwaytes, Spencer <Spencer.Thwaytes@flyfrontier.com>; Lambert, Paul M. <LambertP@LanePowell.com>; |
| Attachments: | image001.png; Omnibus Lease Payment and Waiver  Agreement_AMCK_UMB.docx; Omnibus Lease Payment and Waiver  Agreement_AMCK_WF.docx |

Hi Jane,

We circulated a draft lease payment waiver & deferral agreement form on March 24.  To facilitate document execution, we created two omnibus agreements to include multiple aircraft.  One agreement is for the aircraft currently owned by WFT and the other agreement is for the aircraft owned by UMB.  The substance of the omnibus agreement is the same was the one aircraft agreement that we circulated prior.

Feel free to let us know if you have any questions.  Thank you!

Best,
Qingqing



**QINGQING MIAO**
**Associate** Bio | vCard
miaoq@lanepowell.com
**D** 206.223.7031  **C** 206.954.3643
**LANEPOWELL.COM**

**From:** Fanning, Robert <robert.fanning@flyfrontier.com>
**Sent:** Tuesday, March 31, 2020 9:09 PM
**To:** Jane O'Callaghan <jane.ocallaghan@amck.aero>; Thwaytes, Spencer <Spencer.Thwaytes@flyfrontier.com>; Sashikumar Bindu, Sharath <Sharath.Sashikumar@flyfrontier.com>; Lambert, Paul M. <LambertP@LanePowell.com>; Miao, Qingqing <MiaoQ@LanePowell.com>
**Subject:** Re: rent deferral request & upcoming 5 x A320neo SLB deliveries

> **CAUTION:** This is an external email. Do **NOT** click links or open attachments unless you are certain the content is safe.

Hi Jane,

Here is the answers the your below questions.

- What support are Indigo Partners going to give to the airline- capital injections etc?   As far as I am aware right now the short answer is no
- What is your current cash position? What other liquidity facilities are in place/in the process of being put in place?  $610Mil cash on hand, we are in very early discussions looking at other options of raising cash but nothing had been decided or agreed yet, we are also going to the process of understanding the government loan program
- How much of the fleet is now grounded? All our of A321CEOs, A319s and A320CEOs have been grounded. The A320NEO fleet is currently been used and rotated as needed.

- **Can you provide the FYE 2019 financial statements asap?** You should of been on the distribution list and received them as they were emailed out by our accounting department 10 days ago but they were released.  Please double check if have received them, if not received them please let me know and I will have Sharath send them to you.

I spoke to Jimmy regarding the 5 remaining SLBs, under our current plan they will used on our routes we are flying. While they won't see 12-14 hours of flying per day under our normal schedule they will be flying under our current network plan.  Noted on the interest rate and thanks.

Regards,

**Robert Fanning**
Director, Fleet & Strategic Sourcing
P: 720.374.4463
E: Robert.Fanning@flyfrontier.com
FlyFrontier.com



---

**From:** Jane O'Callaghan <jane.ocallaghan@amck.aero>
**Sent:** Tuesday, March 31, 2020 12:44 PM
**To:** Fanning, Robert <robert.fanning@flyfrontier.com >; Thwaytes, Spencer <Spencer.Thwaytes@flyfrontier.com >; Sashikumar Bindu, Sharath <Sharath.Sashikumar@flyfrontier.com >
**Subject:** Re: rent deferral request & upcoming 5 x A320neo SLB deliveries

Hi Robert,

I didn't receive a formal response to this email?

I note you don't have senior management support for the condition number 1 below but we are only approved by our shareholder to proceed with the rent deferral offer on 14 aircraft as described below.

We are not comfortable proceeding with closing on the 5 remaining sale & leaseback aircraft if they are going to go straight into storage for an uncertain period of time.

We really believe it's in both parties' best interests to defer delivery of these aircraft by 3-6 months.

We can issue the rent deferral draft to you but it needs to be understood by all that above is our shareholder position. We can agree to reduce the interest rate as discussed.

Best regards,
Jane

AMCK016505

On 26 Mar 2020, at 12:42, Jane O'Callaghan <jane.ocallaghan@amck.aero > wrote:

Hi All,

I have left a couple of voicemails for you as I wanted to discuss the below.

Following a discussion with our shareholder, we are prepared to make the following offer of short term assistance to Frontier in response to your request, but with certain conditions attached.

We will agree to the Frontier request for 3 months' rent deferral, commencing April 2020, in respect of **14 of our 15 delivered aircraft (i.e. excluding the A320neo delivered on 16 March 2020)**, with such deferred rent to be paid over the subsequent 4 months, subject to the following conditions being met:

1. with respect to the SLB aircraft that is scheduled to be delivered in April 2020 (MSN 9549), we will require 12 months' rent to be pre-paid upon closing/lease commencement, i.e. there will be a "holdback" from the agreed $51M PP of approximately $3M;

2. with respect to the remaining 4 SLB aircraft that are scheduled to be delivered in May through July 2020, the delivery schedule will be delayed, between Frontier and Airbus, by 3-6 months; and

3. any failure by Frontier to pay the deferred rent on time will constitute an EOD under the framework agreement and permit AMCK to terminate the delivery obligation for the remaining SLB aircraft; and

4. deferral interest at 8% will apply to the deferred amounts

Finally, our Risk team would like to schedule a call, or perhaps you can provide written feedback, whichever is easiest depending on your availability, to address the following questions:

- What support are Indigo Partners going to give to the airline- capital injections etc?
- What is your current cash position? What other liquidity facilities are in place/in the process of being put in place?
- How much of the fleet is now grounded?
- Can you provide the FYE 2019 financial statements asap?

