UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.,

            Plaintiff,

v.

AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,

            Defendants.

20 Civ. 9713 (LLS)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1, Defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments Aircraft 4 Limited ("Accipiter"), Vermillion Aviation (Two) Limited ("Vermillion"), UMB Bank, N.A., not in its individual capacity but solely as owner trustee ("UMB"), and Wells Fargo Trust Company, N.A., not in its individual capacity but solely as owner trustee ("Wells Fargo") (collectively, "Defendants") state that the following are material facts as to which there is no genuine issue to be tried:

    1.    Plaintiff Frontier Airlines, Inc. ("Frontier") is a passenger airline based in Denver, Colorado. (Compl. ¶¶ 1, 11.)[1]

    2.    Jimmy Dempsey is the Executive Vice President and Chief Financial Officer of Frontier. Spencer Thwaytes is Frontier's Vice President and Treasurer, ▮▮▮▮▮▮▮▮▮▮. Robert Fanning is Vice President of Fleet Transactions, ▮▮▮▮▮▮▮▮▮▮

---

[1] Abbreviations used herein have the same meaning given them in Defendants' accompanying memorandum of law.

███████████████████████████████████████████. Sharath Sashikumar Bindu ███████████████, and is Frontier's manager of fleet and strategic sourcing ███ ███████████████████████. (Bindu Tr. 6:19-8:9, 8:24-9:8; Dempsey Tr. 5:11-13, 6:9-25; Fanning Tr. 5:20-22, 8:4-22; Thwaytes Tr. 4:17-5:8.)

3. Defendant AMCK is an aircraft leasing company organized under the laws of Ireland and with its principal place of business in Ireland. During the relevant time, Paul Sheridan was AMCK's Chief Executive Officer. Jane O'Callaghan was AMCK's Chief Commercial Officer. (Compl. ¶¶ 2, 11; Sheridan Decl. ¶¶ 1-2; O'Callaghan Decl. ¶¶ 1-2.)

4. Frontier relies on leased aircraft for 100% of its aircraft fleet. Frontier leases these aircraft from aircraft leasing companies pursuant to "sale and leaseback" transactions. In such a transaction, an airline with an existing agreement to purchase an aircraft from a manufacturer, instead of taking delivery of the aircraft itself, enters into an arrangement for an aircraft leasing company to purchase the aircraft and then lease it back to the airline. (Compl. ¶ 27; O'Callaghan Decl. ¶ 3; Thwaytes Tr. 7:24-8:6.)

5. At the beginning of 2020, Frontier operated 14 Airbus A320 aircraft leased from AMCK, through its affiliate and certain owner trusts. Each of these aircraft was identified by a manufacturer's serial number ("MSN") associated with it. These 14 leases were governed by separate, but in all relevant respects similar, lease agreements. Frontier is the lessee under each agreement, and the lessor is either UMB or Wells Fargo. However, UMB and Wells Fargo are not lessors in their individual capacities. Rather, UMB and Wells Fargo are "owner trustees" acting for the benefit of the "owner participant," a former affiliate of AMCK called Accipiter. (O'Callaghan Decl. ¶¶ 4-7 & Exs. 1-2; Compl. ¶¶ 7, 30, 64; Dempsey Tr. 10:5-20; Bindu Tr. 10:8-24.)

6. As reflected in the lease agreements, the date, MSN and lessor under each lease is as follows:

| Lease Date | MSN | Lessor |
|---|---|---|
| June 9, 2014 | 6184 | Wells Fargo |
| February 19, 2016 | 7524 | Wells Fargo |
| March 6, 2018 | 8102 | Wells Fargo |
| June 5, 2018 | 8239 | Wells Fargo |
| August 29, 2018 | 8307 | Wells Fargo |
| July 31, 2018 | 8357 | Wells Fargo |
| August 30, 2018 | 8402 | Wells Fargo |
| March 22, 2019 | 8766 | UMB |
| April 23, 2019 | 8857 | UMB |
| May 9, 2019 | 8913 | UMB |
| June 27, 2019 | 8977 | UMB |
| June 28, 2019 | 9026 | UMB |
| August 19, 2019 | 9068 | UMB |
| September 30, 2019 | 9177 | UMB |

(O'Callaghan Decl. ¶ 57 & Exs. 1-2; Compl. ¶ 30.)

