## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.                    Case No.: 1:20-cv-09713-LLS

                     Plaintiff,

        v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK,
N.A., solely in its capacity as OWNER
TRUSTEE,

                     Defendants.

_____

### PLAINTIFF FRONTIER AIRLINES' RESPONSE
### TO DEFENDANTS' FIRST REQUESTS FOR ADMISSION

        Pursuant to Federal Rules of Civil Procedure 36 and the Local Rules of the Southern

District of New York, Plaintiff Frontier Airlines, Inc. ("Plaintiff" or "Frontier") hereby objects and

responds to Defendants' First Requests for Admission ("Requests") as follows:

### PRELIMINARY STATEMENT

        Plaintiff has not fully completed its investigation of the facts, discovery, or preparation for

trial. It is anticipated that discovery, investigation, legal research, and analysis will lead to new

facts, add meaning to known facts and establish entirely new factual conclusions and legal

contentions. Accordingly, these responses are based upon only such information reasonably

available, known, and recalled at this time. All responses are made without prejudice to Plaintiff's

right to produce, at the time of trial, evidence of any fact which responding parties may later

discover, recall, or determine to be material. The objections and responses contained herein are

made in a good faith effort to supply as much information as is presently known to Plaintiff.

Plaintiff reserves the right, as permitted or required by the discovery rules, to supplement or modify

its answers should any additional or different information become known. Plaintiff does not make or intend any incidental or implied admissions by Plaintiff's responses and objections to the Requests. Nothing in these responses and objections shall be construed as a waiver by Plaintiff of all or any part of any objection to any Request. This preliminary statement is expressly incorporated by reference into each objection and response below.

## **GENERAL OBJECTIONS**

Plaintiff's specific responses to Defendants' Requests are subject to these General Objections. The objections are set forth separately to avoid the duplication involved in restating them in full for each response. Plaintiff's specific responses to each Request are made subject to and without waiving these objections. The failure to list a specific General Objection within a response should not be construed as a waiver of that objection.

1.      Plaintiff objects to the Requests to the extent Defendants' instructions or definitions actually, or purport to, create any obligation that is inconsistent with or beyond the scope of discovery permitted by the Federal Rules of Civil Procedure or any other local rules applicable to discovery.

2.      Plaintiff objects to each Request to the extent it calls for information already available and known to the Defendants.

3.      Plaintiff objects to each Request to the extent it purports to require the disclosure of confidential information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or discovery immunity. Nothing contained in these responses is intended to, or in any way shall be deemed, a waiver of any such available privilege or immunity.

4.      Plaintiff objects to each Request to the extent it purports to require the disclosure of confidential or trade secret information and information proprietary in nature and thereby protected from disclosure. Such information will only be provided in response hereto, if at all, pursuant to an appropriate protective order, and inadvertent disclosure of the same shall not be deemed a waiver of any of Plaintiff's rights regarding such information.

2

5.      Plaintiff objects to each Request to the extent it requires a legal conclusion.

6.      Plaintiff objects to each Request to the extent it is vague, overbroad, harassing and/or unduly burdensome.

7.      Plaintiff objects to each Request to the extent it seeks the disclosure of information not relevant to any fact at issue in this matter nor reasonably calculated to lead to the discovery of admissible evidence.

8.      Plaintiff objects to the definitions in the Requests to the extent those definitions are inconsistent with common parlance, the relevant documents, are vague, ambiguous, overbroad, and/or unduly burdensome, and/or seek to expand the scope of Plaintiff's obligations to respond beyond those contemplated by the Civil Rules.

9.      Plaintiff objects to the extent that any of the Requests seek information that may be less onerously obtained through other discovery devices.

10.     Plaintiff objects to the Requests insofar as they seek to require Plaintiff to search for information, documents, and information about documents or information no longer in existence or no longer in Plaintiff's possession, custody, or control, on the grounds that the Requests are overly broad, would subject Plaintiff to undue annoyance, oppression, burden, and expense, and seek to impose upon Plaintiff an obligation to investigate information or materials from other persons or entities.

