UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.

        Plaintiff,

v.

AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,

        Defendants.

Case No.: 1:20-cv-09713-LLS

## DECLARATION OF ROBERT FANNING

I, Robert Fanning, declare as follows:

1. I am employed by Frontier Airlines, and I am the Vice President for Fleet Transactions. I make this declaration in support of Frontier Airlines, Inc.'s Opposition to Defendants' Motion for Summary Judgment.

2. In 2020, I was Senior Director for Fleet Transactions, and I also had responsibilities for strategic sourcing. I reported to Spencer Thwaytes, Treasurer for Frontier Airlines. In my role as Senior Director for Fleet Transactions I would interact with aircraft Lessors relating to aircraft financing, including AMCK Aviation ("AMCK"). The individual I interacted with at AMCK primarily was Jane O'Callaghan related to aircraft financing or commercial negotiations.

3. As it relates to this dispute, I communicated with Jane O'Callaghan concerning the subject of Frontier Airlines' rent deferral request of March 16, 2020, sent to all of Frontier's lessors including AMCK, and the changing demands of AMCK with regard to the financing of the five

remaining aircraft under the terms of the 2020 Framework Agreement. In my communications with Ms. O'Callaghan regarding the rent deferral request, I requested confirmation that AMCK would finance the upcoming aircraft deliveries. However, these requests were met with ever-changing demands not contained in the 2020 Framework Agreement as conditions to granting a rent deferral and then to financing the aircraft.

4. The first condition was to obtain delivery deferrals of the already manufactured aircraft with Airbus. On April 1, 2020 Ms. O'Callaghan indicated that AMCK's shareholder insisted that any rent deferrals be linked to delivery deferrals of the five remaining aircraft under the 2020 Framework Agreement. In response, I informed Ms. O'Callaghan that we had discussions with Airbus, they had not been favorable, and that they were asking Frontier to take deliveries of the aircraft when they were ready for delivery. I also told Ms. O'Callaghan if Frontier was unable to delay the deliveries and AMCK was pulling out of the 2020 Framework Agreement, Frontier needed to know as soon as possible. She did not respond.

5. After this communication, Frontier continued to discuss AMCK's delivery deferral demands with Airbus. I am aware that AMCK and Frontier had discussions regarding additional deferrals on rents to facilitate Frontier's discussions with Airbus concerning delivery deferrals.

6. On April 24, 2020, I again communicated with Ms. O'Callaghan requesting an update on whether AMCK would take deliveries of the aircraft based on Frontier having firmed up a schedule with Airbus to defer the next three aircraft into June and July 2020. I also informed her that Frontier was receiving pressure from Airbus to make a decision on the restructuring of the aircraft deliveries based on AMCK's request.

7. Ms. O'Callaghan responded on April 25, 2020, that Frontier's rent payment would need to be up to date at the time the aircraft purchases closed, and she then added another condition

that there be four-year lease extensions on the aircraft previously leased to Frontier by Accipiter. I informed Ms. O'Callaghan that Frontier's thought process was to pay AMCK in full for the deferred rent because Airbus was holding Frontier to the deliveries scheduled under the Agreement with Airbus, and Frontier expected AMCK to hold up its end of the deal. Ms. O'Callaghan did not confirm that AMCK would hold up its end of the deal.

8. On or about April 28, 2020, Jimmy Dempsey and I had a call with Ms. O'Callaghan and Paul Sheridan and informed them that we had pushed Airbus as far as it would go in terms of moving three aircraft deliveries scheduled for April and May, into June and July 2020, and that Frontier would consider pushing the remaining two aircraft into 2021. Ms. O'Callaghan informed us that she did not believe this was enough for AMCK's shareholder to agree to purchase the aircraft. Once again Ms. O'Callaghan conveyed new conditions by the shareholder—this time for a guaranty by a non-party to the 2020 Framework Agreement, Indigo, or a letter of credit.

9. On April 29, 2020, I informed Ms. O'Callaghan in a phone call that, in addition to the extensions that Frontier was discussing with Airbus, Frontier would be willing to push the remaining two deliveries into 2021. I also told her that Frontier would not seek a guaranty or provide a letter of credit regarding rent payments. Frontier had been timely paying rents to its lessors all the years I had been employed, starting in 2013. Ms. O'Callaghan's reply was if we could pay the April rent and May rent when due, she believed it would be enough to get the shareholder over the line. She did not ask that Frontier pay the rents, but I believe this was in the context of whether Frontier could pay rents if Frontier and AMCK came to an agreement. I followed up that call with a communication that before the first delivery, Frontier would pay the full rent amounts for the current 14 aircraft. Additionally, I proposed another option that the current rent deferral would stay in place for each of the three aircraft and that Frontier would pay

six months' rent in advance of each delivery. Ms. O'Callaghan indicated that she needed to discuss this with AMCK's shareholder.

10. I am aware that Jimmy Dempsey communicated with Paul Sheridan on April 30, 2020, stating Frontier would make payment of all outstanding April rents immediately, and pay May, June, July rents and subsequent months' rent on time, that Frontier could get Airbus to defer the deliveries of the next three aircraft to July 2020 and shift AMCK's final two deliveries to February 2021. I am also aware that AMCK would not confirm that it would fund the aircraft deliveries if obligated to do so under the 2020 Framework Agreement.

11. On May 5, 2020, I communicated with Ms. O'Callaghan, requesting she have Paul Sheridan call Mr. Dempsey since he was expecting a call but never got one. Ms. O'Callaghan responded that "she was not sure what we can achieve on the call as our shareholder is adamant there has to be something deemed of value," and that "[h]e isn't going to change his stance on this…" I understood Ms. O'Callaghan to mean that the shareholder would not permit AMCK to perform its obligations under the 2020 Framework Agreement. Following her communication, I requested that AMCK provide Frontier with a legal letter to confirm that AMCK would not change its position with regard to performing its obligations under the 2020 Framework Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 9th day of December, 2022.

_____
Robert Fanning