UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.

        Plaintiff,

v.

AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,

        Defendants.

Case No.: 1:20-cv-09713-LLS

## DECLARATION OF JAMES DEMPSEY

I, James Dempsey, declare as follows:

1. I am the executive vice president and chief financial officer of Plaintiff Frontier Airlines, Inc. ("Frontier"). I make this declaration in support of Frontier's Opposition to Defendants' Motion for Summary Judgment. I am competent to testify to the matters set forth herein, and submit this declaration based on personal knowledge

2. Frontier is a Colorado-based passenger airline that operates commercial passenger aircraft leased from various aircraft lessors.

3. Frontier relies on sale and leaseback (SLB) arrangements—a common method used by airlines to finance new aircraft acquisitions—for 100% of its fleet.

4. An SLB arrangement is comprised of multiple parts: <u>First</u>, an airline (such as Frontier) has an existing purchase agreement with an airline manufacturer (such as Airbus), which obligates the airline to take delivery of aircraft pursuant to a delivery schedule. The airline makes

022510.0155/9203823.1

pre-delivery payments (PDP) to the manufacturer as each aircraft construction progresses. Second, around six months prior to an aircraft delivery, the airline enters an SLB arrangement with an aircraft lessor (such as Defendant AMCK Aviation Holdings Ireland Limited ("AMCK")) in which the lessor agrees (i) to buy the aircraft from the manufacturer when the aircraft delivers and (ii) to simultaneously lease the aircraft back to the airline in return for monthly rent payments. The purchase price and rent payments of the aircraft are negotiated solely between the airline and the lessor. Third, at the time of delivery, the lessor pays the purchase price to the manufacturer and the airline begins making monthly rent payments to the lessor. Depending on the purchase price, the airline may receive a refund from the manufacturer for PDP overpayments.

5.      Until the lessor pays the manufacturer, the airline is responsible for purchasing the aircraft. If the lessor fails to pay, the airline must use its own funds, enter an SLB arrangement with another lessor, or risk defaulting on its purchase agreement with the manufacturer.

6.      Whenever AMCK sent Frontier a "chase" alert that it believed Frontier had a rent invoice that was past due, Frontier always promptly paid the invoice after receiving the alert.

7.      Attached as **Exhibit 1** is a true and correct copy of the Letter of Intent signed by AMCK's corporate relative (Accipiter Holdings, DAC), dated September 10, 2019, to finance six aircraft under the Airbus Agreement. The March 16, 2020 Framework Agreement ("Framework Agreement") that Frontier and AMCK executed incorporated the key economic terms from this Letter of Intent.

8.      Throughout the March 16, 2020 to May 8, 2020 time period, I frequently spoke with Paul Sheridan, the CEO of AMCK, concerning negotiations to defer Frontier's rent payments on the aircraft Frontier leased from AMCK, as well as AMCK's evolving demands that Frontier

achieve aircraft delivery deferrals with Airbus, adjust pricing terms in the leases, extend lease agreements, and remove early termination options from the leases.

9.  Although I believed that the parties' final agreement that would contain all terms under negotiation would have been memorialized in a formal written agreement, I understood that, through numerous email, text, and phone conversations, as well as the parties' conduct that was consistent with those conversations and their prior business relationship, Frontier and AMCK agreed to defer rent payments on 14 lease aircraft (Original Leases)—excluding MSN 10038, which is the one aircraft that delivered under the Framework Agreement—while the parties negotiated a global resolution on the other terms. After all, Frontier had a good, long-standing relationship with AMCK, and I personally had worked with Mr. Sheridan for a long time given his role as CEO of AMCK. I understood that I could take his word and promises to be things that Frontier could rely upon.

10.  By April 3, it was clear to me that AMCK wanted to adjust the terms of the parties' binding Framework Agreement. Although I repeatedly asked AMCK to honor that binding agreement, AMCK refused to clarify if it would.

11.  Prior to April 6—as well as after that date—I spoke with Airbus on a number of occasions about achieving the delivery deferrals that AMCK had requested. At first, Airbus denied that request, largely because the aircraft were nearly complete at Airbus's Mobile Alabama facility.

12.  Because it seemed that delivery deferrals with Airbus were not achievable, on April 6, 2020, I asked AMCK to confirm "that you will finance the aircraft deliveries and honour your commitment to Frontier if we do not put a rent deferral in place." No one from AMCK responded to that request.

13.  Because Frontier doubted whether AMCK would finance the upcoming five aircraft

3

set to be delivered under the Framework Agreement, prior to April 6, Frontier reached out to alternative leasing companies to see if they would finance those aircraft. However, due to the changed market conditions as a result of COVID-19, the terms offered by these companies were substantially worse for Frontier than those in the Framework Agreement. As a result, Frontier decided to try to work with AMCK to achieve concessions that would convince AMCK to perform its obligations under the Framework Agreement.

