Execution Version

CONFIDENTIAL

Dated July 24, 2020

———————————————

FRONTIER AIRLINES, INC.

as Seller

and

Wilmington Trust Company, not in its individual capacity but solely as Owner

Trustee

as Buyer

# AIRCRAFT SALE
# AND LEASEBACK AGREEMENT
in respect of one (1) Airbus model
A320-251N Aircraft bearing
manufacturer's serial number 9549

ATTORNEYS'S EYES ONLY

Execution Version

# Contents

| Clause | | Page |
|---|---|---|
| 1 | Definitions and Interpretation | 1 |
| 2 | Representations and warranties | 2 |
| 3 | Conditions | 3 |
| 4 | Assignment and Purchase Commitment | 4 |
| 5 | Delivery | 5 |
| 6 | Purchase Agreement | 8 |
| 7 | Termination Rights | 9 |
| 8 | Indemnity | 11 |
| 9 | Taxes | 12 |
| 10 | Assignment | 12 |
| 11 | Entire Agreement | 12 |
| 12 | Miscellaneous | 13 |
| 13 | No Brokers | 13 |
| 14 | Governing Law | 13 |
| 15 | Waiver of Jury Trial | 13 |
| 16 | Enforcement | 14 |
| | Schedule 1 Bill of Sale | 17 |
| | Schedule 2 Title Warranty | 18 |
| | Schedule 3 Detailed Specification | 19 |

ATTORNEYS'S EYES ONLY

Execution Version

**THIS AIRCRAFT SALE AND LEASEBACK AGREEMENT** (this **Agreement**) dated as of July 24, 2020 IS BETWEEN:

(1)　**FRONTIER AIRLINES, INC.**, a corporation incorporated in Colorado, USA, with its executive offices at 4545 Airport Way, Denver, CO 80239 (the **Seller**); and

(2)　**Wilmington Trust Company, a Delaware trust company**, not in its individual capacity but solely as owner trustee under the Trust Agreement (as defined in the Lease) with its executive offices at 1100 North Market Street, Wilmington, Delaware 19890-1605 (the **Buyer**).

**WHEREAS**

(A)　The Seller is party to the Purchase Agreement pursuant to which it has agreed to purchase from the Manufacturer certain Airbus model A320-251N aircraft, including the Aircraft.

(B)　The Seller has agreed to transfer its commitment to purchase, and the Buyer has agreed to accept such commitment to purchase, the Aircraft subject to the terms and conditions of this Agreement and on the understanding that, contemporaneously with Delivery, the Aircraft shall be leased by the Buyer (as lessor) to the Seller (as lessee) in accordance with the terms of the Lease.

**NOW IT IS AGREED** as follows:

## 1　Definitions and Interpretation

1.1　In this Agreement, words and expressions defined in the Lease shall have the same meanings unless otherwise defined herein and the following words and expressions have the following meanings, in each case unless the context otherwise requires:

**Aircraft** means one (1) Airbus model A320-251N aircraft bearing manufacturer's serial number 9549, as more particularly described in the Lease, including the Airframes, the Engines, the Landing Gear, the APU, all Parts installed in or on the Airframe at Delivery and all Aircraft Documents and the BFE Post-Delivery, manufactured in accordance with the Detailed Specifications;

**Bill of Sale** means the warranty bill of sale executed by Airbus Americas, Inc. in favour of the buyer in the form attached as Schedule 1;

**Delivery** means the time at which the Buyer shall obtain title to the Aircraft in accordance with clause 5.4;

**Delivery Date** means the date on which Delivery occurs;

1

Execution Version

**Delivery Location** means the Manufacturer's delivery facilities located in Mobile, Alabama or such other location as shall be mutually agreed in writing by the Buyer and the Seller in accordance with clause 5.7;

**Detailed Specifications** means the Airbus Detail Specifications as attached as Schedule 3 to this Agreement.

**Expected Delivery Date** means the date when the Aircraft is scheduled to be ready for delivery at the Delivery Location, such date to be notified by the Seller to the Buyer in writing as soon as the Seller receives notice of such date from the Manufacturer;

**Lease** means the aircraft lease agreement entered into or to be entered into on or before the date hereof between the Buyer, as lessor, and the Seller, as lessee, in respect of the Aircraft;

**Losses** means any costs, expenses, payments, charges, losses, demands, liabilities, claims, actions, proceedings, penalties, fines, damages, judgments, orders or other sanctions;

**Purchase Price** █████████████████████

**VAT** means any value added tax and any goods and services, sales or turnover tax, imposition or levy of a like nature or similar tax payable in any jurisdiction; and

**Title Warranty** means the warranty of title executed by Airbus S.A.S. in favour of the Buyer in the form attached as Schedule 2; and

1.2    Clause headings and the table of contents are inserted for convenience of reference only, have no legal effect and shall be ignored in the interpretation of this Agreement.

