AMENDMENT NO. 8

to

A320 Family Aircraft Purchase Agreement

dated as of September 30, 2011

between

**AIRBUS S.A.S.**

and

**FRONTIER AIRLINES, INC.**

This Amendment No. 8 (hereinafter referred to as this "**Amendment**") is entered into as of March 16, 2020 between Airbus S.A.S. a *société par actions simplifiée*, created and existing under the laws of the Republic of France, having its registered office at 2 Rond-Point Emile Dewoitine, 31700 Blagnac, France and registered with Toulouse Registre du Commerce under number RCS Toulouse 383 474 814 (the "**Seller**") and Frontier Airlines, Inc., a corporation organized and existing under the laws of the State of Colorado, United States of America, having its principal corporate offices located at 4545 Airport Way, Denver, Colorado 80239 USA, (the "**Buyer**" and, together with the Seller, the "**Parties**").

WHEREAS, the Buyer and the Seller entered into that certain A320 Family Aircraft Purchase Agreement dated as of September 30, 2011 (as amended, supplemented and modified from time to time prior to the date hereof, the "**Agreement**").



WHEREAS, the Parties wish to amend the Agreement as set forth below.

NOW THEREFORE, SUBJECT TO THE TERMS AND CONDITIONS SET FORTH HEREIN, IT IS AGREED AS FOLLOWS:

Capitalized terms used herein and not otherwise defined in this Amendment will have the meanings assigned to them in the Agreement. Except as used within quoted text, the terms "herein", "hereof", and "hereunder" and words of similar import refer to this Amendment.

1. **COMMERCIAL INCENTIVES**

1.1 

1.2

1.3

1.4

2. **DELIVERIES**

2.1 Aircraft Swap

    (a)    The Scheduled Delivery Month of two (2) Aircraft shall be amended as follows:

| Aircraft Type | Contractual Rank | CAC ID | Original Scheduled Delivery Month | New Scheduled Delivery Month |
|---|---|---|---|---|
| A321 Incremental Aircraft | 82 | 10094910 | May 2021 | May 2022 |
| A320 Aircraft | 80 | 10005516 | Q4 2021 | May 2021 |

    (b)    The delivery schedule table set forth in Clause 9.1 of the Agreement is deleted in its entirety and replaced with the delivery schedule table attached hereto as Appendix A.

3. **ABSENCE OF LIABILITY**

It is expressly understood and agreed by the Parties, as a condition hereof, that

(a)

    (i)     the execution of this Amendment,

    (ii)    the issuance by the Seller of the Actual Tariffs Credit Memorandum, and

    (iii)   any payment made by the Seller to the Buyer pursuant to this Amendment,

will not constitute or be construed as an admission of liability on the part of the Seller in respect of the Tariffs; and

(b) the terms and conditions of this Amendment will not establish any precedent, nor will this Amendment be used as a basis to seek or justify similar terms in any subsequent situation and shall not be used as evidence, or in any other manner, in any court or dispute resolution proceeding (with the exception of an action or proceeding to enforce the terms of this Amendment) to create, prove or interpret the obligations of any Party hereto or any under any other agreement between the Parties.

4 **EFFECT OF THE AMENDMENT**

The Agreement will be deemed amended to the extent herein provided, and, except as specifically amended hereby, will continue in full force and effect in accordance with its original terms. This Amendment contains the entire agreement between the Buyer and the Seller with respect to the subject matter hereof and supersedes any previous understandings, commitments, or representations whatsoever, whether oral or written, related to the subject matter of this Amendment.

Both parties agree that this Amendment will constitute an integral, nonseverable part of the Agreement and will be governed by its provisions, except that if the Agreement and this Amendment have specific provisions that are inconsistent, the specific provisions contained in this Amendment will govern.

This Amendment terminates at midnight (Mountain Daylight Time) on March 16 2020 if by such time the Delivery of the Supported Aircraft has not occurred.

5 **CONFIDENTIALITY**

This Amendment is subject to the confidentiality provisions set forth in Clause 22.11 of the Agreement.

