

ACCIPITER HOLDINGS DAC
28-29 Sir John Rogerson's Quay
Dublin 2, Ireland

**STRICTLY PRIVATE & CONFIDENTIAL**

**Sent by E-mail (PDF)**

FRONTIER AIRLINES, INC.
4545 Airport Way,
Denver, Colorado 80239
United States of America

Attention:   Mr. Robert Fanning, Director of Fleet Administration

10 September 2019

**Re: Letter of Intent for the proposed purchase and lease of six (6) new Airbus A320-251N aircraft (individually or collectively, as appropriate, the "New Aircraft")**

Dear Mr. Fanning,

1. We refer to the following:

    (a) the Framework Agreement, dated as of May 28, 2018 (the *Framework Agreement*), between Accipiter Holdings DAC (*Accipiter*) and Frontier Airlines, Inc. (*Frontier* and *Lessee*), relating to the purchase and lease of eleven (11) new Airbus model A320-251N Aircraft); and

    (b) the Form of Lease Agreement (the *Lease*) attached as Exhibit A (*Form of Lease Agreement*) to the Framework Agreement.

    Capitalised terms used but not defined herein shall have the same meanings given to them in the Framework Agreement.

2. We are pleased to submit a preliminary non-binding letter of intent (this *Letter of Intent*) for the proposed purchase and lease of the New Aircraft.

3. Our terms for the proposed purchase and lease of the New Aircraft (the *Proposed Terms*) are as follows:

1

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



| 1 | Aircraft Delivery Schedule: | The following Scheduled Delivery Months in 2020: March (Rank 52), March (Rank 53), March (Rank 54), May (Rank 55), June (Rank 58), and August (Rank 59). |
|---|---|---|
| 2 | Purchase Price: | The purchase price on the Delivery Date for each New Aircraft shall be ▇▇▇▇. |
| 3 | Lease Term: | 144 months from and including the Delivery Date.<br><br>Early Termination Option: Provided no Event of Default has occurred under any of the lease agreements and provided further that Lessee gives Lessor no less than twenty four (24) months' irrevocable notice prior to the eighth (8th) anniversary of the Delivery Date, Lessee will have the option to terminate the term of the lease agreement of any New Aircraft on the eighth (8th) anniversary of the Delivery Date (each such reduced term, a *Reduced Lease Term*). Upon the expiration of the Reduced Lease Term for any lease agreement Lessee shall pay Lessor an early termination fee equal to ▇▇▇▇ (the *Early Termination Fee*). In addition to the Early Termination Fee, Lessee shall pay to Lessor an amount of US$▇▇▇▇ per New Aircraft to account for the percentage shortfall of the Low-Pressure System Modules Engine Performance Restoration rate. For the avoidance of doubt, the Early Termination Fee will be in addition to the EOL Adjustment. |
| 4 | Lease Rental: | **Fixed Lease Rental:**<br><br>The Fixed Lease Rental, which shall be payable monthly in advance by Lessee to Lessor, commencing on the Delivery Date of each New Aircraft and continuing on the numerically corresponding day of each calendar month thereafter during the Lease Term, shall be calculated as follows, and is based on an assumed (1) US$ 9Y Swap Rate of ▇▇▇▇ (the *Assumed Fixed Swap Rate*).<br><br>*Base Fixed Rental*: with respect to each New Aircraft means US$▇▇▇▇<br><br>The actual Lease Rental shall be calculated according to the following formula:<br><br>▇▇▇▇<br><br>Where:<br><br>▇▇▇▇ |