Please let me know if you would like to discuss today?

Best regards,
Jane

**Jane O'Callaghan** | Chief Commercial Officer

M:   +353 86 8516851
T:    +353 1 517 0164
E:    jane.ocallaghan@amck.aero


First Floor
28-29 Sir John Rogerson's Quay
Dublin D02 EY80, Ireland
www.AMCK.aero

CONFIDENTIAL

This e-mail message (including any attachments, this "message") is the property of AMCK Aviation Holdings Ireland Limited and/or its affiliates (collectively, "AMCK") and is intended only for use by the addressee. This message is confidential and the information in it may not be disclosed or used except for the purpose for which it has been sent. This message may also be legally privileged. If you have received this message in error, you are on notice of its status and you may not review, print, save, copy, distribute or otherwise use this message; please notify us immediately by reply e-mail and then delete the original and all copies of this message and any attachments from your system. Any views or opinions expressed in this message are those of the author and are not necessarily those of AMCK. Since the internet cannot guarantee the integrity of this message which may not be reliable, AMCK shall not be liable for this message if modified, changed or falsified.

AMCK Aviation Holdings Ireland Limited is a company incorporated in Ireland with company number 552762 and its registered office is at 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland.

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

CONFIDENTIAL

AMCK016507

## OMNIBUS LEASE PAYMENT DEFERRAL
## AND WAIVER AGREEMENT

THIS OMNIBUS LEASE PAYMENT DEFERRAL AND WAIVER AGREEMENT (this "**Agreement**") is dated as of March ___, 2020, and effective as of April 1, 2020 (the "**Effective Date**"), by and between UMB Bank, National Association, not in its individual capacity but solely as owner trustee of the respective trust agreement for each Lease (as defined below) (individually a "**Lessor**" and collectively "**Lessors**"), on the one hand, and Frontier Airlines, Inc., a Colorado corporation ("**Lessee**"), on the other hand.  Lessor and Lessee are sometimes referred to herein individually as a "**Party**," and collectively as the "**Parties**." Except as otherwise defined herein, and except where the context requires otherwise, capitalized terms used herein without definition shall have the meanings ascribed to them in the Lease Documents (as defined below).

### RECITALS:

A.    Lessee and Lessors are parties to that those Aircraft Lease Agreements described in the attached Schedule 1 (each, a "**Lease**," collectively, "**Leases**")(together with all exhibits, schedules, appendices, attachments and other documents attached thereto, and as amended, supplemented or otherwise modified from time to time, together with all other documents and agreements entered into in connection therewith, collectively the "**Lease Documents**"), the terms of which govern the lease of those certain aircraft also described on Schedule 1 (individually and collectively, as the context may require, the "**Aircraft**").

B.    For purposes hereof, the term "**Lease Obligations**" shall mean all debts, liabilities and obligations of Lessee to each Lessor under the Lease Documents, all tasks or duties for the performance of covenants or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) by Lessee under the Lease Documents, and all covenants and duties of Lessee regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any agreement or other instrument, arising under the Lease Documents.

C.    Lessee has requested that Lessor defer payment of the scheduled Rent payments falling due under the Leases from the Effective Date through June 30, 2020 (the "**Deferral Period**"), (collectively, the "**Concessions**").

D.    In exchange for the Concessions, Lessee shall repay any Deferred Lease Payments (as defined in Clause 2 of this Agreement) pursuant to the terms and conditions thereof.

### AGREEMENT:

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions described herein, the Parties hereto agree as follows:

1.    <u>Adoption of Recitals</u>.  The recitals set forth above are adopted as a part of the agreement of the Parties, and the facts set forth therein are acknowledged and agreed by the Parties to be true, accurate and complete as of the Effective Date.

2.    <u>Deferred Lease Payments; Accommodation</u>. Notwithstanding anything to the contrary in each of the Leases, Lessor and Lessee agree that the Rent payments currently due and owing under

AMCK016508

each of the Leases in the months of April 2020, May 2020, and June 2020, each such payment in such an amount as specified in Schedule 2 of this Agreement (the "**Deferred Lease Payments**"), shall be deferred from the Effective Date for the Deferral Period in accordance with Clause 3 below.  For the avoidance of doubt, non-payment of such amounts on any originally applicable Rent Date shall not be an Event of Default or Default under the Lease, provided that the Lessee repays such Deferred Lease Payments in accordance with Clause 3 below.

3.    <u>Repayment</u>.    Interest rate of six per cent (6%) per annum shall be payable on the Deferred Lease Payments.  The Deferred Lease Payments shall be paid to Lessors over a period of six (6) consecutive months in equal instalments starting from the Rent Date falling immediately after the end of the Deferral Period and on each following Rent Date until the full of amount of Deferred Lease Payments and accrued interest are repaid (the "**Repayment Period**").  For the avoidance of doubt, during the Repayment Period, Lessee shall pay to each Lessor on each Rent Date an aggregate sum including (i) the monthly Rent due and payable under the Lease, (ii) an instalment of Deferred Lease Payments calculated in accordance with this Clause 3, and (iii) accrued interest on the Deferred Lease Payments. A table setting out the revised amounts payable through the Deferral Period and the Repayment Period is attached as Schedule 2. Any breach by Lessee of this provision will result in the termination of the Repayment Period whereupon the unpaid balance of the Deferred Lease Payments shall become due and payable in two (2) Business Days after notice and demand by Lessor.