7. Each of the 14 original leases gives Frontier the right to possess and operate an individual aircraft. In exchange, Frontier is required to make monthly payments of rent to the lessor. The payment due date is determined with reference to the date of delivery of the aircraft. For example, if an aircraft was delivered on the fifth day of a month, the payment due date for that aircraft will be the fifth day of each month. If that day falls on a weekend or legal holiday, the payment due date is the next business day. (O'Callaghan Decl. ¶ 8; Thwaytes Tr. 10:15-12:6, 18:10-37:11; Bindu Tr. 10:25-12:7.)

8. Accipiter also serves as "lessor guarantor" under some of these leases, guaranteeing the performance by the lessor under each such original lease. (O'Callaghan Decl. ¶ 9 & Ex. 3.)

9. On March 16, 2020, Frontier and AMCK entered a Framework Agreement for the sale and leaseback of six additional Airbus A320 aircraft. Under a separate purchase agreement between Airbus and Frontier, these aircraft were scheduled for delivery from Airbus to Frontier in 2020. The Framework Agreement provides for the purchase of the aircraft by an affiliate of AMCK and for the lease of these aircraft back to Frontier. (O'Callaghan Decl. ¶ 10 & Ex. 4; Dempsey Tr. 13:5-14:8; Fanning Tr. 16:5-17:25; Thwaytes Tr.: 47:22-50:18; Bindu Tr. 46:4-47:9.)

10. ███████████████████████████████████████████████████████████████████████████████████████████. (Dempsey Tr. 11:16-12:21, 102:20-104:18 & Butler Decl. Ex. 11; Thwaytes Tr. 51:16-52:9, 52:20-53:7; Bindu Tr. 49:5-13; Butler Decl. Ex. 8.)

11. On March 16, 2020, Frontier received delivery of MSN 10038, the first of the six aircraft deliveries covered by the Framework Agreement. (O'Callaghan Decl. ¶ 11 & Ex. 5; Thwaytes Tr. 45:10-46:17; Fanning Tr. 18:8-19:24, 160:19-22.)

12. On the same date, Frontier executed a sale and leaseback transaction, selling MSN 10038 to Vermillion for a purchase price of $51 million and leasing the aircraft back pursuant to a lease agreement between Frontier and UMB, as owner trustee, dated as of March 16, 2020 (the "MSN 10038 Lease"). In this lease, Vermillion, is the owner participant and guarantor. (O'Callaghan Decl. ¶¶ 11-13 & Exs. 6-7.)

13. Later that same day, on March 16, 2020, Frontier sent a "concession request letter" to AMCK regarding a requested deferral of rent. (O'Callaghan Decl. ¶ 15 & Ex. 8; Dempsey Tr. 22:24-24:5, 25:9-29:9; Thwaytes Tr. 66:4-67:19; Fanning Tr. 19:25-22:9; Bindu Tr. 86:25-88:3.)

14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Bindu Tr. 91:11-92:10; Dempsey Tr. 24:20-25:8, 39:13-40:20, 76:18-77:2, 80:13-81:19, 83:25-84:8 & Butler Decl. Ex. 7; Fanning Tr. 21:23-22:9, 75:23-76:9; Fanning Tr. 76:13-78:10 & O'Callaghan Decl. Ex. 16; Thwaytes 140:9-23, 158:7-20 & O'Callaghan Decl. Ex. 8; Thwaytes Tr. 158:25-160:8, 163:11-16 & O'Callaghan Decl. Ex. 10.)

15. The parties never entered a written agreement providing for the deferral of rent. (Sheridan Decl. ¶ 4; O'Callaghan Decl. ¶¶ 20, 22, 25; Dempsey Tr. 86:17-24; Fanning Tr. 70:19-71:12, 75:11-76:12; Thwaytes Tr. 168:7-22.)

16. Frontier sent AMCK draft rent deferral agreements on or about March 24 and April 1, 2020. The parties never finalized or executed these drafts. (O'Callaghan Decl. ¶ 20 & Exs. 9-10; Dempsey Tr. 86:17-24; Fanning Tr. 70:19-71:12, 75:11-76:12; Thwaytes Tr. 168:7-22.)