11.     Plaintiff objects to the extent that any of the Requests require information about which Plaintiff lacks sufficient knowledge, on the grounds that such Requests subject Plaintiff to undue burden and expense.

12.     Plaintiff objects to each and every Request to the extent it is unreasonably cumulative or duplicative, has already been produced in this litigation, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

13.     Plaintiff objects to each and every Request to the extent it seeks information that is not proportionate to the needs of the case.

14.     Plaintiff objects to the Requests to the extent they are not limited to any reasonable time period. Unless otherwise indicated, Plaintiff will provide responses for the period from March 1, 2020, to November 18, 2020.

### RESPONSES TO REQUESTS FOR ADMISSION

1.     Admit that Accipiter is not a party to the Framework Agreement.

**RESPONSE:**  Deny. On information and belief, Accipiter and AMCK are controlled by the same shareholder and operated by the same individuals. Indeed, it is likely that Accipiter and AMCK are alter egos—at least for purposes of the relationship with Frontier—one effect of which is to make Accipiter the legal equivalent of a party to the Framework Agreement. Other legal and equitable theories may also apply, making Accipiter a party to the Framework Agreement. Similarly, Accipiter signed the letter of intent relating to the Framework Agreement. Moreover, Accipiter could be considered an Affiliate, Lessor Guarantor, Owner Participant, or Servicer under the Framework Agreement. Further, and relatedly, Accipiter has numerous obligations under the Transaction Documents (as that term is defined in the Framework Agreement) and other relevant deal documents involving Frontier, including as the Servicer with full authority to deal with Frontier directly under 14 of the 15 aircraft Lease Agreements. In this role, Accipiter declared an Event of Default under those relevant Lease Agreements, which was the purported grounds AMCK used to declare that it could terminate the Framework Agreement. Likewise, the obligations and performances under the Framework Agreement, other Transaction Documents, Lease Agreements, Guarantees, Trust Agreements, and other relevant deal documents related to the 15 aircrafts that Frontier leased with AMCK were so intentionally interrelated that Accipiter could be considered a party to the Framework Agreement.

2.     Admit that Accipiter did not guarantee any party's performance of the Framework Agreement.

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this

Request. To the best of Frontier's knowledge, through Guaranty agreements related to the 14 aircraft that are not part of the Framework Agreement, but through which Accipiter declared an Event of Default that was the purported grounds AMCK used to declare that it could terminate the Framework Agreement, Accipiter—as Guarantor—guaranteed the Lessor's performance. Likewise, for those 14 aircraft, Accipiter—as Trustor—indemnified the Owner Trustee's performance. Additional relevant deal documents could be interpreted as Accipiter providing a guarantee or assurance of parties' performance of the Framework Agreement. Further, and in light of the close corporate relationship between AMCK and Accipiter and the complex nature of the behind-the-scene corporate and aircraft financing that Frontier is not a party to, it is possible that agreements exist between AMCK and Accipiter through which Accipiter has guaranteed AMCK's performance of the Framework Agreement. That said, Frontier has not received or reviewed any additional or separate agreement through which Accipiter has guaranteed any party's performance of the Framework Agreement.

3.      Admit that no Defendant provided Frontier with any guarantee signed by Accipiter concerning performance of the Framework Agreement.

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. Although, to the best of Frontier's knowledge, Frontier has not received any instrument entitled "Guaranty" or "Guarantee" that is signed by Accipiter concerning the performance of the Framework Agreement, pursuant to the responses to Requests for Admission No. 1 and 2, that does not mean that Accipiter did not, in fact, guarantee performance of the Framework Agreement.