14. Frontier reached an agreement with AMCK on April 6, 2020, to defer Frontier's rent payments on the Original Leases for 10 business days so that Frontier could try to obtain the delivery deferrals with Airbus that AMCK was demanding.

15. I spoke with Mr. Sheridan on April 7, 2020. On that call, we agreed to extend the rent deferral agreement to month-to-month because it would take Frontier longer than 10 days to work out a delivery deferral with Airbus. My understanding was that this month-to-month agreement would last until all negotiations were complete, and that during that time Frontier did not need to make monthly rent payments on the Original Leases. Even on this April 7 call, we both expected this month-to-month arrangement to extend into May 2020 because it would take a long time to work out a delivery deferral with Airbus and it was already apparent that the next aircraft under the Framework Agreement would not be delivered until May 2020 at the earliest.

16. Around this time, my understanding from speaking with Mr. Sheridan was that AMCK's main position regarding when Frontier needed to pay its deferred rent was that Frontier needed to be current on all rent prior the next aircraft delivery.

17. Frontier's negotiations with both AMCK and Airbus continued past the end of April 2020 and into May 2020. Throughout this time, on multiple occasions AMCK confirmed its central position on deferred rent: Frontier's rent remain deferred and only needed to be paid back prior to

the next aircraft delivery, which Frontier eventually was able to move to July 2020. No later than April 27, 2020, Frontier agreed to this term.

18. On April 27, 2020, I again asked AMCK to clarify that it would uphold its commitments under the Framework Agreement. AMCK never provided this commitment.

19. I spoke multiple times with Mr. Sheridan on April 30, 2020, both on the phone and over email, during which we exchanged a number of offers to resolve the parties' ongoing negotiations. In Frontier's first April 30 offer, Frontier said it would immediately get current on all our outstanding rent and stay current thereafter. Mr. Sheridan did not accept this term. Instead, he suggested that Frontier pay its rent back by May 15, 2020. This led me to believe that our rent deferral agreement remained in effect and extended at least until May 15, 2020.

20. AMCK added a new term to its April 30, 2020 offer—that Frontier needed to remove the early lease termination options for all aircraft delivered under the Framework Agreement. This new term would have provided AMCK with a substantial financial windfall because lease payments are often renegotiated to much lower monthly rates after an early termination. Further, this new term would have increased Frontier's operating lease obligations and impacted its ability to raise debt operating capital elsewhere. I therefore told AMCK this term was an "overreach."

21. Again on April 30, 2020, I told AMCK that the parties had a binding Framework Agreement in place and that, if we could not agree on concessions, then Frontier would hold AMCK to those binding terms. AMCK did not respond to that comment.

22. I then spoke again with Mr. Sheridan over the phone on April 30, 2020, and relayed Frontier's latest offer. Mr. Sheridan never responded to me about this offer.

022510.0155/9203823.1

23. I therefore sent a text message to Mr. Sheridan on May 1, 2020, telling him I had been expecting a call from him and asking about the status of the negotiations. I also told Mr. Sheridan that I needed AMCK's commitment as Frontier had 24 hours to get the deal done with Airbus. All Mr. Sheridan would tell me was that he had a call set with AMCK's shareholders. He never followed up with me after that call.

24. Not hearing from Mr. Sheridan, I again reached out to him via email on May 8, 2020, reiterating Frontier's last offer, and confirming the delivery deferral dates Frontier was able to achieve with Airbus. Mr. Sheridan did not respond to that email.

25. Prior to AMCK sending its notice of termination letter on May 8, 2020, no one from AMCK informed me or, to my knowledge, anyone at Frontier that our deferred rent was past due or needed to be paid immediately, or suggest that the rent deferral agreement was no longer in effect.

26. When Frontier received AMCK's notice termination letter on May 8, 2020, it was Frontier's understanding that the parties still had a rent deferral agreement in place for the rent due under the Original Leases.

27. Had AMCK ever instructed Frontier to pay deferred rent for the Original Leases prior to sending the May 8, 2020 notice of termination letter, Frontier would have immediately done so, just like Frontier offered to do on April 30, 2020, and just like Frontier has always done after receiving a past due payment alert from AMCK.

28. Up until the May 8, 2020 notice of termination letter, Frontier worked in good faith to achieve the concessions that AMCK required in order to perform the Framework Agreement.

29. It took extraordinary effort, but Frontier was able to find other lessors to fund the remaining five aircraft under the Framework Agreement. The lessor CDB Aviation Lease Finance

DAC (CDB) entered into SLBs for three of the remaining aircraft. The lessor Jackson Square Aviation (JSA) entered into SLBs for two of the remaining aircraft. Although the terms CDB and JSA offered were significantly less favorable than those in the Framework Agreement, the terms were still better than those AMCK offered in AMCK's June 18, 2020 offer.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

    Dated this 9 day of December, 2022, at ENGLEWOOD, CO.

_____
James Dempsey