1.3    Clause 1.2 (*Interpretation*) of the Lease shall apply mutatis mutandis to this Agreement.

## 2    Representations and warranties

2.1    Seller Representations

The Seller represents and warrants to the Buyer that as of the date hereof and the Delivery Date:

(a)    the representations set out in clause 2.1 of the Lease are true and correct.

(b)    the Seller has performed in full all of its obligations under the Purchase Agreement (other than the payment of an amount equal to the Purchase Price) in respect of the Aircraft;

(c)    neither the Seller nor any of its Affiliates have rescinded, cancelled or terminated the Purchase Agreement insofar as it relates to the Aircraft;

2

(d)     immediately prior to the transfer of title to the Aircraft from the Manufacturer to the Buyer under the Assigned Purchase Agreement, the Aircraft shall be free from all Liens and it shall cause the Manufacturer to transfer to the Buyer good and marketable full legal and beneficial title to the Aircraft free from all Liens;

(e)     to Seller's actual knowledge there are no claims or actions pending or threatened in respect of the Aircraft which, if unsatisfied, would give rise to any Liens other than Permitted Liens over the Aircraft in favour of any third party;

(f)     no Default has occurred and is outstanding under the Lease; and

(g)     the Aircraft has been manufactured in accordance with, and the Aircraft complies with, the Detailed Specifications.

2.2     Buyer Representations

The Buyer represents and warrants to the Seller that the representations set out in clause 2.2 of the Lease are true and correct.

2.3     Remedies

The rights and remedies of either party in relation to any misrepresentation or breach of warranty on the part of the other party shall not be prejudiced by any investigation by or on behalf of the first party into the affairs of another party, by the performance of the Lessee's Documents, or by any other act or thing which may be done or omitted to be done by the recipient of the relevant representation or warranty under this Agreement and which would or might, but for this clause 2.3, prejudice such rights and remedies.

## 3    Conditions

3.1     Seller's conditions

The obligation of the Seller under Clause 4.1(a) is subject to the condition that, on or prior to Delivery, the Seller shall have received the documents and evidence specified in clause 3.4 of the Lease in form and substance satisfactory to the Seller. The obligation of the Seller under Clause 4.1(a) is subject to the further conditions that:

(a)     immediately prior to Delivery, the Seller shall be satisfied that the Manufacturer will receive the Purchase Price in full on Delivery in accordance with clause 5.4;

(b)     the representations and warranties made by the Buyer in this Agreement and by the Buyer, as lessor, in the Lease shall be true and correct as if each were made with respect to the facts and circumstances existing immediately prior to Delivery; and

3

ATTORNEYS'S EYES ONLY                                      FRONTIER0011468

Execution Version

The conditions specified in this clause 3.1 are inserted for the sole benefit of the Seller and may be waived in whole or in part and with or without conditions by the Seller.

3.2    Buyer's conditions

The obligation of the Buyer under Clause 4.1(b) is subject to the condition that, on or prior to Delivery, the Buyer shall have received the documents and evidence specified in clause 3.1 of the Lease in form and substance satisfactory to the Buyer. The obligation of the Buyer under Clause 4.1(b) is subject to the further conditions that, on Delivery:

(a)    the Aircraft shall be free from any Liens;

(b)    the representations and warranties made by the Seller in this Agreement and by the Seller, as lessee, in the Lease shall be true and correct as if each were made with respect to the facts and circumstances existing immediately prior to Delivery;

(c)    the Aircraft shall not have suffered an actual or potential Total Loss on or before the Delivery Date or have been involved in any incident which caused damage to the Aircraft; and

(d)    no Default has occurred and is outstanding under the Lease;

(e)    the Aircraft has been tendered by the Manufacturer for delivery new "ex factory" and in conformance with the Detailed Specifications; and

(f)    the Buyer is satisfied that the Manufacturer has received in full all payments owed to it in respect of the Aircraft (other than the Purchase Price) and that, upon payment of the Purchase Price, the Manufacturer shall transfer title to the Aircraft to the Buyer.

The conditions specified in this clause 3.2 are inserted for the sole benefit of the Buyer and may be waived in whole or in part and with or without conditions by the Buyer.

**4    Assignment and Purchase Commitment**

4.1    Assignment and Purchase Commitment

Subject to the terms and conditions of this Agreement:

(a)    the Seller shall execute and deliver the Purchase Agreement Assignment in respect of the Aircraft and assign and transfer to the Buyer its right to purchase the Aircraft from the Manufacturer; and

(b)    the Buyer shall execute and deliver the Purchase Agreement Assignment in respect of the Aircraft and purchase the Aircraft from the Manufacturer.

4

ATTORNEYS'S EYES ONLY

Execution Version

4.2  Obligation to Lease



4.3  No Obligation to Purchase

    (a)    If the Seller is unwilling or unable to accept delivery of the Aircraft when obligated to do so in accordance with the terms of this Agreement or if the Seller fails to fulfil any of the conditions precedent hereunder or under the Lease then, without prejudice to any other right that the Buyer may have hereunder or under applicable law, the Buyer shall have no obligation to purchase the Aircraft from the Manufacturer.