6 **ASSIGNMENT**

Notwithstanding any other provision of this Amendment or of the Agreement, this Amendment will not be assigned or transferred in any manner without the prior written consent of the other party, and any attempted assignment or transfer in contravention of the provisions of this Clause 6 will be void and of no force or effect.

PRIVILEGED AND CONFIDENTIAL

ATTORNEYS'S EYES ONLY      FRONTIER0012245

**7   COUNTERPARTS**

This Amendment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.

**8   INTERPRETATION AND LAW**

This Amendment is subject to the Interpretation and Law provisions set forth in Clause 22.6 of the Agreement.

[SIGNATURE PAGE FOLLOWS]

ATTORNEYS'S EYES ONLY                                                        FRONTIER0012246

IN WITNESS WHEREOF, the parties hereto have entered into this Amendment by their respective officers or agents as of the date first above written.

Airbus S.A.S

By: _____
Name:
Title:

Frontier Airlines, Inc.

By: _____
Name:
Title:

CT0905340 AMD 8 FFT A320

PRIVILEGED AND CONFIDENTIAL

ATTORNEYS'S EYES ONLY                                                                    FRONTIER0012247

Appendix A to Amendment No. 8



| Aircraft Rank | CACID | Aircraft Type | Scheduled Delivery ||
|---|---|---|---|---|
| | | | Month/Quarter | Year |

CT0905340 AMD 8 FFT A320 EXECUTION

ATTORNEYS'S EYES ONLY

FRONTIER0012248

Appendix A to Amendment No. 8

| Aircraft Rank | CACID | Aircraft Type | Scheduled Delivery | |
|---|---|---|---|---|
| ███████ | ███████ | ███████ | ███████ | ███████ |
| 50 | 10005486 | A320 Aircraft | February | 2020 |
| 51 | 10005487 | A320 Aircraft | February | 2020 |
| 52 | 10005488 | A320 Aircraft | March | 2020 |
| 53 | 10005489 | A320 Aircraft | March | 2020 |
| 54 | 10005490 | A320 Aircraft | March | 2020 |
| 55 | 10005491 | A320 Aircraft | May | 2020 |
| 56 | 10005492 | A320 Aircraft | May | 2020 |
| 57 | 10005493 | A320 Aircraft | June | 2020 |
| 58 | 10005494 | A320 Aircraft | June | 2020 |
| 59 | 10005495 | A320 Aircraft | August | 2020 |
| 60 | 10005496 | A320 Aircraft | August | 2020 |
| 61 | 10005497 | A320 Aircraft | September | 2020 |
| 62 | 10005498 | A320 Aircraft | September | 2020 |
| 63 | 10005499 | A320 Aircraft | 4th | 2020 |
| 64 | 10005500 | A320 Aircraft | 4th | 2020 |
| 65 | 10005501 | A320 Aircraft | 4th | 2020 |
| 66 | 10005502 | A320 Aircraft | 4th | 2020 |
| 67 | 10005503 | A320 Aircraft | 4th | 2020 |
| 68 | 10005504 | A320 Aircraft | 1st | 2021 |
| 69 | 10005505 | A320 Aircraft | 1st | 2021 |
| 70 | 10005506 | A320 Aircraft | 1st | 2021 |
| 71 | 10005507 | A320 Aircraft | 1st | 2021 |
| 72 | 10005508 | A320 Aircraft | 2nd | 2021 |
| 73 | 10005509 | A320 Aircraft | 2nd | 2021 |
| ███████ | ███████ | ███████ | ███████ | ███████ |
| 80 | 10005516 | A320 Aircraft | May | 2021 |

**Redacted**

ATTORNEYS'S EYES ONLY    FRONTIER0012249

Appendix A to Amendment No. 8

| Aircraft Rank | CACID | Aircraft Type | Scheduled Delivery |
|---|---|---|---|



Redacted

ATTORNEYS'S EYES ONLY                              FRONTIER0012250

Appendix A to Amendment No. 8

| Aircraft Rank | CACID | Aircraft Type | Scheduled Delivery |
|---|---|---|---|



Redacted

CT0905340 AMD 8 FFT A320 EXECUTION

Page 9/16

ATTORNEYS'S EYES ONLY

FRONTIER0012251

Appendix A to Amendment No. 8

| Aircraft Rank | CACID | Aircraft Type | Scheduled Delivery |
|---|---|---|---|
| Redacted | | | |