2

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

ATTORNEYS' EYES ONLY



| | | |
|---|---|---|
| | | All funds due from Lessee shall be paid by interbank ACH transfers in immediately available US Dollars to a bank account advised by Lessor, free and clear of any and all taxes and deductions. |
| 5 | Engines EOL Adjustment | <u>12-year Term</u>: For each engine major module that has less than 100% life remaining with respect to engine module refurbishment at Redelivery Date, Lessee shall compensate Lessor for the time consumed since last engine module refurbishment or new, as applicable, multiplied by engine restoration maintenance payment rate, and as may be further adjusted based on utilization of the Engine. |
| | | Lessor and Lessee shall determine the cost of the Engine Performance Restoration at the time of Redelivery based on the average cost to perform such work, which shall be calculated using the cost of (i) three (3) of Lessee's past Engine Performance Restoration shop visits during the twelve (12) months prior to the Expiry Date, and (ii) three (3) Engine Performance Restoration shop visits performed by another MRO, to be mutually agreed by Lessee and Lessor, each acting reasonably. |
| | | If the parties cannot reach agreement under (ii) above, Lessor will select one MRO, Lessee will select one MRO and the third MRO will be mutually agreed by Lessor and Lessee. |
| | | The engine restoration maintenance payment rate shall be derived from the average of the cost of an Engine Performance Restoration as obtained in the preceding paragraphs. Lessor and Lessee will agree, each acting reasonably, on the exact mechanism for deriving the cost per flight hour for the lease agreement. |
| | | For the avoidance of doubt, the Engine Performance Restoration shop visits for the purpose of this calculation shall be the qualifying Engine Performance Restoration shop visits, as defined in the Lease, and shall not include entry-to-service issues related shop visits. |
| | | <u>8-year Term</u>: Per the methodology described in the existing agreements between Accipiter and Lessee set forth in the Lease attached to the Framework Agreement. |
| 6 | Expenses | Each of Accipiter and Frontier will bear its own respective fees, costs and expenses incurred in the negotiation and completion of the documentation contemplated by this Letter of Intent. |
| 7 | Lessor | Lessor shall be a "citizen of the United States" as defined in Section 40102(a)(15)(c) of Title 49 of the United States Code with the owner participant being Accipiter Holdings DAC (*Accipiter*), an affiliate of Accipiter including Vermillion Aviation Holdings Ireland Limited, or an entity managed by or wholly owned directly or indirectly by Accipiter or an affiliate of Accipiter or Vermillion Aviation Holdings Ireland Limited. A Lessor Guarantee shall be provided in accordance with the terms set out in Clause 4.5 (*Lessor Guarantee*) of the Framework Agreement. |
| 8 | Aircraft Redelivery Payments | As set out in Attachment A (*Aircraft Redelivery Payments*). |

3

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



| 9 | Redelivery Conditions | The Redelivery Conditions shall be as set out in Schedule 4 (*Redelivery Condition*) of the Lease including Annex 1 to Schedule 4 (*Aircraft Documents*). |
|---|---|---|
| 10 | AD Cost Sharing | Airworthiness Directive Threshold shall be as set out in Schedule 6 (*Basic Rent and Other Terms*) of the Lease. |

4. The Proposed Terms are based on the assumption that the other terms and conditions of the Framework Agreement shall remain substantially unchanged (except to the extent required to reflect the Proposed Terms and, subject to negotiation at documentation, the terms of the Request for Proposal dated June 13, 2019, taking into account the Lessee's standard form lease agreement. Changes to the Framework Agreement (and attached Lease) to be negotiated in good faith by the parties.

5. Following your acceptance of the terms and conditions set out in this Letter of Intent, Accipiter or its counsel will circulate a draft of the amended and restated Framework Agreement, which will set out the terms and conditions set out in this Letter of Intent in relation to the New Aircraft.

6. The Proposed Terms set out in this Letter of Intent do not constitute or imply an offer or commitment whatsoever on the part of Accipiter or the Lessor and is subject to, among other things, written and oral negotiation, each party's receipt of the relevant approvals (including board approval) and execution and delivery of final definitive documentation reflecting agreed upon terms and otherwise satisfactory in form and substance to Accipiter and Frontier.

7. This Letter of Intent and all information and material submitted by Accipiter to Frontier, and discussions and communications in connection with the Proposed Terms contained in this Letter of Intent and any clarification or feedback received, are confidential and are between Accipiter and Frontier, and will not be disclosed to third parties (other than to its professional advisers or affiliates or as required by applicable law or regulation) without the express written consent of the other party.

8. This Letter of Intent may be executed in any number of identical counterparts, each of which will be deemed to be an original, and all of which together will be deemed to be one and the same instrument when each party has signed and delivered one such counterpart to the other party. Delivery of an executed counterpart of this Letter of Intent by e-mail (PDF attachment) will be deemed effective as delivery of an originally executed counterpart.

9. This Letter of Intent and any non-contractual obligations arising out of or in connection with this Letter of Intent shall be governed by, and interpreted in accordance with, the law of the State of New York.

10. Should you have any questions or wish to discuss any aspect of this Letter of Intent in more detail, please contact:

    Jane O'Callaghan
    Chief Commercial Officer

4

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



Direct Tel: +353 86 8516851
E-mail: jane.ocallaghan@accipiter.aero

11. This Letter of Intent shall expire automatically if not executed by Frontier Airlines, Inc. and delivered to us by 17:00 Dublin time on 20 September 2019.