4.    <u>Conditions Precedent</u>.    Lessor's accommodations under this Agreement are conditioned upon Lessee's full and timely satisfaction of each of the following conditions precedent on or before March 31, 2020:

4.1    <u>Closing Documents</u>.  Lessor shall have received, in form and substance satisfactory to Lessor, duly executed counterparts of this Agreement and any other reasonable and customary documents required by Lessor to be executed in connection herewith.

4.2    <u>Accuracy of Representations and Warranties</u>.  Lessee's representations and warranties herein shall be true and correct in all material respects.

4.3    <u>Authorization Documents</u>.  Lessee shall have received all necessary authority to enter into this Agreement and all other transactions contemplated hereby.

5.    <u>Representations and Warranties</u>.  Lessee hereby represents and warrants to Lessors as of the Effective Date the following: (i) no material default, event of default, breach or failure of condition has occurred or exists under the Lease Documents (as modified by this Agreement), and the Lease Documents remain in full force and effect in accordance with their express terms (as modified by this Agreement); (ii) Lessee has all requisite power and authority to execute this Agreement and any other agreements or instruments required hereunder and to perform all of its obligations hereunder, and under this Agreement and all such agreements and instruments have been duly executed and delivered by Lessee and constitute the legal, valid and binding obligation of the Lessee, enforceable in accordance with its terms; (iii) all representations and warranties of Lessee in this Agreement and the Lease Documents, including the statements contained in the Recitals to this Agreement, continue to be true and correct in all material respects as of the Effective Date of this Agreement; and (iv) all consents, subordinations and other documents in favor of Lessors related to the Lease Documents remain in full force and effect.

CONFIDENTIAL                                                                                    AMCK016509

6.    <u>Creditor/Debtor Relationship</u>.  Lessee acknowledges and agrees that the relationship between each Lessor, on the one hand, and Lessee, on the other hand, is solely that of creditor and debtor.  Nothing contained herein or in any document referred to herein or executed or delivered in connection herewith shall be deemed or construed to create a special relationship, or fiduciary duty, by or between Lessors and Lessee.

7.    <u>Official Filings</u>.  This Agreement shall not be filed in the official records of the Federal Aviation Administration registry or any similar public records filing office, and no international interest associated this Agreement shall be filed with the International Registry in Dublin, Ireland.

8.    <u>Miscellaneous</u>.

8.1    <u>Notices</u>.  Any notice to be given or other document to be delivered by any party to the other or others hereunder, may be delivered in person to an officer of any party, or may be deposited in the United States mail, duly certified or registered, return receipt requested, with postage prepaid, or by Federal Express or other similar overnight delivery service, or by fax machine if concurrently delivered by another permissible method set forth in this Section, and addressed to the Party for whom intended, as follows:

To Lessors:

| | |
|---|---|
| Address: | UMB Bank, National Association |
| | 6550 S Millrock Drive, Suite 150 |
| | Salt Lake City, Utah 84121 |
| Attention: | Specialty Trust and Agency Group |
| Fax: | (816) 860-3029 |
| Email: | <u>corptrustutah@umb.com</u> |

with a copy to:

ACCIPITER HOLDINGS DAC
28-29 Sir John Rogerson's Quay
Dublin 2
Ireland
E-mail:  directors@accipiter.ie
Attention:  The Directors

| | |
|---|---|
| To Lessee: | Frontier Airlines, Inc. |
| | 4545 Airport Way |
| | Denver, CO  80239 |
| | |
| | Attn: Treasurer |
| | Email: contract.manager@flyfrontier.com |
| | |
| With a copy to: | Frontier Airlines, Inc. |
| | 4545 Airport Way |

CONFIDENTIAL                                                                                          AMCK016510

Denver, CO  80239
Attn:  Howard Diamond
Email: howard.diamond@flyfrontier.com

Any Party hereto may from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.  Unless otherwise specifically provided for herein, all notices, payments, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given and received (i) upon personal delivery, or (ii) as of the third business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as set forth above, (iii) the immediately succeeding Business Day after deposit with Federal Express or other similar overnight delivery system, or (iv) upon confirmation of electronic printed receipt if delivered by fax.

8.2     Survival.  All of Lessee's covenants, representations, warranties and other agreements under this Agreement shall survive the consummation of the transactions contemplated by this Agreement.

8.3     Counterparts.  This Agreement may be executed in two or more counterparts, via facsimile or pdf, each of which shall be an original, but all of which shall constitute one and the same instrument.

8.4     Attorneys' Fees.  The Lessee shall bear all reasonable costs and expenses incurred by it, the Lessors and the Owner Participant and any financiers of the Aircraft in connection with the negotiations and documentation of this Agreement, and the transactions contemplated hereby or thereby, as applicable, including without limitation, reasonable legal fees, and the Lessee shall promptly reimburse the Lessors, the Owner Participant, any lease manager or servicer and any financiers of the Aircraft for the same upon presentation of supporting invoices.  For the avoidance of doubt, each Lessor shall remain responsible for any reasonable attorney's fees, costs and expenses incurred by Lessee arising from or in connection with any transfers or assignments by Lessor pursuant to Section 18.2 of the Lease.

8.5     Time of Essence.  Time is expressly declared to be of the essence in this Agreement and of every provision hereof in which time is an element.

8.6     Governing Law; Venue.  This Agreement and the obligations of the Parties hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York.  The Parties mutually consent to venue in the state or federal courts located in the State of New York for any dispute under this Agreement.