17. During the month of April 2020, per the terms of the original leases, Frontier owed 14 rent payments in connection with the original leases. The payment amounts and date for each MSN are as follows:

| MSN | Payment Date | Payment Amount |
|---|---|---|
| 8239 | April 3, 2020 | $342,532.39 |
| 8102 | April 6, 2020 | $354,139.30 |
| 8913 | April 9, 2020 | $344,568.92 |
| 6184 | April 17, 2020 | $343,186.00 |
| 9068 | April 17, 2020 | $323,126.20 |

<724034>

| MSN | Payment Date | Payment Amount |
|---|---|---|
| 8766 | April 22, 2020 | $347,864.42 |
| 8857 | April 23, 2020 | $347,600.78 |
| 7524 | April 24, 2020 | $362,630.80 |
| 8977 | April 27, 2020 | $331,694.50 |
| 9026 | April 28, 2020 | $332,243.75 |
| 8307 | April 29, 2020 | $342,554.02 |
| 9177 | April 30, 2020 | $326,641.40 |
| 8357 | April 30, 2020 | $345,236.14 |
| 8402 | April 30, 2020 | $343,181.29 |

(O'Callaghan Decl. ¶ 23; O'Callaghan Decl. Ex. 10; Bindu Tr. 16:14-34:8, 38:6-39:8; Butler Decl. Exs. 1, 2, 17 & 18.)

18. ███████████████████████████████████████████████████████████████████████████████████. (Bindu Tr., 12:8-15, 16:17-17:13, 98:17-99:13; Butler Decl. Exs. 4-5; Fanning Tr. 59:20-60:18; 124:23-125:18; Thwaytes Tr. 13:20-14:15.)

19. ███████████████████████████████████████████████████████████████████████████████████. (Bindu Tr. 16:14-43:8 & Butler Decl. Exs. 17-18.)

20. On April 6, 2020, Frontier was due to pay rent on two of the original leases. (O'Callaghan Decl. ¶ 23; Butler Decl. Exs.4-5; Fanning Tr. 59:20-60:18, 62:16-63:8.)

21. On April 6, 2020, Frontier asked AMCK for a temporary rent deferral regarding the payments due that day. (Butler Decl. Exs. 4-5 & Dempsey Tr. 65:7-19; Fanning Tr. 114:3-115:8, 123:17-128:11 & O'Callaghan Decl. Ex. 15; Sheridan Decl. ¶ 7 & Ex. 3.)

22. During a telephone call on April 6, 2020, AMCK agreed to grant Frontier a grace period on rent payments for 10 business days. (Sheridan Decl. ¶ 8; Fanning Tr. 63:9-65:8, 125:9-127:24 & Butler Decl. Exs. 4-5; Dempsey Tr. 66:3-67:15.)

23. Later that day, on April 6, 2020, Mr. Sheridan of AMCK sent a confirming email to Frontier, stating that the grace period would last until April 21, 2020. ████████ ████████████████████████████████████████████ (Sheridan Decl. ¶¶ 8-9 & Exs. 4-5; Fanning Tr. 65:9-66:13, 145:22-146:18; Dempsey Tr. 70:17-22; Butler Decl. Exs. 4-5, Bindu Tr. 99:22-100:9, 101:11-102:6 & Butler Decl. Ex. 6; Thwaytes Tr. 163:17-22, 165:16-168:22.)

24. Beginning on April 6, 2020, and continuing through May 8, 2020, Frontier did not pay any amounts that, per the terms of the original leases, were due to be paid in April 2020. (O'Callaghan Decl. ¶¶ 23-24, 27; Bindu Tr. 17:5-8, 17:20-37:3; Thwaytes Tr. 24:2-19, 35:8-37:11.)

25. On April 7, 2020, Mr. Sheridan and Mr. Dempsey had a conversation by telephone. On this call, they discussed a "month-to-month" rent deferral arrangement. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ (Dempsey Tr. 72:18-80:12; Dempsey Tr. 81:20-84:12 & Butler Decl. Ex. 7; see also Sheridan Decl. ¶ 11.)

26. ████████████████████████████ ████████████████████████████████████████ ████████████████████████. (Dempsey Tr. 80:13-81:19, 82:7-84:12 & Butler Ex. 7; Fanning Tr. 70:19-72:8, 73:14-76:9, 83:3-11; Thwaytes Tr. 166:23-167:21, 168:7-22.)