4.      Admit that Vermillion is not a party to the Framework Agreement.

**RESPONSE:**  Deny. To the best of Frontier's knowledge, Vermillion is a special purpose entity formed by AMCK to hold aircraft or aircraft lease interests, and managed and operated by the same individuals as AMCK. Indeed, it is likely that Vermillion and AMCK are alter egos—at

8928605.6

least for purposes of the relationship with Frontier—one effect of which is to make Vermillion the legal equivalent of a party to the Framework Agreement. Other legal and equitable theories may also apply, making Vermillion a party to the Framework Agreement. Moreover, Vermillion could be considered an Affiliate, Lessor Guarantor, Owner Participant, or Servicer under the Framework Agreement. Further, and relatedly, Vermillion has numerous obligations under the Transaction Documents (as that term is defined in the Framework Agreement) and other relevant deal documents involving Frontier, including as the Servicer with full authority to deal with Frontier directly under the MSN10038 Aircraft Lease Agreement ("MSN10038 Lease"). This aircraft is covered by the Framework Agreement. Likewise, the obligations and performances under the Framework Agreement, other Transactions Documents, Lease Agreements, Guarantees, Trust Agreements, and other relevant deal documents related to the 15 aircraft that Frontier leased with AMCK were so intentionally interrelated that Vermillion could be considered a party to the Framework Agreement.

5.      Admit that Vermillion did not guarantee any party's performance of the Framework Agreement.

**RESPONSE:** Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. To the best of Frontier's knowledge, Vermillion is the Guarantor of the Guaranty for the MSN10038 aircraft. In that role, Vermillion has guaranteed the Lessor's/Owner Trustee's (UMB Bank, N.A.) obligations under the MSN10038 Lease. And pursuant to the MSN10038 Lease, the Framework Agreement is included as an Operative Document, under which the Lessor/Owner Trustee has undertaken contractual obligations. Likewise, through the MSN10038 Trust Agreement, Vermillion—as Trustor—indemnified the Lessor's/Owner Trustee's performance. Additional relevant deal documents could be interpreted as Vermillion providing a guarantee or assurance of parties' performance of the Framework Agreement. Further, and in light of the close corporate relationship between AMCK and Vermillion and the complex nature of the behind-the-

8928605.6

scene corporate and aircraft financing that Frontier is not a party to, it is possible that agreements exist between AMCK and Vermillion through which Vermillion has guaranteed AMCK's performance of the Framework Agreement. That said, Frontier has not received or reviewed any additional or separate agreement through which Vermillion has guaranteed any party's performance of the Framework Agreement.

6.    Admit that no Defendant provided Frontier with any guarantee signed by Vermillion concerning performance of the Framework Agreement.

**RESPONSE:** Deny. Vermillion is the Guarantor of the Guaranty for the MSN10038 aircraft. In that role, Vermillion has guaranteed the Lessor's/Owner Trustee's obligations under the MSN10038 Lease. And pursuant to the MSN10038 Lease, the Framework Agreement is included as an Operative Document, under which the Lessor/Owner Trustee has undertaken contractual obligations. Likewise, through the MSN10038 Trust Agreement, Vermillion—as Trustor—indemnified the Lessor's/Owner Trustee's performance.

7.    Admit that AMCK is not a party to any of the Lease Agreements.

**RESPONSE:** Deny. AMCK is considered a Servicer of the MSN10038 Lease (as well as the other Lease Agreements) and, as such, is authorized to act on behalf of the Lessor, is delegated all of the rights, powers or discretions vested in the Lessor, and is a fully authorized representative to deal directly with Frontier with respect to all legal, financial, insurance and technical matters with respect to the Lease Agreements and the transactions contemplated thereby. To that end, Frontier interacts directly with AMCK for any Lease Agreement related matter. At a minimum, in light of AMCK's relationship with the lessors under the Lease Agreements, AMCK is a party to the Lease Agreements.