    (b)    Except for any liabilities or damages caused by the Buyer's authorised inspectors or representatives during the delivery inspections of the Aircraft preceding the Delivery for which the Seller has indemnified the Manufacturer pursuant to the Airbus Participation Agreement, the Buyer shall not have any obligation or liability whatsoever to the Seller or any other person whether arising in contract, tort or otherwise and whether arising by reference to negligence or strict liability or otherwise for any liability, claim, proceeding, loss, damage (consequential or otherwise), fee, cost or expense of any kind caused directly or indirectly by, arising from any delay in the delivery of, or failure to deliver the Aircraft to the Seller.

## 5    Delivery

5.1  Expected Delivery Date

    (a)    The Seller shall notify the Buyer of the Expected Delivery Date no later than two (2) Business Days prior to such date.

    (b)    The Seller shall notify the Buyer as soon as practicable (but in no event later than three (3) Business Days after the Seller having received notice thereof from the Manufacturer) of any delay in the scheduled delivery of the Aircraft under the Purchase Agreement.

5.2  Condition of Aircraft

5

Execution Version

(a)  The Aircraft shall be delivered in accordance with the Detailed Specifications on the Delivery Date but without, for the avoidance of doubt, the BFE Post-Delivery equipment and components installed on the Aircraft, title to which shall transfer to the Buyer on Delivery but which shall be installed by the Seller post-Delivery in accordance with the terms of the Lease.

(b)  Subject to the terms and conditions of this Agreement, the Buyer shall purchase the Aircraft in "as is where is" condition at Delivery.

5.3  Inspection; Manufacturer's delivery process

(a)  The Buyer and its authorized representatives (nominated by notice from the Buyer to the Seller) may at its own cost physically inspect the Aircraft at the Delivery Location before Delivery and participate in the Manufacturer's delivery process of the Aircraft. Such inspection and participation shall include, but not be limited to a customer flight (in respect of which, the Seller shall procure that a maximum of two (2) of the Buyer's representatives shall be permitted on board the Aircraft), customer walk and review of Manuals and Technical Records and shall be conducted in accordance with the Manufacturer's customary practices. For the avoidance of doubt, the Seller will procure that the Manufacturer permits the Buyer to have these inspection rights through the execution of the Airbus Participation Agreement.

(b)  The Buyer and its authorised representatives shall under no circumstances delay, obstruct, hinder or prevent the delivery procedure of the Aircraft. If the Buyer causes the Seller any loss, damage or liability arising directly as a result of the physical inspection of any Aircraft by the Buyer itself or its nominated and authorised representative (an **Inspection Loss**) then the Buyer shall indemnify the Seller from and against such Inspection Loss. Provided however that if the Buyer (or its representatives) finds the Aircraft not to be in accordance with the Detailed Specifications, the Buyer shall not be liable to indemnify the Seller in respect of any delay in the delivery procedure of the Aircraft or Inspection Loss that results from such finding.

(c)  If the Buyer and/or the Seller finds any production deviations, damages or repairs ("**Defects**") during the delivery inspection for the Aircraft which the Manufacturer cannot (or is not willing to) bring back to original (blue print) design, the Seller and the Buyer will jointly negotiate with the Manufacturer to find a long-term solution acceptable to both the Buyer and the Seller and any commitment from the Manufacturer in respect of such Defects will be documented in a commitment letter (the "**Airbus Commitment Letter**"). For the avoidance of doubt, no Party is entitled to negotiate the terms of such Commitment Letter with the Manufacturer without the involvement of the other Party.

6

Execution Version

(d)  The Seller shall not accept the Aircraft from the Manufacturer unless it has first consulted with the Buyer and the Buyer (or the Beneficiary Parent on its behalf) has confirmed that it also prepared to accept the Aircraft.

5.4    Transfer of title and payment of Purchase Price

(a)  Subject to the terms and conditions of this Agreement, the sale and transfer of title to the Aircraft by the Manufacturer to the Buyer under this Agreement and the Assigned Purchase Agreement shall take place by execution and delivery of the Bill of Sale and Title Warranty by the Manufacturer to the Buyer immediately after receipt by the Seller of the Purchase Price ("**Delivery**"). The Seller shall take all such steps as are necessary to procure that, upon payment of the Purchase Price, the Manufacturer executes and delivers the Bill of Sale and the Title Warranty.

(b)  The Seller shall continue to perform and be solely liable for all obligations of the buyer under the Purchase Agreement, including to make any advance payments or additional payments (other than the Purchase Price), if any, and the Seller shall otherwise take all actions as shall be necessary, to cause the Manufacturer to deliver title to the Aircraft to the Buyer upon payment of the Purchase Price.

5.5    Payment

(a)  All payments to be made under this Agreement by the Buyer to the Manufacturer shall be made to the account specified or directed by the Manufacturer in writing to the Buyer.