ATTORNEYS'S EYES ONLY　　　　　　　　　　　　　　　　　　　　FRONTIER0012252

Appendix B to Amendment No. 8            CONFIDENTIAL

## LETTER AGREEMENT
## ENGINE DISCOUNT
## (CAC ID:10005490 MSN:10038)

This Letter Agreement, effective as of March 16, 2020, is entered into by and between Frontier Airlines, Inc., a Colorado corporation (the "**Buyer**") and Airbus S.A.S., a *société par actions simplifiée* organized under the laws of the Republic of France (the "**Seller**") (each a "**Party**" and together, the "**Parties**").

WITNESSETH:

WHEREAS, Buyer and CFM International, Inc. ("CFM") have entered into that certain General Terms Agreement No. CFM-1-2576101771, together with exhibits and letter agreements, if any, thereto, dated as of October 17, 2011 (collectively, as amended, supplemented or otherwise modified from time to time, the "**Engine Purchase Agreement**") with respect to Engines to be installed on Aircraft to be sold by Seller and purchased by Buyer from Seller pursuant to the A320 Family Aircraft Purchase Agreement dated as of September 30, 2011 between Buyer and Seller, together with amendments, and letter agreements thereto (collectively, as amended, supplemented or otherwise modified from time to time, the "**Aircraft Purchase Agreement**"); and

WHEREAS, Seller sells complete aircraft, including engines, to its customers, including Buyer, and therefore invoices Buyer for the purchase price of the complete aircraft, including engines supplied by CFM to Seller that are installed on and sold and delivered by Seller with such aircraft to Buyer in accordance with the Aircraft Purchase Agreement; and

WHEREAS, in order for Buyer to purchase the Aircraft under the Aircraft Purchase Agreement, it is required to select between competing engine models to be installed on such Aircraft; and



ATTORNEYS'S EYES ONLY        FRONTIER0012253

Appendix B to Amendment No. 8            CONFIDENTIAL

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Definitions

   Capitalized terms used herein, but not defined, shall have the meanings set forth in the Aircraft Purchase Agreement when such terms apply to Seller, as applicable.

2. [REDACTED]

   The Parties agree as follows:

   (a) [REDACTED]

   (b) [REDACTED]

3. Retained Rights and Obligations

   3.1 Notwithstanding anything contained herein to the contrary, and for avoidance of doubt, the Parties hereby agree that:

   (a) Buyer retains, and does not assign or delegate to Seller and Seller does not acquire or assume, any rights, benefits, obligations, duties and/or liabilities of any type and/or nature whatsoever accrued or arising under the Engine Purchase Agreement except as specifically provided in this Letter Agreement, and

   (b) Seller does not assume any of the duties, obligations and/or liabilities of Buyer under the Engine Purchase Agreement, all of which shall remain with Buyer to the same extent as if this Letter Agreement had not been executed and entered into.

4. Representations and Warranties

   Buyer represents and warrants to the Seller that:

   (a) The Engine Purchase Agreement is in full force and effect as of the date hereof;

   (b) no consent of CFM is necessary in order for the Buyer to effectively make the Assignment;

ATTORNEYS'S EYES ONLY      FRONTIER0012254

Appendix B to Amendment No. 8                                    CONFIDENTIAL

- (c) No provision of the Engine Purchase Agreement or any other agreement between CFM and Buyer does or will interfere with, limit, diminish or otherwise adversely affect the rights of Seller to receive the ▮▮▮▮ prior to Delivery of the 2020 Aircraft to Buyer, except if Buyer defaults, delays, fails or is unable to take delivery of Aircraft or any required Spare Engines in accordance with the Engine Purchase Agreement, or if Buyer is in breach of any other obligations under the Engine Purchase Agreement, in each case, which default, delay, failure or breach would have excused CFM from payment of the ▮▮▮▮ directly to Buyer if this Letter Agreement had not been executed;

- (d) It has all corporate power and authority to execute, deliver and perform this Letter Agreement, this Letter Agreement has been duly authorized, executed and delivered by it and it has received all necessary authorizations, approvals, licenses and consents (corporate, governmental or otherwise) to the transactions contemplated herein; and

- (e) This Letter Agreement constitutes the legal, valid, and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, and other similar laws affecting the rights of creditors generally or by general principles of equity.