We are available at your convenience to discuss how best to progress this Letter of Intent and we look forward to receiving your response or any further feedback that you may have.

[signatures appear on following page]

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



Yours faithfully,

ACCIPITER HOLDINGS DAC

By: _____  By: _____
Name:                        Name:
Title:                       Title:

Acknowledged and agreed to by:

FRONTIER AIRLINES, INC.

By: _____
Name: Howard Diamond
Title: SVP. General Counsel & Secretary
Date: 9-15-19

6

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



## ATTACHMENT A

### Aircraft Redelivery Payments

At the end of the Lease Term, Lessee will be required to pay a maintenance adjustment in respect of the total accumulated utilisation of the New Aircraft and Engines since new or the last qualifying maintenance event, as applicable, to be calculated as follows:

On the last day of the Lease Term for each New Aircraft, the following calculations will be made for the Aircraft using the amounts set out below and the appropriate payment shall be made to Lessor:

| | | |
|---|---|---|
| Airframe 6 Year Check Amount | US$ ■ | Per month since the performance of the last 6 Year Check event or since new if no 6 Year Check event has been performed. |
| Airframe 12 Year Check Amount | US$ ■ | Per month since the performance of the last 12 Year Check event or since new if no 12 Year Check event has been performed. |
| 12 Year Term*: Engine Performance Restoration Amount | Determined per Paragraph 5 on page 3 above | Per Engine, per Flight Hour, per thrust rate operation since new or last Engine Performance Restoration (Non-RFPH Covered), as applicable. <br><br> *For clarity, also applies to all Non-RPFH Covered New Aircraft returns. |
| 8 Year Term: Engine Performance Restoration Amount (First Run, ■) | US$ ■ | Per Engine, per Flight Hour, per thrust rate operation since new if no Engine Performance Restoration shop visit has been performed, to be structured using the same criteria as the existing form Lease attached to the Framework Agreement. |
| 8 Year Term: Engine Performance Restoration Amount (Second Run ■) | ■ | Per Engine, per Flight Hour, per thrust rate operation since last Engine Performance Restoration shop visit using the same criteria as the existing form Lease attached to the Framework Agreement. |
| Engine LLP Amount | LLP cost per cycle | An amount equal to the number of cycles since new of each life limited part at redelivery multiplied by the individual cost per cycle of each LLP, which shall be equal to the then current manufacturer's list price of such life limited part, divided by the Engine Manufacturer's approved life limit of such life limited part. |

7

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**



| | | |
|---|---|---|
| Landing Gear Assy Amount | ■ | Per month since the performance of the last Landing Gear Assy (meaning the nose, LH main and RH main landing gear) overhaul event or since new if no landing gear assy overhaul event has been ever performed. |
| APU Maintenance Payment Amount | ■ | Multiplied by the total APU hours accumulated since the performance of the last APU Overhal event or since new if no APU Overhaul event has been performed. |

All of the above amounts are in January 2019 dollars and, except for the engine life limited parts, shall be subject to annual escalation of ■

"APU Overhaul" means a complete power section disassembly, inspections and repair in accordance with the APU manufacturer's then current workscope planning guide entailing a complete disassembly of the power section at a minimum.

"Engine Performance Restoration" means an Engine shop visit in which at a minimum any of the following modules are exposed, disassembled, and subsequently refurbished in accordance with the then-current OEM LEAP-1A Workscope Planning Guide: (i) high-pressure compressor, (ii) high-pressure turbine or (iii) combustion chamber.

"Engine Performance Restoration (Non-RPFH Covered)" means an Engine shop visit in which at a minimum the following modules are exposed, disassembled and subsequently refurbished in accordance with the then current OEM LEAP-1A Workscope Planning Guide definition for a performance restoration of (i) high-pressure compressor, (ii) high-pressure turbine, (iii) combustion chamber and (iv) low-pressure compressor.

Accipiter Holdings DAC, a designated activity company limited by shares and registered in Ireland with company no. 546613.
Registered Office: 28-29 Sir John Rogerson's Quay, Dublin 2, Ireland
Directors: Robert Finnegan, Paul Sheridan, Gerald Ma (Canadian), Pat O'Brien and Eirene Yeung (Chinese)

**ATTORNEYS' EYES ONLY**