8.7     Benefit and Burden.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and assigns.

8.8     Waiver and Amendment.  No breach of any provision hereof can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only by a written agreement executed by the Parties at the time of the modification.  Except as expressly set forth in this Agreement, the Lease Documents remain in full force and effect.

CONFIDENTIAL

AMCK016511

8.9     <u>Captions and Interpretations</u>.  Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit,  extend or describe the scope of this Agreement or any provision hereof.  No provision in this Agreement is to be interpreted for or against either party because that party or his legal representative drafted such provision.

8.10    <u>Integration</u>.    This Agreement constitutes the entire, final and integrated agreement between the Parties hereto pertaining to the subject matter hereof, fully supersedes any and all prior understandings, representations, warranties and agreements between the Parties hereto, or any of them, pertaining to the subject matter hereof, and may be modified only by written agreement signed by all of the Parties hereto.

8.11    <u>Severance</u>.  If any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision will be deemed to be severed and deleted from the agreement as a whole and neither such provision, nor its severance and deletion shall in any way affect the validity of the remaining provisions of this Agreement; provided, however, if the deletion of any such provision interferes with the material purpose of this Agreement, the entire agreement shall terminate.

8.12    <u>Confidentiality</u>.  Except as may be required by law, court order or judicial process, the terms and conditions of this Agreement shall be kept strictly confidential by the Parties and not disclosed to anyone other than their respective employees, officers, directors, attorneys, advisors, servicers, affiliates and lenders who are each made aware of the confidentiality requirements of this provision and are bound to comply with it.

8.13 <u>Further Assurance.</u> Lessor and Lessee each agrees to execute and deliver such further documents, and to do such further things, as the other Party may reasonably request, in order to more fully effect the intent and purpose of this Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE]

CONFIDENTIAL                                                                                                          AMCK016512

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the day and year first above written.

**LESSOR:**

UMB Bank, N.A., not in its individual capacity but solely as owner trustee under the trust agreement for each of the Aircraft

By: _____
Name: _____
Its: _____

**LESSEE:**

FRONTIER AIRLINES, INC.

By: _____
Name: _____
Its: _____

CONFIDENTIAL
AMCK016513

### SCHEDULE 1

### DESCRIPTION OF LEASE AND AIRCRAFT

**DESCRIPTION OF LEASE:**

**LEASE NO. 1 (MSN 8766/N349FR)**

Aircraft Lease Agreement dated as of March 22, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 2 (MSN 8857/N350FR)**

Aircraft Lease Agreement dated as of April 23, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 3 (MSN 8913/N351FR)**

Aircraft Lease Agreement dated as of May 9, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 4 (MSN 8977/N353FR)**

Aircraft Lease Agreement dated as of June 27, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 5 (MSN 9026/N354FR)**

Aircraft Lease Agreement dated as of June 28, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 6 (MSN 9068/N358FR)**

Aircraft Lease Agreement dated as of August 19, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**Lease No. 6 (MSN 9177/N359FR)**

AMCK016514

Aircraft Lease Agreement dated as of September 30, 2019 between UMB Bank, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**DESCRIPTION OF AIRCRAFT:**

**AIRCRAFT NO. 1 (MSN 8766/N349FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8766 and registration mark N349FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598941 and 598942.

**AIRCRAFT NO. 2 (MSN 8857/N350FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8857 and registration mark N350FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599045 and 599046.

**AIRCRAFT NO. 3 (MSN 8913/N351FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8913 and registration mark N351FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599086 and 599088.

**AIRCRAFT NO. 4 (MSN 8977/N353FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8977 and registration mark N353FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599174 and 599176.

**AIRCRAFT NO. 5 (MSN 9026/N354FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 9026 and registration mark N354FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599187 and 599188.

**AIRCRAFT NO. 6 (MSN 9068/N358FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 9068 and registration mark N358FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599254 and 599255.

CONFIDENTIAL    AMCK016515

**AIRCRAFT NO. 7 (MSN 9177/N359FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8766 and registration mark N349FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 599290 and 599307.

CONFIDENTIAL
AMCK016516

## SCHEDULE 2

### AIRCRAFT NO. 1 (MSN 8766/N349FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 22ND APRIL 2020 | $0 | $0 | $0 | $0 |
| 22ND MAY 2020 | $0 | $0 | $0 | $0 |
| 22ND JUNE 2020 | $0 | $0 | $0 | $0 |
| 22ND JULY 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |
| 22ND AUGUST 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |
| 22ND SEPTEMBER 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |
| 22ND OCTOBER 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |
| 22ND NOVEMBER 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |
| 22ND DECEMBER 2020 | $347,864.42 | $173,932.21 | $3,913.47 | $525,710 |

### AIRCRAFT NO. 2 (MSN 8857/N350FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 23RD APRIL 2020 | $0 | $0 | $0 | $0 |
| 23RD MAY 2020 | $0 | $0 | $0 | $0 |
| 23RD JUNE 2020 | $0 | $0 | $0 | $0 |
| 23RD JULY 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |
| 23RD AUGUST 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |
| 23RD SEPTEMBER 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |
| 23RD OCTOBER 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |
| 23RD NOVEMBER 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |
| 23RD DECEMBER 2020 | $347,600.78 | $173,800.39 | $3,910.51 | $525,312 |

### AIRCRAFT NO. 3 (MSN 8913/N351FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 9TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 9TH MAY 2020 | $0 | $0 | $0 | $0 |