27. On April 9, 2020, AMCK sent Frontier a draft rent forbearance letter describing a

proposed deferral of the rent due in April 2020 for one of the aircraft leased to Frontier. Frontier never responded to AMCK with respect to this draft. (O'Callaghan Decl. ¶ 25 & Ex. 16; Fanning Tr. 77:5-78:10; Sheridan Decl. ¶ 12.)

28. During the parties' discussions about potential rent deferral, AMCK repeatedly emphasized that it would not take future aircraft deliveries under the Framework Agreement if any rent from Frontier was outstanding. (*See, e.g.*, Sheridan Decl. ¶ 14 & Ex. 9; O'Callaghan Decl. ¶ 26 & Ex. 15; Dempsey Tr. 96:2-16; Fanning Tr. 85:22-86:21, 90:5-13, & Butler Decl. Ex. 12; Dempsey Tr. 114:13-20; Fanning Tr. 131:13-133:5; Dempsey Tr. 114:22-116:20 & Butler Decl. Ex. 13; Fanning Tr. 98:11-103:21 & Butler Decl. Ex. 14; Dempsey Tr. 125:18-127:4, 129:9-130:9, 131:9-132:6.)

29. On April 30, 2020, Mr. Sheridan sent an email to Mr. Dempsey and others at Frontier regarding a proposal concerning rent deferral through May 15, 2020 and other matters relating to the Framework Agreement. (Sheridan Decl. ¶ 15 & Ex. 10; Dempsey Tr. 132:22-133:20.)

30. ███████████████████████████████████████████████████████████████. (Dempsey Tr. 136:9-137:3; Fanning Tr. 104:14-105:9.)

31. Frontier did not agree to the proposal in the April 30 email. (*See* Sheridan Decl. ¶¶ 16-17 & Exs. 11-12; Dempsey Tr. 137:16-23, 142:13-144:11; Fanning Tr. 109:18-110:25; Dempsey Tr. 144:12-145:16 & Butler Decl. Ex. 15; Dempsey Tr. 153:13-154:2, 158:10-159:10.)

32. Per the terms of the original leases, Frontier owed rent payments on three of the original leases in early May 2020. The payment amounts and date for each MSN are as follows:

| MSN | Payment Date | Payment Amount |
|-----|--------------|----------------|
| 8239 | May 5, 2020 | $342,532.39 |
| 8102 | May 6, 2020 | $354,139.30 |
| 8913 | May 8, 2020 | $344,568.92 |

Frontier did not pay these amounts on those dates. (Bindu Tr. 34:11-36:21 & Butler Decl. Ex. 17; O'Callaghan Decl. ¶¶ 27, 29 & Ex. 17.)

33. On May 8, 2020, AMCK provided Frontier with a Notice of Termination based on non-payment of rent in April 2020. (Sheridan Decl. ¶ 18 & Ex. 13, Schedule 1; Bindu Tr. 37:10-39:8.)

34. On or about May 13, 2020, Frontier paid a total of $5,828,440.52 in rent to AMCK. This amount reflected the 14 rent payments that, per the terms of the original eases, were due in April 2020 and the three rent payments that, per the terms of the original leases, were due in early May 2020. (Bindu Tr. 39:11-42:16; Dempsey Tr. 164:15-165:22; Butler Decl. Ex. 19; O'Callaghan Decl. ¶ 29 & Exs. 17-18.)

35. The original 14 lease agreements and the MSN 10038 Lease remain in force, and Frontier has continued to make monthly rent payments and to operate the leased aircraft. Neither AMCK nor any other party terminated any of these lease agreements. Neither AMCK nor any other party ever repossessed the aircraft or otherwise prevented Frontier from using them. (O'Callaghan Decl. ¶ 30; Thwaytes Tr. 173:22-174:9; Butler Decl. Ex. 27.)

36. Following the termination of the Framework Agreement, Frontier obtained alternative financing for the five additional aircraft that had been covered by the Framework Agreement. ███████████████████████████████████████ (Compl. ¶¶ 75-77; Butler Decl. Ex. 22.)

37. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████.

(Butler Decl. Ex. 22; Bindu Tr. 104:4-105:18, 108:4-125:16; Thwaytes Tr. 169:2-174:9.)

Dated: November 11, 2022
New York, New York

                CLIFFORD CHANCE US LLP

                s/ Jeff E. Butler

                Jeff E. Butler
                John P. Alexander
                Gege Weinberg
                31 West 52nd Street
                New York, New York 10019

                *Attorneys for Defendants*