8.    Admit that AMCK did not guarantee any party's performance of any of the Lease Agreements.

8928605.6

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. As discussed in response to Request for Admission No. 7, under the Lease Agreements, AMCK is authorized to act on behalf of the Lessor, is delegated with all the Lessor's rights, and is a fully authorized representative of the Lessor. In this role, AMCK could be interpreted to have guaranteed the Lessor's performance. It is possible that other agreements exist between AMCK and the lessors through which AMCK has guaranteed AMCK's performance of the Framework Agreement. That said, Frontier has not received or reviewed any additional or separate agreement through which AMCK has guaranteed any party's performance of the Lease Agreements.

9.      Admit that no Defendant provided Frontier with any guarantee signed by AMCK concerning performance of the Lease Agreements.

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. Although, to the best of Frontier's knowledge, Frontier has not received any instrument entitled "Guaranty" or "Guarantee" that is signed by AMCK concerning the performance of the Lease Agreements, pursuant to the responses to Requests for Admission No. 7 and 8, that does not mean that AMCK did not, in fact, guarantee performance of the Lease Agreements.

10.      Admit that Vermillion is not a party to any of the Original Leases.

**RESPONSE:**  Deny. In addition to equitable theories through which Vermillion could be considered a party/signatory to the Original Leases, "Vermillion" is considered, among other things, an Indemnitee of all of the Original Leases. Accipiter is also a party to the Original Leases, and Vermillion is a party to the MSN10038 Lease.

11.      Admit that Vermillion did not guarantee any party's performance of any of the Original Leases.

8

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. To the best of Frontier's knowledge, Frontier has not received any instrument entitled "Guaranty" or "Guarantee" that is signed by Vermillion relating to the Original Leases. However, in light of the close corporate relationship between Vermillion and the parties to the Original Leases, it is possible that agreements exist through which Vermillion has guaranteed a party's performance of any of the Original Leases. That said, Frontier has not received or reviewed any additional or separate agreement through which Vermillion has guaranteed any party's performance of the Original Leases. To be clear, Accipiter guaranteed each Lessor's performance under the Original Leases, and Vermillion guaranteed the Lessor's performance under the MSN10038 Lease.

12.     Admit that no Defendant provided Frontier with any guarantee signed by Vermillion concerning performance of any of the Original Leases.

**RESPONSE:**  Neither admit nor deny. Frontier fully incorporates its response to Request for Admission No. 11.

13.     Admit that UMB is not a party to any Lease Agreement in its individual capacity.

**RESPONSE:**  Admit. Frontier has sued UMB in its capacity as Owner Trustee, not in its individual capacity.

14.     Admit that UMB did not guarantee any party's performance of any of the Lease Agreements.

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. To the best of Frontier's knowledge, other than the undertakings in each of the Lease Agreements that could be interpreted as UMB's guarantee or warranty of performance and any

9

guarantees given in favor of any lenders that are involved in these aircraft transactions (to which Frontier is not a party), Frontier has not received any instrument entitled "Guaranty" or "Guarantee" that is signed by UMB as Owner Trustee that purports to guarantee another party's performance of any of the Lease Agreements.

15.    Admit that no Defendant provided Frontier with any guarantee signed by UMB concerning performance of any of the Lease Agreements.

**RESPONSE:**  Neither admit nor deny. Frontier fully incorporates its response to Request for Admission No. 14.

16.    Admit that Wells Fargo is not a party to any Lease Agreement in its individual capacity.

**RESPONSE:**  Admit. Frontier has sued Wells Fargo in its capacity as Owner Trustee, not in its individual capacity.

17.    Admit that Wells Fargo did not guarantee any party's performance of any of the Lease Agreements.

**RESPONSE:**  Neither admit nor deny. Frontier has made a reasonable inquiry into this Request, but the information available to Frontier is insufficient to enable it to admit or deny this Request. To the best of Frontier's knowledge, other than the undertakings in each of the Lease Agreements that could be interpreted as Wells Fargo's guarantee or warranty of performance and any guarantees given in favor of any lenders that are involved in these aircraft transactions (to which Frontier is not a party), Frontier has not received any instrument entitled "Guaranty" or "Guarantee" that is signed by Wells Fargo as Owner Trustee that purports to guarantee another party's performance of any of the Lease Agreements.