(b)  

(c)  Subject to Clause 9, all payments under this Agreement from one party (payor) to the other party or the Manufacturer (recipient) shall be made in full without any deduction or withholding (whether in respect of set-off, counter claim, duties, taxes, charges or otherwise howsoever), unless the payor is prohibited by law from doing so, in which event the payor shall:

(i)   ensure that the deduction or withholding does not exceed the minimum amount legally required;

(ii)  forthwith pay to the recipient such additional amount as shall result in the net amount received by the recipient being equal to the amount which would have been received by the recipient had such a deduction or withholding not been made;

ATTORNEYS'S EYES ONLY                                    FRONTIER0011472

(iii)    pay to the relevant Taxation or other authorities within the period for payment permitted by applicable law the full amount of the deduction or withholding; and

(iv)    upon request in writing from the recipient to the payor deliver to the recipient any receipts, certificates or other proof evidencing the amounts (if any) paid or payable in respect of any deduction or withholding as aforesaid.

5.6    No physical delivery

The Buyer acknowledges that the Aircraft will, following Delivery, remain in the possession of the Seller, as lessee, pursuant to the Lease, and the Seller shall not be obliged to give or effect actual physical delivery of the Aircraft to the Buyer.

## 6    Purchase Agreement

6.1    Purchase Agreement

(a)    The Buyer shall not have any obligations or liability under the Purchase Agreement by reason of or arising out of this Agreement or the Purchase Agreement Assignment other than to the extent expressly set out in the Purchase Agreement Assignment and only as and when executed and delivered by the Buyer. The Seller confirms that it has performed and agrees that it will continue to perform all of its duties and obligations under the Purchase Agreement.

(b)    Neither this Agreement nor the assignment referred to in the Purchase Agreement Assignment shall constitute a novation of or delegation of obligations contained in the Purchase Agreement except to the extent expressly set forth in the Purchase Agreement Assignment. Notwithstanding this Agreement and the Purchase Agreement Assignment, the Seller shall remain fully liable to the Manufacturer (to the same extent as if the Purchase Agreement Assignment and this Agreement had not been entered into) to perform all the obligations and duties of the buyer under the Purchase Agreement (without prejudice to the Buyer's obligations to pay the Purchase Price subject to the terms of this Agreement). For the avoidance of doubt, the Seller acknowledges that the Buyer shall not assume or become the owner of the pre-delivery payments made by the Seller to the Manufacturer or be responsible in any way for any pre-delivery payment arrangements made by the Seller, any of its Affiliates or any third party in respect of any Aircraft. In addition, the Seller is, and shall at all times remain, responsible for the procurement and timely delivery to the Manufacturer of, and payment for, all BFE set out in the Detailed Specifications, and the Seller shall ensure that such BFE (except for the BFE expressly contemplated in the Lease to be delivered and installed on the Aircraft after the Delivery Date) shall be installed on the Aircraft on or prior to the Delivery Date.

8

Execution Version

(c)     The Seller shall comply in all respects with all laws to which it may be subject to compliance with which is necessary to ensure the continuing validity and enforceability of the Purchase Agreement with respect to the Aircraft.

(d)     Between the date hereof and the Delivery Date, neither the Seller nor any Affiliate of the Seller shall amend or modify (except with the prior written consent of the Buyer which shall not be unreasonably withheld) or rescind, cancel or terminate the Purchase Agreement insofar as it relates to the Aircraft.

6.2     Aircraft Specification

(a)     Between the date hereof and the Delivery Date, the Seller undertakes that it will not take any action or omit to take any action that would result in the specifications of the Aircraft (including as to BFE installed thereon or delivered therewith) on the Delivery Date varying in any material respect from the Detailed Specifications, without the Buyer's prior written consent. Any changes to the agreed Detailed Specifications shall require the prior written consent of each party and shall be at the Seller's sole cost and expense. For the avoidance of doubt, any changes to the Detailed Specifications shall not increase the Purchase Price.

(b)     The Seller shall deliver to the Buyer, promptly and in any event within three (3) Business Days, copies of all notices and other relevant correspondence from the Manufacturer under the Purchase Agreement with respect to the Aircraft which affect or relate to the condition of the Aircraft or the delivery status.

## 7      Termination Rights

7.1     Event of Loss before Delivery

(a)     If before Delivery the Aircraft suffers a Total Loss, the Seller shall notify the Buyer in writing thereof as soon as practicable (but in no event later than two (2) Business Days) after becoming aware of such event and, with effect from the date of such Total Loss, the Seller's obligation to sell and the Buyer's obligation to purchase the Aircraft shall terminate and the Buyer shall repay to the Seller any Security Deposit or prepaid Rent with respect to the Aircraft subject to and in accordance with the terms of the Lease as applicable.

(b)     If before Delivery an event occurs which, with the passage of time and/or the satisfaction of any other condition, would constitute a Total Loss, the Seller shall notify the Buyer in writing thereof as soon as practicable (but in no event later than three (3) Business Days) after becoming aware of such event and, for so long as such event continues, the Buyer shall be under no obligation to buy, and the Seller shall be under no obligation to sell, the Aircraft.