4.2   Seller represents and warrants to the Buyer:

- (a) It has all corporate power and authority to execute, deliver and perform this Letter Agreement, this Letter Agreement has been duly authorized, executed and delivered by it and it has received all necessary authorizations, approvals, licenses and consents (corporate, governmental or otherwise) to the transactions contemplated herein; and

- (b) This Letter Agreement constitutes the legal, valid, and binding obligation of Seller enforceable against Seller in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, and other similar laws affecting the rights of creditors generally or by general principles of equity.

5.  Undertakings

    (a) Each of the Parties agrees from time to time to do and perform any and all such other further acts and to execute and deliver any and all such other instruments as may be required by law or reasonably requested by any other Party hereto to establish, maintain and protect the rights and remedies of the Parties and/or to carry out and effect the intended purpose of this Letter Agreement.

    (b) Each Party agrees to keep confidential this Letter Agreement and any confidential information shared with it pursuant to this Letter Agreement, and to limit any disclosure of such information only to those individuals who need to know such information for purposes of this Letter Agreement. Notwithstanding the foregoing, each Party agrees that such information and the terms and conditions of this Letter Agreement may be disclosed without such prior written consent (i) as required by law or as necessary in connection with the enforcement of such Party's rights hereunder, and (ii) to the board of directors, managers, employees, auditors, and legal, financial and technical advisors of each Party who have a need to know such information and are subject to

ATTORNEYS'S EYES ONLY                                              FRONTIER0012255

Appendix B to Amendment No. 8                                          CONFIDENTIAL

restrictions on further disclosure except as permitted in subclause (i) of this Clause 5(b).

6. Miscellaneous

   (a) This Letter Agreement shall be binding upon and inure to the benefit of the Parties and their successors and permitted assigns. No Party shall assign any of its rights or obligations under this Letter Agreement without the prior written consent of the other Parties.

   (b) The provisions of this Letter Agreement shall not be amended or varied otherwise than by an instrument in writing executed by or on behalf of all Parties.

   (c) THIS LETTER AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK. Any disputes between the Parties under or related to this Letter Agreement shall be brought in the state or federal courts located within the Borough of Manhattan in New York City in the State of New York, and the Parties hereby consent to the exclusive personal jurisdiction and venue of these courts.

   (d) This Letter Agreement may be executed simultaneously in two or more counterparts and by different Parties on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

   (e) Any provision of this Letter Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be invalid only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, any such prohibition or unenforceability in any jurisdiction shall not invalidate such provision in any other jurisdiction.

   (f) This Letter Agreement (including all Appendices hereto) constitutes the entire agreement between the Parties with respect to the subject matter hereof and any prior or contemporaneous written or oral understandings between the Parties with regard to the subject matter hereof are superseded hereby in their entirety.

   (g) Seller shall inform CFM that, for purposes of issuing the [REDACTED] to Seller in accordance with this Letter Agreement, Seller's account is:

   Credit Agricole CIB New York
   1301 Avenue of the Americas, New York, NY 10019, USA
   Account name: AIRBUS SAS
   Address: 2 rond-point Emile Dewoitine, 31700 Blagnac, France
   Account number: 001021635000100
   BIC/SWIFT: CRLYUS33XXX
   ABA/Branch code: 026008073

   (signature page following)

ATTORNEYS'S EYES ONLY                                          FRONTIER0012256

Appendix B to Amendment No. 8 CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have each caused this Letter Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

FRONTIER AIRLINES, INC.   AIRBUS S.A.S.

By:_____   By:_____
  Name:                         Name:

  Title:                        Title:

ATTORNEYS'S EYES ONLY                                     FRONTIER0012257

Appendix B to Amendment No. 8        CONFIDENTIAL

**APPENDIX 1**

███████████
For
**2020 Aircraft**

2020 Aircraft CAC ID 10005490: ███████████████████████████

ATTORNEYS'S EYES ONLY     FRONTIER0012258