CONFIDENTIAL

AMCK016517

| | | | |
|---|---|---|---|
| 9TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 9TH JULY 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |
| 9TH AUGUST 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |
| 9TH SEPTEMBER 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |
| 9TH OCTOBER 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |
| 9TH NOVEMBER 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |
| 9TH DECEMBER 2020 | $344,568.92 | $172,284.46 | $3,876.40 | $520,730 |

### AIRCRAFT NO. 4 (MSN 8977/N353FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 27TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 27TH MAY 2020 | $0 | $0 | $0 | $0 |
| 27TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 27TH JULY 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |
| 27TH AUGUST 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |
| 27TH SEPTEMBER 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |
| 27TH OCTOBER 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |
| 27TH NOVEMBER 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |
| 27TH DECEMBER 2020 | $331,694.50 | $165,847.25 | $3,731.56 | $501,273 |

### AIRCRAFT NO. 5 (MSN 9026/N354FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 28TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 28TH MAY 2020 | $0 | $0 | $0 | $0 |
| 28TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 28TH JULY 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |
| 28TH AUGUST 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |
| 28TH SEPTEMBER 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |
| 28TH OCTOBER 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |

CONFIDENTIAL

AMCK016518

| | | | |
|---|---|---|---|
| 28TH NOVEMBER 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |
| 28TH DECEMBER 2020 | $332,243.75 | $166,121.88 | $3,737.74 | $502,103 |

### AIRCRAFT NO. 6 (MSN 9068/N358FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 19TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 19TH MAY 2020 | $0 | $0 | $0 | $0 |
| 19TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 19TH JULY 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |
| 19TH AUGUST 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |
| 19TH SEPTEMBER 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |
| 19TH OCTOBER 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |
| 19TH NOVEMBER 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |
| 19TH DECEMBER 2020 | $323,126.20 | $161,563.10 | $3,635.17 | $488,324 |

### AIRCRAFT NO. 7 (MSN 9177/N359FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 30TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 30TH MAY 2020 | $0 | $0 | $0 | $0 |
| 30TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 30TH JULY 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |
| 30TH AUGUST 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |
| 30TH SEPTEMBER 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |
| 30TH OCTOBER 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |
| 30TH NOVEMBER 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |
| 30TH DECEMBER 2020 | $326,641.40 | $163,320.70 | $3,674.72 | $493,637 |

CONFIDENTIAL

AMCK016519

## OMNIBUS LEASE PAYMENT DEFERRAL
## AND WAIVER AGREEMENT

THIS OMNIBUS LEASE PAYMENT DEFERRAL AND WAIVER AGREEMENT (this "**Agreement**") is dated as of March ___, 2020, and effective as of April 1, 2020 (the "**Effective Date**"), by and between Wells Fargo Trust Company, National Association (formerly known as Wells Fargo Bank Northwest, National Association), not in its individual capacity but solely as owner trustee of the respective trust agreement for each Lease (as defined below) (individually a "**Lessor**" and collectively "**Lessors**"), on the one hand, and Frontier Airlines, Inc., a Colorado corporation ("**Lessee**"), on the other hand.  Lessor and Lessee are sometimes referred to herein individually as a "**Party**," and collectively as the "**Parties**." Except as otherwise defined herein, and except where the context requires otherwise, capitalized terms used herein without definition shall have the meanings ascribed to them in the Lease Documents (as defined below).

### RECITALS:

A.      Lessee and Lessors are parties to that those Aircraft Lease Agreements described in the attached Schedule 1 (each, a "**Lease**," collectively, "**Leases**")(together with all exhibits, schedules, appendices, attachments and other documents attached thereto, and as amended, supplemented or otherwise modified from time to time, together with all other documents and agreements entered into in connection therewith, collectively the "**Lease Documents**"), the terms of which govern the lease of those certain aircraft also described on Schedule 1 (individually and collectively, as the context may require, the "**Aircraft**").

B.      For purposes hereof, the term "**Lease Obligations**" shall mean all debts, liabilities and obligations of Lessee to each Lessor under the Lease Documents, all tasks or duties for the performance of covenants or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable) by Lessee under the Lease Documents, and all covenants and duties of Lessee regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any agreement or other instrument, arising under the Lease Documents.

C.      Lessee has requested that Lessors defer payment of the scheduled Rent payments falling due under the each of the Leases from the Effective Date through June 30, 2020 (the "**Deferral Period**"), (collectively, the "**Concessions**").

D.      In exchange for the Concessions, Lessee shall repay any Deferred Lease Payments (as defined in Clause 2 of this Agreement) pursuant to the terms and conditions thereof.

### AGREEMENT:

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions described herein, the Parties hereto agree as follows:

1.      <u>Adoption of Recitals</u>.  The recitals set forth above are adopted as a part of the agreement of the Parties, and the facts set forth therein are acknowledged and agreed by the Parties to be true, accurate and complete as of the Effective Date.

AMCK016520

2.      Deferred Lease Payments; Accommodation. Notwithstanding anything to the contrary in each of the Leases, Lessor and Lessee agree that the Rent payments currently due and owing under each of the Leases in the months of April 2020, May 2020, and June 2020, each such payment in such an amount as specified in Schedule 2 of this Agreement (the "**Deferred Lease Payments**"), shall be deferred from the Effective Date for the Deferral Period in accordance with Clause 3 below. For the avoidance of doubt, non-payment of such amounts on any originally applicable Rent Date shall not be an Event of Default or Default under each of the Leases, provided that the Lessee repays such Deferred Lease Payments in accordance with Clause 3 below.