8928605.6

18.     Admit that no Defendant provided Frontier with any guarantee signed by Wells Fargo concerning performance of any of the Lease Agreements.

**RESPONSE:** Neither admit nor deny. Frontier fully incorporates its response to Request for Admission No. 17.

19.     Admit that no Defendant has terminated any of the Lease Agreements.

**RESPONSE:** Admit in part and deny in part. At the time of Frontier answering this Request, the Defendants have declared an Event of Default under the Lease Agreements, which was the purported grounds AMCK used to declare that it could terminate the Framework Agreement. Notwithstanding the impropriety of such action, the Lease Agreements are clear that the remedies provided in the Event of Default section are not exclusive, such that Defendants could still improperly attempt to terminate any of the Lease Agreements. Indeed, AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." Further, by terminating the Framework Agreement, AMCK effectively terminated the forthcoming Lease Agreements for the five remaining aircraft under the Framework Agreement, causing Frontier to make new aircraft lease arrangements and consequently suffer millions of dollars in damages.

20.     Admit that no Defendant has informed Frontier that any of the Lease Agreements is or has been terminated.

**RESPONSE:** Admit in part and deny in part. Frontier fully incorporates its response to

11

8928605.6

Request for Admission No. 19.

21.     Admit that no Defendant has exercised any rights or remedies available upon an "Event of Default" under any of the Lease Agreements, other than stating that Frontier was in default.

**RESPONSE:** Deny. Frontier fully incorporates its response to Request for Admission No. 19. Further, one remedy available under the Lease Agreements is for Lessor to "exercise any rights or remedies afforded to Lessor under applicable law, including the Cape Town Convention." In declaring an Event of Default under the Lease Agreements so as to utilize the cross-default provision under the Framework Agreement, Defendants have improperly attempted to exercise rights or remedies available upon an Event of Default under the Lease Agreements.

22.     Admit that no Defendant has informed Frontier that it is or was exercising any rights or remedies available upon an "Event of Default" under any of the Lease Agreements, other than stating that Frontier was in default.

**RESPONSE:**  Deny. Frontier fully incorporates its response to Request for Admission No. 21.

23.     Admit that Accipiter has not declared a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. Accipiter is the Servicer on 14 of the 15 Lease Agreements with full authority to deal with Frontier regarding these Lease Agreements. It is Frontier's understanding that, in this role, Accipiter declared an Event of Default under those relevant Lease Agreements, which was the purported grounds AMCK used to declare that it could terminate the Framework Agreement. Moreover, AMCK's May 8, 2020 Notice of Termination letter states that AMCK and the Lessors (who are also Owner Trustees, and for which Accipiter is the Guarantor and Trustor) declared a default under the Lease Agreements.

24.    Admit that no Defendant has provided Frontier with any document stating that Accipiter was declaring a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. Frontier fully incorporates its response to Request for Admission No. 23.

25.    Admit that Vermillion has not declared a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. Vermillion is the Servicer with full authority to deal with Frontier directly under the MSN10038 Lease. This aircraft is covered by the Framework Agreement, which AMCK terminated on the purported grounds the Frontier was in default on certain Lease Agreements. Moreover, AMCK's May 8, 2020 Notice of Termination letter states that AMCK and the Lessors (who are also Owner Trustees, and for which Vermillion is the Guarantor and Trustor) declared a default under the Lease Agreements.

26.    Admit that no Defendant has provided Frontier with any document stating that Vermillion was declaring a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. Frontier fully incorporates its response to Request for Admission No. 25.