7.2     Termination of Purchase Agreement

9

Execution Version

(a)     If, at any time prior to Delivery, the obligation of the Manufacturer to sell and/or of the Seller to buy the Aircraft pursuant to the Purchase Agreement is terminated (other than as a result of a breach by the Buyer of its obligations under this Agreement or the Purchase Agreement Assignment), the Buyer shall be entitled to terminate its obligation to purchase the Aircraft by notice in writing to the Seller and the obligations of each party to respectively buy and sell the Aircraft pursuant to this Agreement will end from the date of that notice, but without prejudice to any other liabilities each party may have to the other as expressly stated in clause 7.2(b) below and as otherwise set out in this Agreement.

(b)     The Seller will indemnify and hold harmless the Buyer for all of its losses, costs and expenses (including any reasonable legal fees incurred) should the delivery of the Aircraft be delayed beyond the Scheduled Delivery Date or fail to deliver as a result of a breach of the Seller or the Manufacturer of its respective obligations under this Agreement, the Purchase Agreement or the Purchase Agreement Assignment.

(c)     The Buyer will indemnify and hold harmless the Seller for all of its losses, costs and expenses (including any reasonable legal fees incurred) should the delivery of the Aircraft be delayed beyond the Scheduled Delivery Date or fail to deliver as a result of a breach of the Buyer of its obligations under this Agreement or the Purchase Agreement Assignment.

7.3     Lease Termination

If, at any time prior to Delivery, the Buyer's obligation to lease the Aircraft to the Seller, as lessee, pursuant to the Lease shall have been terminated in accordance with the terms thereof, the Buyer shall be entitled to terminate its obligation to purchase the Aircraft by notice in writing to the Seller and the obligations of each party to respectively buy and sell the Aircraft pursuant to this Agreement will end from the date of that notice, but without prejudice to any other liabilities each party may have to the other as expressly stated in this Agreement or the Lease, including but not limited to the Seller's right to receive a refund of the Security Deposit or prepaid Rent subject to and in accordance with the terms of the Lease as applicable.

7.4     Uncurable Material Defect

If the Manufacturer notifies the Buyer and the Seller that the Manufacturer does not intend to deliver the Aircraft because the Manufacturer cannot correct any material technical defect of the Aircraft or because in the opinion of the Manufacturer it is impracticable or prohibitively expensive to do so, and no other solution can be agreed between the Buyer (or the Beneficiary Parent on its behalf), the Seller and/or the Manufacturer, the Buyer shall be entitled to terminate its obligation to purchase the Aircraft by notice in writing to the Seller whereupon (i) the Buyer shall repay to the   Seller any Security Deposit or prepaid Rent with respect to the Aircraft subject to and in accordance with the terms of the Lease as applicable and (ii) the obligations of each party to

10

respectively buy and sell the Aircraft pursuant to this Agreement will end from the date of that notice.

7.5    Final Delivery Date

(a)    If (i) Delivery of the Aircraft shall not have occurred on or before the Final Delivery Date or (ii) the Manufacturer notifies the Seller that delivery of the Aircraft under the Purchase Agreement and/or the Assigned Purchase Agreement will be postponed until a date falling on or after the Final Delivery Date, the parties shall enter into good faith discussions for a period of one (1) week to determine whether a mutually acceptable alternative delivery date can be agreed. If an alternative delivery date is not agreed upon during such consultation period the Buyer (to the exclusion of the Seller) may, where the delay is not due to the Buyer's breach, or otherwise, either party may, elect to terminate this Agreement by notice in writing to the other party whereupon the obligation of the Seller to sell, and of the Buyer to buy, the Aircraft shall be terminated and the obligations of each party to respectively buy and sell the Aircraft pursuant to this Agreement will end from the date of that notice, but without prejudice to any other liabilities each party may have to the other as expressly stated in this Agreement.

(b)    If the Delivery is delayed beyond or shall not have occurred on or before the Final Delivery Date solely due to the failure of the Seller to accept delivery of the conforming Aircraft under the Lease, the Seller shall bear all out-of-pocket third party financing costs and expenses of the Lessor (including, but not limited to, commitment fees, breakage costs, legal fees, etc.) resulting from such delay or termination of the obligations of each party to this Agreement.