3.      Repayment.    Interest rate of six per cent (6%) per annum shall be payable on the Deferred Lease Payments. The Deferred Lease Payments shall be paid to Lessors over a period of six (6) consecutive months in equal instalments starting from the Rent Date falling immediately after the end of the Deferral Period and on each following Rent Date until the full of amount of Deferred Lease Payments and accrued interest are repaid (the "**Repayment Period**").  For the avoidance of doubt, during the Repayment Period, Lessee shall pay to each Lessor on each Rent Date an aggregate sum including (i) the monthly Rent due and payable under the Lease, (ii) an instalment of Deferred Lease Payments calculated in accordance with this Clause 3, and (iii) accrued interest on the Deferred Lease Payments. A table setting out the revised amounts payable through the Deferral Period and the Repayment Period is attached as Schedule 2. Any breach by Lessee of this provision will result in the termination of the Repayment Period whereupon the unpaid balance of the Deferred Lease Payments shall become due and payable in two (2) Business Days after notice and demand by Lessor.

4.      Conditions Precedent.    Lessor's accommodations under this Agreement are conditioned upon Lessee's full and timely satisfaction of each of the following conditions precedent on or before March 31, 2020:

4.1      Closing Documents.    Lessor shall have received, in form and substance satisfactory to Lessor, duly executed counterparts of this Agreement and any other reasonable and customary documents required by Lessor to be executed in connection herewith.

4.2      Accuracy of Representations and Warranties.  Lessee's representations and warranties herein shall be true and correct in all material respects.

4.3      Authorization Documents.  Lessee shall have received all necessary authority to enter into this Agreement and all other transactions contemplated hereby.

5.      Representations and Warranties.  Lessee hereby represents and warrants to Lessors as of the Effective Date the following: (i) no material default, event of default, breach or failure of condition has occurred or exists under the Lease Documents (as modified by this Agreement), and the Lease Documents remain in full force and effect in accordance with their express terms (as modified by this Agreement); (ii) Lessee has all requisite power and authority to execute this Agreement and any other agreements or instruments required hereunder and to perform all of its obligations hereunder, and under this Agreement and all such agreements and instruments have been duly executed and delivered by Lessee and constitute the legal, valid and binding obligation of the Lessee, enforceable in accordance with its terms; (iii) all representations and warranties of Lessee in this Agreement and the Lease Documents, including the statements contained in the Recitals to this Agreement, continue to be true and correct in all material respects as of the Effective Date of this Agreement; and (iv) all consents,

CONFIDENTIAL                                                                 AMCK016521

subordinations and other documents in favor of Lessors related to the Lease Documents remain in full force and effect.

6.    <u>Creditor/Debtor Relationship</u>.  Lessee acknowledges and agrees that the relationship between each Lessor, on the one hand, and Lessee, on the other hand, is solely that of creditor and debtor.  Nothing contained herein or in any document referred to herein or executed or delivered in connection herewith shall be deemed or construed to create a special relationship, or fiduciary duty, by or between Lessors and Lessee.

7.    <u>Official Filings</u>.  This Agreement shall not be filed in the official records of the Federal Aviation Administration registry or any similar public records filing office, and no international interest associated this Agreement shall be filed with the International Registry in Dublin, Ireland.

8.    <u>Miscellaneous</u>.

8.1    <u>Notices</u>.  Any notice to be given or other document to be delivered by any party to the other or others hereunder, may be delivered in person to an officer of any party, or may be deposited in the United States mail, duly certified or registered, return receipt requested, with postage prepaid, or by Federal Express or other similar overnight delivery service, or by fax machine if concurrently delivered by another permissible method set forth in this Section, and addressed to the Party for whom intended, as follows:

To Lessors:

|            |                                                  |
|------------|--------------------------------------------------|
| Address:   | Wells Fargo Trust Company, National Association  |
|            | 299 South Main Street, 5th Floor                 |
|            | Salt Lake City, Utah 84111                       |
| Attention: | Corporate Trust Lease Group                      |
| Fax:       | (801) 246-7142                                   |
| Email:     | ctleasecompliance@wellsfargo.com                 |

with a copy to:

ACCIPITER HOLDINGS DAC
28-29 Sir John Rogerson's Quay
Dublin 2
Ireland
E-mail:  directors@accipiter.ie
Attention:  The Directors

To Lessee:        Frontier Airlines, Inc.
4545 Airport Way
Denver, CO  80239

Attn: Treasurer
Email: contract.manager@flyfrontier.com

Frontier/AMCK Omnibus Lease Payment & Waiver Agreement (WFT)        3

CONFIDENTIAL                                    AMCK016522

With a copy to:        Frontier Airlines, Inc.
                       4545 Airport Way
                       Denver, CO  80239
                       Attn:  Howard Diamond
                       Email: howard.diamond@flyfrontier.com

Any Party hereto may from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.  Unless otherwise specifically provided for herein, all notices, payments, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given and received (i) upon personal delivery, or (ii) as of the third business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid, addressed as set forth above, (iii) the immediately succeeding Business Day after deposit with Federal Express or other similar overnight delivery system, or (iv) upon confirmation of electronic printed receipt if delivered by fax.

8.2    Survival.  All of Lessee's covenants, representations, warranties and other agreements under this Agreement shall survive the consummation of the transactions contemplated by this Agreement.

8.3    Counterparts.  This Agreement may be executed in two or more counterparts, via facsimile or pdf, each of which shall be an original, but all of which shall constitute one and the same instrument.