27.    Admit that UMB has not declared a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. AMCK, in its capacity as the Servicer of the Lease Agreements, including the eight for which UMB is the Lessor, declared an Event of Default under those Lease Agreements. In those Lease Agreements, UMB expressly delegates to AMCK, "all of the rights, powers or discretions vested in it by this Agreement and Lessor hereby further designates the Servicer as its fully authorized representative to deal directly with Lessee with respect to all legal,

13

financial, insurance and technical matters with respect to this Agreement and the transactions contemplated hereby with the same effect as if Lessee was dealing directly with Lessor, and Lessee shall been entitled to rely on such delegation for all purposes until it has received a written notice of revocation from Lessor." Through AMCK, UMB declared an Event of Default under the Lease Agreements, which was the purported grounds AMCK used to declare that it could terminate the Framework Agreement. Moreover, AMCK's May 8, 2020 Notice of Termination letter states that AMCK and the Lessors (who are also Owner Trustees) declared a default under the Lease Agreements.

28.     Admit that no Defendant has provided Frontier with any document stating that UMB was declaring a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. Frontier fully incorporates its response to Request for Admission No. 27.

29.     Admit that Wells Fargo has not declared a default in connection with any of the Lease Agreements.

**RESPONSE:**  Deny. AMCK, in its capacity as the Servicer of the Lease Agreements, including the seven for which Wells Fargo is the Lessor, declared an Event of Default under those Lease Agreements. In those Lease Agreements, Wells Fargo expressly delegates to AMCK, "all of the rights, powers or discretions vested in it by this Agreement and Lessor hereby further designates the Servicer as its fully authorized representative to deal directly with Lessee with respect to all legal, financial, insurance and technical matters with respect to this Agreement and the transactions contemplated hereby with the same effect as if Lessee was dealing directly with Lessor, and Lessee shall been entitled to rely on such delegation for all purposes until it has received a written notice of revocation from Lessor." Through AMCK, Wells Fargo declared an Event of Default under the Lease Agreements, which was the purported grounds AMCK used to declare that it could terminate the Framework Agreement. Moreover, AMCK's May 8, 2020

8928605.6

Notice of Termination letter states that AMCK and the Lessors (who are also Owner Trustees) declared a default under the Lease Agreements.

30.    Admit that no Defendant has provided Frontier with any document stating that Wells Fargo was declaring a default in connection with any of the Lease Agreements.

**RESPONSE:** Deny. Frontier fully incorporates its response to Request for Admission No. 29.

31.    Admit that Frontier currently possesses each of the Leased Aircraft.

**RESPONSE:** Admit. However, AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." One such provided remedy under the Lease Agreements is to require Frontier to "immediately return the Aircraft to Lessor."

32.    Admit that Frontier has had continuous possession of each of the Leased Aircraft since their respective deliveries.

**RESPONSE:** Admit. However, AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and

8928605.6

remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." One such provided remedy under the Lease Agreements is to require Frontier to "immediately return the Aircraft to Lessor."

33.     Admit that no Defendant has repossessed any of the Leased Aircraft.

**RESPONSE:**  Admit. However, AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." One such provided remedy under the Lease Agreements is to require Frontier to "immediately return the Aircraft to Lessor."

34.     Admit that no Defendant has informed Frontier that it is or was repossessing any of the Leased Aircraft.

**RESPONSE:**  Admit in part and deny in part. AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable

16

law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." One such provided remedy under the Lease Agreements is that the Lessor may "repossess the Aircraft."

35.    Admit that no Defendant has grounded any of the Leased Aircraft.

**RESPONSE**:  Admit. However, as stated in the response to Request for Admission No. 19: AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." One such provided remedy under the Lease Agreements is to require Frontier "to move the Aircraft to an airport designated by Lessor and keep it grounded and stored at such Aircraft [sic] until further notice by the Lessor."