8    **Indemnity**

Subject and without prejudice to Clause 7.1 above, the Seller shall indemnify and hold harmless each of the Indemnitees in full on demand in respect of all Losses suffered or incurred by such Indemnitee arising out of or connected in any way with:

(a)    the sale, purchase, manufacture, ownership, possession, registration, performance, transportation, management, control, inspection, use or operation, condition, testing, delivery, leasing, maintenance, repair, service, modification, overhaul, replacement, removal, import, export, conversion, insurance, refurbishment or redelivery of the Aircraft, or any loss of or damage to the Aircraft or relating to loss or destruction of or damage to any property, or death or injury to any person caused by, relating to or arising from or out of (in each case whether directly or indirectly) any of the foregoing matters and regardless of when the same arises or occurs;

11

Execution Version

(b)    any design, article or material in the Aircraft or the operation or use thereof constituting an infringement of patent, copyright, trademark, design or other proprietary right (but only to the extent that the Buyer has no right to pursue such claims against the Manufacturer pursuant to the Purchase Agreement Assignment) or a breach of any obligation of confidentiality owed to any person; or

(c)    any breach by the Seller of the provisions of this Agreement.

PROVIDED THAT the indemnities contained in this Clause 7.2 shall not extend to Losses with respect to any Indemnitee:

(i)    to the extent that such Losses arise out of any act, omission, event or circumstance occurring after Delivery; or

(ii)    to the extent that such Losses are caused by the negligence, wilful misconduct or fraud by such Indemnitee or by the failure of such Indemnitee to comply with its express obligations under this Agreement; or

(iii)    to the extent that such Losses represent a Tax or loss of Tax benefits.

## 9    Taxes



## 10    Assignment

10.1    The Buyer shall not assign any of its rights or obligations under this Agreement (either directly or through a beneficial interest transfer by Beneficiary or through a transfer of ownership of Beneficiary), without the prior consent of the Seller.

10.2    The Seller shall not assign any of its rights or obligations under this Agreement.

## 11    Entire Agreement

This Agreement (together with the Lease and all documents which are required by their respective terms to be entered into by the parties or any of them) contains the entire agreement and understanding between the Buyer and the Seller relating to the sale of the Aircraft and supersedes any previous understanding, commitment, agreement or representation whatsoever, oral or

ATTORNEYS'S EYES ONLY

written. This Agreement may only be amended by an instrument in writing entered into on or after the date of this Agreement executed by or on behalf of the Buyer and the Seller.

## 12    Miscellaneous

Clauses 7 (*Fees and Expenses*), 18.4 (*Rights Cumulative; Waivers; Variation; Counterparts; Language; Consents*), 18.8 (*Notices*), 18.9 (*Invalidity*) and 18.16 (*Confidentiality*) of the Lease shall apply *mutatis mutandis* to this Agreement.

## 13    No Brokers

### 13.1    No Brokers

Each of the Seller and the Buyer hereby represent and warrant to the other that it has not paid, agreed to pay or caused to be paid directly or indirectly in any form, any commission, percentage, contingent fee, brokerage or other similar payments of any kind, in connection with the establishment or operation of this Agreement, to any person (other than fees payable by each party to its legal advisers).

### 13.2    Indemnity

Each of the Seller and the Buyer agrees to indemnify and hold the other harmless from and against any and all claims, suits, damages, costs and expenses (including, but not limited to reasonable attorneys' fees) asserted by any agent, broker or other third party for any commission or compensation of any nature whatsoever based upon this Agreement or the Aircraft, if such claim, suit, damage, cost or expense arises out of any breach by the indemnifying party, its officers, employees or agents of Clause 13.1.

## 14    Governing Law

THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE WITHOUT REGARD FOR CONFLICT OF LAW PRINCIPLES (OTHER THAN THE PROVISIONS OF SECTION 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAWS OF THE STATE OF NEW YORK).

## 15    Waiver of Jury Trial

EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY JUDICIAL PROCEEDING TO WHICH IT IS A PARTY INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT, ANY OF THE OPERATIVE

Execution Version

DOCUMENTS OR THE RELATIONSHIP ESTABLISHED HEREUNDER OR THEREUNDER. THE SCOPE OF THE ABOVE WAIVER AND AGREEMENT IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.    EACH PARTY HERETO ACKNOWLEDGES THAT THE ABOVE WAIVER AND AGREEMENT IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THE ABOVE WAIVER AND AGREEMENT IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THE ABOVE WAIVER AND AGREEMENT IN THEIR RELATED FUTURE DEALINGS.  EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THE ABOVE WAIVER AND AGREEMENT WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS AND AGREES AS DESCRIBED ABOVE FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER AND AGREEMENT SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT OR AGREEMENTS RELATING HERETO.

## 16    Enforcement

16.1    EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT IT WILL NOT OBJECT TO THE COMMENCEMENT OF ANY ACTION, LITIGATION OR PROCEEDING OF ANY KIND OR DESCRIPTION, WHETHER IN LAW OR EQUITY, WHETHER IN CONTRACT OR IN TORT OR OTHERWISE, IN ANY WAY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS RELATING HERETO OR THERETO, IN THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF SUCH COURTS AND AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION, LITIGATION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT.  EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, LITIGATION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW; PROVIDED, THAT THE BUYER MAY AT ITS OPTION BRING SUIT OR INSTITUTE OTHER JUDICIAL PROCEEDINGS AGAINST THE SELLER OR THE SELLER'S ASSETS IN THE COURTS OF ANY OTHER JURISDICTION WHERE SELLER OR SUCH ASSETS MAY BE FOUND, TO THE EXTENT PERMITTED BY THE APPLICABLE LAW OF SUCH OTHER JURISDICTION.