8.4    Attorneys' Fees. The Lessee shall bear all reasonable costs and expenses incurred by it, the Lessors and the Owner Participant and any financiers of the Aircraft in connection with the negotiations and documentation of this Agreement, and the transactions contemplated hereby or thereby, as applicable, including without limitation, reasonable legal fees, and the Lessee shall promptly reimburse the Lessors, the Owner Participant, any lease manager or servicer and any financiers of the Aircraft for the same upon presentation of supporting invoices.  For the avoidance of doubt, each Lessor shall remain responsible for any reasonable attorney's fees, costs and expenses incurred by Lessee arising from or in connection with any transfers or assignments by Lessor pursuant to Section 18.2 of the Lease.

8.5    Time of Essence.   Time is expressly declared to be of the essence in this Agreement and of every provision hereof in which time is an element.

8.6    Governing Law; Venue.  This Agreement and the obligations of the Parties hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York.  The Parties mutually consent to venue in the state or federal courts located in the State of New York for any dispute under this Agreement.

8.7    Benefit and Burden.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and assigns.

8.8    Waiver and Amendment.  No breach of any provision hereof can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  This Agreement may be amended only

CONFIDENTIAL                                                              AMCK016523

by a written agreement executed by the Parties at the time of the modification.  Except as expressly set forth in this Agreement, the Lease Documents remain in full force and effect.

      8.9    <u>Captions and Interpretations</u>.  Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit,  extend or describe the scope of this Agreement or any provision hereof.  No provision in this Agreement is to be interpreted for or against either party because that party or his legal representative drafted such provision.

      8.10    <u>Integration</u>.  This Agreement constitutes the entire, final and integrated agreement between the Parties hereto pertaining to the subject matter hereof, fully supersedes any and all prior understandings, representations, warranties and agreements between the Parties hereto, or any of them, pertaining to the subject matter hereof, and may be modified only by written agreement signed by all of the Parties hereto.

      8.11    <u>Severance</u>.  If any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision will be deemed to be severed and deleted from the agreement as a whole and neither such provision, nor its severance and deletion shall in any way affect the validity of the remaining provisions of this Agreement; provided, however, if the deletion of any such provision interferes with the material purpose of this Agreement, the entire agreement shall terminate.

      8.12    <u>Confidentiality</u>.  Except as may be required by law, court order or judicial process, the terms and conditions of this Agreement shall be kept strictly confidential by the Parties and not disclosed to anyone other than their respective employees, officers, directors, attorneys, advisors, servicers, affiliates and lenders who are each made aware of the confidentiality requirements of this provision and are bound to comply with it.

      8.13  <u>Further Assurance.</u> Lessor and Lessee each agrees to execute and deliver such further documents, and to do such further things, as the other Party may reasonably request, in order to more fully effect the intent and purpose of this Agreement.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE]

CONFIDENTIAL                                                                                                                            AMCK016524

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the day and year first above written.

**LESSOR:**

Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee under the trust agreement for each of the Aircraft

By: _____
Name: _____
Its: _____

**LESSEE:**

FRONTIER AIRLINES, INC.

By: _____
Name: _____
Its: _____

AMCK016525

SCHEDULE 1

DESCRIPTION OF LEASE AND AIRCRAFT

**DESCRIPTION OF LEASE:**

**LEASE NO. 1 (MSN 6184/N227FR)**

Aircraft Lease Agreement dated as of June 9, 2014, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented, assigned, and amended.

**LEASE NO. 2 (MSN 7524/N716FR)**

Aircraft Lease Agreement dated as of December 23, 2015, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 3 (MSN 8102/N326FR)**

Aircraft Lease Agreement dated as of March 6, 2018, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 4 (MSN 8239/N331FR)**

Aircraft Lease Agreement dated as of June 5, 2018, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 5 (MSN 8357/N336FR)**

Aircraft Lease Agreement dated as of July 31, 2018, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**LEASE NO. 6 (MSN 8307/N332FR)**

Aircraft Lease Agreement dated as of August 29, 2018, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

CONFIDENTIAL

**Lease No. 7 (MSN 8402/N338FR)**

Aircraft Lease Agreement dated as of August 30, 2018, between Wells Fargo Trust Company, N.A., formerly known as Wells Fargo Bank Northwest, N.A., not in its individual capacity but solely as owner trustee, as lessor and Frontier Airlines, Inc., as lessee, as supplemented and amended.

**DESCRIPTION OF AIRCRAFT:**

**AIRCRAFT NO. 1 (MSN 6184/N227FR)**

Airbus A320-214 aircraft bearing manufacturer's serial number 6184 and registration mark N227FR together with two (2) CFM International, Inc. CFM56-5B4/3 aircraft engines bearing serial numbers 569346 and 569347.

**AIRCRAFT NO. 2 (MSN 7524/N716FR)**

Airbus A321-211 aircraft bearing manufacturer's serial number 7524 and registration mark N350FR together with two (2) CFM International, Inc. CFM56-5B3/3B1 aircraft engines bearing serial numbers 573962 and 573964.

**AIRCRAFT NO. 3 (MSN 8102/N326FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8102 and registration mark N326FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598481 and 598494.

**AIRCRAFT NO. 4 (MSN 8239/N331FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8239 and registration mark N331FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598568 and 598569.

**AIRCRAFT NO. 5 (MSN 8357/N336FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8357 and registration mark N336FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598607 and 598637.