36.    Admit that no Defendant has issued Frontier a Grounding Notice in connection with any of the Leased Aircraft.

**RESPONSE**:  Admit in part and deny in part. AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at

8928605.6

any time." One such provided remedy under the Lease Agreements is to require Frontier "to move the Aircraft to an airport designated by Lessor and keep it grounded and stored at such Aircraft [sic] until further notice by the Lessor."

37.    Admit that no Defendant has evicted Frontier from any of the Leased Aircraft.

**RESPONSE:**  Admit in part and deny in part. AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." Many of the remedies provided under the Lease Agreements allow Defendants to evict Frontier from the Leased Aircrafts. Further, by terminating the Framework Agreement, AMCK effectively evicted Frontier from using the five remaining aircraft under the Framework Agreement, which effectively impacted Frontier's use of the Leased Aircraft because of the delay of induction of new aircraft. Only through extraordinary effort, and at the cost of millions of dollars in damages, was Frontier able to make new aircraft lease arrangements for those five remaining aircraft.

38.    Admit that no Defendant has informed Frontier that Frontier is or was evicted from any of the Leased Aircraft.

**RESPONSE:**  Admit in part and deny in part. AMCK made specific reference in its May 8, 2020 Notice of Termination letter that its selected remedy of terminating the Framework Agreement was made "without prejudice to AMCK Aviation's, the relevant 'Lessor's', or any other person's rights and remedies under the Relevant Documents," and that "For the avoidance

8928605.6

of doubt, the exercise by AMCK Aviation of its rights set out in this notice is without prejudice to any other rights and remedies of AMCK Aviation, the relevant 'Lessor', or any other person in relation to the events specified herein, whether under any Relevant Document, under applicable law or otherwise, and each such person may at its option exercise any such rights and remedies at any time." Many of the remedies provided under the Lease Agreements allow Defendants to evict Frontier from the Leased Aircrafts. Further, by terminating the Framework Agreement, AMCK effectively evicted Frontier from using the five remaining aircraft under the Framework Agreement, which effectively impacted Frontier's use of the Leased Aircraft because of the delay of induction of new aircraft. Only through extraordinary effort, and at the cost of millions of dollars in damages, was Frontier able to make new aircraft lease arrangements for those five remaining aircraft.

39.    Admit that no Defendant has prevented Frontier from physically using any of the Leased Aircraft.

**RESPONSE**:  Admit in part and deny in part. Frontier fully incorporates its responses to Requests for Admission No. 19 and 31-38. Further, as part of their anticipatory repudiation, Defendants demanded that the Leased Aircraft not be placed in storage, even though Defendants had no right to dictate how and to what extent Frontier used the Leased Aircraft.

40.    Admit that the damages claimed in Your First Claim for Relief do not encompass any harm beyond that alleged in Your Second Claim for Relief.

**RESPONSE**:  Deny. Defendants' anticipatory repudiation of the Framework Agreement predates Defendants' May 8, 2020 Notice of Termination in which Defendants' formally declared their refusal to cure their anticipatory repudiation and, relatedly, breach the Framework Agreement. At a minimum, the intervening timeframe between the anticipatory repudiation of the Framework Agreement and the May 8, 2020 Notice of Termination entitles Frontier to damages unique to each claim.

19

41.     Admit that the damages claimed in Your Third Claim for Relief do not encompass any harm beyond that alleged in Your Second Claim for Relief.

**RESPONSE:**  Deny. Frontier's third claim for relief relates to breaches of all Lease Agreements, not just the Framework Agreement. In addition to the damages that arise from Defendants purporting to terminate the Framework Agreement based of alleged breaches of the Lease Agreements, Defendants have also threatened that they will "exercise any such rights and remedies at any time" under these Lease Agreements, which includes repossessing the Leased Aircraft, grounding the Leased Aircraft, and/or evicting from the Leased Aircraft.

42.     Admit that the damages claimed in Your Fourth Claim for Relief do not encompass any harm beyond that alleged in Your Second Claim for Relief.