ATTORNEYS'S EYES ONLY

Execution Version

16.2    THE SELLER SHALL DESIGNATE, APPOINT AND EMPOWER CORPORATION SERVICE
COMPANY (CSC) OF 1180 AVENUE OF THE AMERICAS, SUITE 210, NEW YORK, NY 10036
AS ITS AUTHORIZED AGENT SOLELY TO RECEIVE AND ACKNOWLEDGE, FOR AND ON
ITS BEHALF, SERVICE OF ANY WRIT, SUMMONS, ORDER, JUDGMENT OR OTHER NOTICE
OF LEGAL PROCESS IN ANY PROCEEDINGS. AS LONG AS THIS AGREEMENT REMAINS
IN FORCE, THE SELLER SHALL MAINTAIN A DULY APPOINTED AND AUTHORIZED AGENT
TO RECEIVE AND ACKNOWLEDGE, FOR AND ON ITS BEHALF, SERVICE OF ANY WRIT,
SUMMONS, ORDER, JUDGMENT OR OTHER NOTICE OF LEGAL PROCESS IN ANY
PROCEEDINGS. THE SELLER SHALL KEEP THE BUYER ADVISED OF THE IDENTITY AND
LOCATION OF SUCH AGENT. THE SELLER IRREVOCABLY UNDERTAKES NOT TO
REVOKE THE AUTHORITY OF SUCH AGENT AND, IN THE EVENT OF THE TERMINATION
OF SUCH APPOINTMENT, OR IF FOR ANY REASON THE SELLER'S PROCESS AGENT IS
UNABLE TO ACT AS SUCH, THE SELLER WILL APPOINT A SUBSTITUTE PROCESS AGENT
ACCEPTABLE TO THE BUYER.

16.3    EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE
MANNER PROVIDED FOR NOTICES IN SECTION 12. NOTHING IN THIS AGREEMENT WILL
AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER
MANNER PERMITTED BY APPLICABLE LAW.

[Balance of page intentionally blank]

ATTORNEYS'S EYES ONLY

Execution Version

Signature Page – Sale and Leaseback Agreement – MSN 9549

**IN WITNESS** whereof the parties hereto have caused this Agreement to be duly executed the day and year first above written.

SELLER:

SIGNED

for and on behalf of

FRONTIER AIRLINES, INC.

By:.........................................

Name:.......... James G. Dempsey

Tittle:........ Chief Financial Officer

BUYER:

SIGNED

for and on behalf of

**Wilmington Trust Company,**
 **not in its individual capacity but solely as owner trustee under**
 **the Trust Agreement**

By:..............................

Name:...........................

Title:............................

Signature Page

ATTORNEYS'S EYES ONLY

FRONTIER0011481

Execution Version

Signature Page – Sale and Leaseback Agreement – MSN 9549

**IN WITNESS** whereof the parties hereto have caused this Agreement to be duly executed the day and year first above written.

**SELLER:**

**SIGNED**

for and on behalf of

**FRONTIER AIRLINES, INC,**

By:.................................

Name:.............................

Tittle:.............................

**BUYER:**

**SIGNED**

for and on behalf of

**Wilmington Trust Company,**
**not in its individual capacity but solely as owner trustee under**
**the Trust Agreement**

By:.................................

Name:........Adam R. Vogelsong
              Vice President

Title:.............................

Signature Page

FRONTIER0011482

Execution Version

## Schedule 1
## Bill of Sale

**BY THIS BILL OF SALE** Airbus Americas, Inc. (**Seller**) does this _____ day of 2020, sell, grant and transfer, in accordance with the terms of an Assignment of Purchase Agreement dated _____ 2020 (**Sale Agreement**) and made between the Seller and Wilmington Trust Company, not in its individual capacity but solely as owner trustee under the Trust Agreement (**Buyer**), all its rights, title and interest in and to the aircraft specified below (hereinafter referred to as the **Aircraft**) to the Buyer, and its successor and assigns, for and in consideration of the Purchase Price (as defined in the Sale Agreement) receipt of which is hereby acknowledged by the Seller:

(a)    one Airbus model A320-251N aircraft with manufacturer's serial number 9549 and U.S. registration number N368FR;

(b)    two CFM International, Inc. model LEAP-1A26 engines bearing manufacturer's serial numbers 599677 and 599680;

(c)    all Parts; and

(d)    all Manuals and Technical Records.

The Seller hereby warrants to the Buyer and its successors and assigns that it is the full and legal beneficial owner of the Aircraft with good and marketable title thereto, and that the Seller does hereby convey good and marketable full legal and beneficial title to the Aircraft to the Buyer free and clear of all liens, claims, charges, encumbrances and rights of others and the Seller hereby agrees to warrant and defend such title forever against all claims and demands whatsoever.