**AIRCRAFT NO. 6 (MSN 8307/N332FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8307 and registration mark N332FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598689 and 598694.

CONFIDENTIAL     AMCK016527

**AIRCRAFT NO. 7 (MSN 8402/N338FR)**

Airbus A320-251N aircraft bearing manufacturer's serial number 8402 and registration mark N338FR together with two (2) CFM International, Inc. model LEAP-1A26 aircraft engines bearing serial numbers 598668 and 598680.

CONFIDENTIAL

AMCK016528

SCHEDULE 2

AIRCRAFT NO. 1 (MSN 6184/N227FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 17TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 17TH MAY 2020 | $0 | $0 | $0 | $0 |
| 17TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 17TH JULY 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |
| 17TH AUGUST 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |
| 17TH SEPTEMBER 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |
| 17TH OCTOBER 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |
| 17TH NOVEMBER 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |
| 17TH DECEMBER 2020 | $343,186 | $171,593 | $3,860.84 | $518,640 |

AIRCRAFT NO. 2 (MSN 7524/N716FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 26TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 26TH MAY 2020 | $0 | $0 | $0 | $0 |
| 26TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 26TH JULY 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |
| 26TH AUGUST 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |
| 26TH SEPTEMBER 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |
| 26TH OCTOBER 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |
| 26TH NOVEMBER 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |
| 26TH DECEMBER 2020 | $362,630.80 | $181,315.40 | $4,079.60 | $548,026 |

AIRCRAFT NO. 3 (MSN 8102/N326FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 6TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 6TH MAY 2020 | $0 | $0 | $0 | $0 |

CONFIDENTIAL                                                                                    AMCK016529

| | | | | |
|---|---|---|---|---|
| 6ᵀᴴ JUNE 2020 | $0 | $0 | $0 | $0 |
| 6ᵀᴴ JULY 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |
| 6ᵀᴴ AUGUST 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |
| 6ᵀᴴ SEPTEMBER 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |
| 6ᵀᴴ OCTOBER 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |
| 6ᵀᴴ NOVEMBER 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |
| 6ᵀᴴ DECEMBER 2020 | $354,139.30 | $177,069.65 | $3,984.07 | $535,193 |

### AIRCRAFT NO. 4 (MSN 8239/N331FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 5ᵀᴴ APRIL 2020 | $0 | $0 | $0 | $0 |
| 5ᵀᴴ MAY 2020 | $0 | $0 | $0 | $0 |
| 5ᵀᴴ JUNE 2020 | $0 | $0 | $0 | $0 |
| 5ᵀᴴ JULY 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |
| 5ᵀᴴ AUGUST 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |
| 5ᵀᴴ SEPTEMBER 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |
| 5ᵀᴴ OCTOBER 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |
| 5ᵀᴴ NOVEMBER 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |
| 5ᵀᴴ DECEMBER 2020 | $342,532.39 | $171,266.20 | $3,853.49 | $517,652 |

### AIRCRAFT NO. 5 (MSN 8357/N336FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 31ˢᵀ APRIL 2020 | $0 | $0 | $0 | $0 |
| 31ˢᵀ MAY 2020 | $0 | $0 | $0 | $0 |
| 31ˢᵀ JUNE 2020 | $0 | $0 | $0 | $0 |
| 31ˢᵀ JULY 2020 | $345,236.14 | $172,618.07 | $3,883.91 | $521,738 |
| 31ˢᵀ AUGUST 2020 | $345,236.14 | $172,618.07 | $3,883.91 | $521,738 |
| 31ˢᵀ SEPTEMBER 2020 | $345,236.14 | $172,618.07 | $3,883.91 | $521,738 |
| 31ˢᵀ OCTOBER 2020 | $345,236.14 | $172,618.07 | $3,883.91 | $521,738 |

CONFIDENTIAL                                                                AMCK016530

| | | | |
|---|---|---|---|
| **31ST NOVEMBER 2020** | **$345,236.14** | **$172,618.07** | **$3,883.91** | **$521,738** |
| **31ST DECEMBER 2020** | **$345,236.14** | **$172,618.07** | **$3,883.91** | **$521,738** |

### AIRCRAFT NO. 6 (MSN 8307/N332FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 29TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 29TH MAY 2020 | $0 | $0 | $0 | $0 |
| 29TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 29TH JULY 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |
| 29TH AUGUST 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |
| 29TH SEPTEMBER 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |
| 29TH OCTOBER 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |
| 29TH NOVEMBER 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |
| 29TH DECEMBER 2020 | $342,554.02 | $171,277.01 | $3,853.73 | $517,685 |

### AIRCRAFT NO. 7 (MSN 8402/N338FR)

| RENT DATE | AMOUNT OF RENT PAYABLE | AMOUNT OF DEFERRED LEASE PAYMENT PAYABLE | AMOUNT OF INTEREST PAYABLE | TOTAL MONTHLY PAYMENT PAYABLE |
|---|---|---|---|---|
| 30TH APRIL 2020 | $0 | $0 | $0 | $0 |
| 30TH MAY 2020 | $0 | $0 | $0 | $0 |
| 30TH JUNE 2020 | $0 | $0 | $0 | $0 |
| 30TH JULY 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |
| 30TH AUGUST 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |
| 30TH SEPTEMBER 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |
| 30TH OCTOBER 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |
| 30TH NOVEMBER 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |
| 30TH DECEMBER 2020 | $343,181.29 | $171,590.65 | $3,860.79 | $518,633 |

CONFIDENTIAL

AMCK016531