**RESPONSE:**  Deny. At a minimum, a breach of the implied duty of good faith and fair dealing can support an award of punitive damages. Further, as explained in more detail in Frontier's opposition to Defendants' partial motion to dismiss (Dkt. 42)—a motion that the Court denied in its entirety—this claim is not duplicative of Frontier's breach of contract claims and encompasses further harms.

43.     Admit that the damages claimed in Your Fifth Claim for Relief do not encompass any harm beyond that alleged in your Second Claim for Relief.

**RESPONSE:**  Deny. At a minimum, the breach of the covenant of quiet enjoyment also includes harms that relate to Defendants' interference with Frontier's fleet plans through demanding delivery deferrals (which Frontier achieved at Defendants' request), as well as dictating how and to what extent Frontier could use the Leased Aircraft even though Defendants had no right to make such a demand. And, of course, Defendants have also threatened that they will "exercise any such rights and remedies at any time" under these Lease Agreements, which would include further breaches of the covenant of quiet enjoyment. This is also explained in more detail

in Frontier's opposition to Defendants' partial motion to dismiss.

44.    Admit that the damages claimed in Your Sixth Claim for Relief do not encompass any harm beyond that alleged in Your Second Claim for Relief.

**RESPONSE:**  Deny. As explained in more detail in Frontier's opposition to Defendants' partial motion to dismiss, Frontier's promissory estoppel claim encompasses additional harms than Frontier's second cause of action. As just one example, Frontier expended considerable resources to negotiate delivery deferrals with Airbus in reasonable reliance on AMCK's evolving demands and promises.

45.    Admit that, apart from any claim for punitive damages, the damages claimed in Your Seventh Claim for Relief do not encompass any harm beyond that alleged in Your Second Claim for Relief.

**RESPONSE:**  Deny. As explained in more detail in Frontier's opposition to Defendants' partial motion to dismiss, Frontier's fraud claim rests on additional harms than Frontier's second cause of action. For instance, in addition to punitive damages, Frontier's fraud claim also encompasses damages for Frontier's loss of use of the aircraft that Frontier deferred at Defendants' request, as well as Frontier's loss of business reputation with Airbus.

8928605.6

DATED:  April 29, 2022

                                       **LANE POWELL PC**

                                       By: *s/ Aaron Schaer*
                                             David G. Hosenpud (*pro hac vice*)
                                             601 SW Second Avenue, Suite 2100
                                             Portland, Oregon  97204-3158
                                             Telephone No.:  503.778.2100
                                             Facsimile No.:  503.778.2200
                                             E-mail:  hosenpudd@lanepowell.com

                                             Aaron Schaer, (*pro hac vice*)
                                             1420 Fifth Avenue, Suite 4200
                                             P.O. Box 91302
                                             Seattle, WA  98111-9402
                                             Telephone:  206.223.7103
                                             Facsimile:  206.223.7107
                                             E-mail:  schaera@lanepowell.com

                                             -and-

                                       **BINDER & SCHWARTZ LLP**
                                       Neil S. Binder
                                       366 Madison Avenue, 6th Floor
                                       New York, New York  10017
                                       Telephone No.:  212.510.7008
                                       Facsimile No.:  212.510.7299
                                       E-mail:  nbinder@binderschwartz.com

                                       *Attorneys for Plaintiff, Frontier Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Jada Caudel, hereby certify that on this 29th day of April, 2022, I caused a copy of the

foregoing document to be served via electronic mail, on the following:

| **<u>Counsel for Defendants</u>** | |
|---|---|
| Jeff Edward Butler<br>John Alexander<br>Minji Reem<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, NY  10019<br>Phone:  212.878.8000<br>jeff.butler@cliffordchance.com<br>john.alexander@cliffordchance.com<br>minji.reem@cliffordchance.com | |

DATED this 29th day of April, 2022.


_s/ Jada Caudel_
Jada Caudel, Legal Assistant

8928605.6