THIS BILL OF SALE SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE WITHOUT REGARD FOR CONFLICT OF LAW PRINCIPLES (OTHER THAN THE PROVISIONS OF SECTION 5-1401 and 5-1402 OF THE GENERAL OBLIGATIONS LAWS OF THE STATE OF NEW YORK)

IN WITNESS whereof Airbus S.A.S. [Airbus Americas, Inc.] has caused this Bill of Sale to be duly executed on _____ 2020 and delivered to the Buyer.

SIGNED on behalf of

**AIRBUS AMERICAS, INC.**

in the presence of:

17

Execution Version

## Schedule 2

### Title Warranty

### AIRBUS S.A.S. TITLE WARRANTY

(the "**Airbus S.A.S. Title Warranty**")

Airbus S.A.S. hereby warrants to Wilmington Trust Company, *not in its individual capacity but solely as owner trustee* (the "**Buyer**"), its successors and assigns that the Aircraft Bill of Sale executed by Airbus Americas, Inc. dated ____ _____ _____ and  relating to one A320-251N aircraft bearing MSN 9549 (the "**Aircraft Bill of Sale**") conveys to the  Buyer on the date hereof good, legal and valid title to the airframe, the propulsion systems, and all appliances, components, parts, instruments, accessories, furnishings, modules and other equipment of any nature as described in the Aircraft Bill of Sale, are free and clear of all liens, claims, charges, encumbrances and rights of others, and Airbus S.A.S. will defend such title forever against all claims and demands whatsoever.

This Airbus S.A.S. Title Warranty is governed by and shall be construed in accordance with the laws of the State of New York.

**IN WITNESS WHEREOF**, Airbus S.A.S. has caused this Airbus S.A.S. Title Warranty to be executed by its duly authorized representative this ____ day of _____, 2020.

**AIRBUS S.A.S.**

By:_____

Name:

Title:

18

Execution Version

## Schedule 3
## Detailed Specification

19

ATTORNEYS'S EYES ONLY

FRONTIER0011485

**Appendix 1- Part 6**

**SCN List, BFE List and LOPA**



This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 1/9

**Proprietary and Confidential Information**

25

ATTORNEYS'S EYES ONLY



| RFC | RFC title | Status | Last SCN issue | ATA | Catalog item (EPAC/TDU) | Fleet |
|---|---|---|---|---|---|---|

List of RFC/SCN
11/06/2019

SEARCH CRITERIA
Family : A318/A319/A320/A321                              MSN : 09065
SEARCH RESULT

This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom        Page 2/9

**Proprietary and Confidential Information**

26

ATTORNEYS'S EYES ONLY

List of RFC/SCN
11/06/2019



| SEARCH CRITERIA | | | | | | | |
| Family : A318/A319/A320/A321 | | | MSN : 09065 | | | | |
| SEARCH RESULT | | | | | | | |
| RFC | RFC title | Status | Last SCN issue | ATA | Catalog item (EPAC/TDU) | Fleet |
|  |  |  |  |  |  |  |

This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 3/9

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY

FRONTIER0011488



This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 4/9

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY

FRONTIER0011489



List of RFC/SCN
11/06/2019

| RFC | RFC title | Status | Last SCN issue | ATA | Catalog item (EPAC/TDU) | Fleet |
|---|---|---|---|---|---|---|

SEARCH CRITERIA
Family : A318/A319/A320/A321    MSN : 09065
SEARCH RESULT

This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 5/9

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY



This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 6/9

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY



List of RFC/SCN
11/06/2019

SEARCH CRITERIA
Family : A318/A319/A320/A321    MSN : 09065

SEARCH RESULT

| RFC | RFC title | Status | Last SCN issue | ATA | Catalog item (EPAC/TDU) | Fleet |
|-----|-----------|--------|----------------|-----|------------------------|-------|

This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 7/9

Proprietary and Confidential Information

31

ATTORNEYS'S EYES ONLY

FRONTIER0011492



This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 8/9

**Proprietary and Confidential Information**

32



List of RFC/SCN
11/06/2019

This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Page 9/9

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY

FRONTIER0011494

**BFE List**

A.      Airbus pre-delivery installed BFE (see attached list).

B.      Post Delivery Installed BFE (to be installed in Tampa, Florida):



**Proprietary and Confidential Information**

ATTORNEYS'S EYES ONLY

## Airbus Pre-delivery Installed BFE List



This document contains information which are confidential to Airbus and may not be disclosed to any third party without Airbus' prior written consent. Airbus disclaims all liability resulting from the use of this document or any actual or alleged omission therefrom

Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY

FRONTIER0011496

LOPA





Proprietary and Confidential Information

ATTORNEYS'S EYES ONLY

FRONTIER0011497



Proprietary and Confidential Information

37



Proprietary and Confidential Information

38

ATTORNEYS'S EYES ONLY

FRONTIER0011499