**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FRONTIER AIRLINES, INC.,

           Plaintiff,

   v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION (TWO)
LIMITED, WELLS FARGO TRUST COMPANY,
N.A., solely in its capacity as OWNER TRUSTEE,
and UMB BANK, N.A., solely in its capacity as
OWNER TRUSTEE,

           Defendants.

20 Civ. 9713 (LLS)

**DEFENDANTS' POST-TRIAL BRIEF**

Dated: May 2, 2024

Jeff E. Butler
John P. Alexander
Giannina M. Crosby
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Defendants*

Defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter

Investments Aircraft 4 Limited and Vermillion Aviation (Two) Limited submit this Post-Trial

Brief to address two questions raised by the Court during summations on April 17, 2024.  Unless

otherwise defined, capitalized terms used in this brief are defined in Defendants' Trial Brief.

## Argument

### I.    FRONTIER WAS NOT ENTITLED TO NOTICE AND OPPORTUNITY TO CURE PRIOR TO TERMINATION.

The first question is whether AMCK had an obligation, as a matter of general law, to give

Frontier notice of default and opportunity to cure before terminating the Framework Agreement.

(*See* Trial Tr. 778:5-13.)  The succinct answer is no.  There is no general obligation under New

York law to give notice of default and opportunity to cure prior to a contract termination.

Unless the contract provides otherwise, there is no duty under New York law to give

notice and opportunity to cure a material payment default.  For example, commercial lease

agreements are governed by Article 2-A of New York's Uniform Commercial Code ("UCC").

Section 2-A-502, entitled "Notice After Default," expressly provides:

> Except as otherwise provided in this Article or the lease agreement, the lessor or
> lessee in default under the lease contract is not entitled to notice of default or
> notice of enforcement from the other party to the lease agreement.

This provision confirms that there is no general duty to give a notice of default before exercising

remedies available under a lease agreement unless, of course, the lease agreement provides for

such notice.[1]  Williston on Contracts explains:  "As a general principle, except as otherwise

provided in Article 2A or in the lease agreement, a lessor or lessee who is in default under the

---

[1] There is no other provision of Article 2-A that would apply to require notice of a payment
default in this case.  There are several other provisions of Article 2-A that require notice under
certain circumstances, but none of them apply to a payment default.  *See generally* David Frisch,
WHERE ARTICLE 2A REQUIRES NOTICE, 5 Anderson U.C.C. § 2A-502:4 (3d. ed.).

lease contract is not entitled to notice of default or of the other party's intention to enforce the

lease agreement. Article 2A makes explicit the principle recognized under Article 9 that a debtor

in default is not entitled to notice of that fact; after all, the debtor should know when it has not

lived up to the terms of the security agreement." 19 Williston on Contracts § 53:44 (4th ed.)

(2023).

Section 2-A-502 is consistent with New York contract law concerning termination for

material breach, which holds that no prior notice is required to terminate unless the contract so

provides. The leading case for this principle is *Awards.com LLC v. Kinko's Inc.*, 14 N.Y.3d 791

(2010). In that case, the plaintiff had a license to use space in Kinko's stores in exchange for a

monthly fee. When the plaintiff failed to make full payment, Kinko's abruptly terminated the

contract even though the plaintiff was "ready, willing and able to perform" and where Kinko's

"had repeatedly accepted late payments" in the past. *See Awards.com, LLC v. Kinko's, Inc.*, 42

A.D.3d 178, 187 (2007). The Court of Appeals found the termination to be proper, holding that

"[t]he failure of [plaintiff] to pay its monthly rent promptly was a material breach; the contract

contained no provision for a grace period, and no requirement that Kinko's give notice of a

breach and an opportunity to cure it; and Kinko's did not waive its right to terminate."

14 N.Y.3d at 793 (internal citations omitted). Applying the same principles, lower courts in New

York have repeatedly approved contract terminations based on material breach without notice

and opportunity to cure. *See Nader & Sons, LLC v. Hazak Assocs. LLC*, 149 A.D.3d 503, 505

(1st Dep't 2017) ("Under the plain language of the operating agreement, the notice and cure

provisions do not apply to the alleged default by defendant. Accordingly, defendant's argument

that there was no default because it never received notice and an opportunity to cure is

unavailing, and the IAS court correctly granted plaintiff summary judgment declaring that there

was a default."); *Dan's Hauling and Demo, Inc. v. GMMM Hickling, LLC*, 193 A.D.3d 1404,

1408 (4th Dep't 2021) (holding "defendants did not breach the agreement by failing to afford

plaintiff an opportunity to cure prior to defendants' termination of the agreement"); *Megrant*

*Corp. v. John P. Picone, Inc.*, 43 Misc. 3d 1213(A) (Sup. Ct. Nassau Cty. 2013) (same).

Here, there is no notice requirement in the Original Leases that would apply to a failure

to pay monthly rent.  It has been noted that Section 16.1(a) of the Original Leases includes a

five-day notice period (*see* Trial Tr. 779:5-7), but that notice period applies only to

subsection (ii) of the clause addressing "any other sum due" under the lease agreement.  (*See*

JTX 2, at 73.)  The defaults at issue in this case are failures to pay monthly rent[2] that fall under

subsection (i), which does not have any notice period.  (*Id.*)  Indeed, the inclusion of a five-day

notice period for "any other sum due" serves to underscore that no prior notice is required for a

default based on failure to pay monthly rent.  *See Rosendale v. Mr. Cooper Grp. Inc.*, No. 19

Civ. 9263, 2021 WL 4066821, at *18 (S.D.N.Y. Sept. 7, 2021) ("Given that the parties did

include express notification and cure provisions with respect to other scenarios, the Court is

especially reluctant to rewrite the [contract] and add substantive provisions that could have been

easily included in the first instance."); *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC*

*Ltd.*, 930 F. Supp. 2d 532, 540 (S.D.N.Y. 2013) (same).

Similarly, the Framework Agreement does not require any notice prior to exercising the

right of termination for a Framework Event of Default.  This is governed by Section 6.2.1 of the

Framework Agreement, which provides that AMCK may "by notice in writing" treat a

continuing Framework Event of Default as a repudiation and "shall be entitled to terminate" on

---

[2] The Original Leases define "Basic Rent" to be monthly rent due under the leases.  (*See* JTX 2, Section 6.1(a) & Schedule 6.)

that basis.  (JTX 24, at 27.)  The written Notice of Termination sent by AMCK on May 8, 2020

expressly exercised both of these rights.  (*See* JTX 146.)  The Framework Agreement does not

contain any requirement of prior notice or opportunity to cure with respect to a Framework Event

of Default.

In sum, there is no general duty to provide notice and opportunity to cure a default prior

to exercising a right of termination and no such duty arises under the agreements at issue in this

case.  Accordingly, AMCK had every right to terminate the Framework Agreement when it did

so on May 8, 2020.

## II.    FRONTIER SHOULD NOT BE AWARDED ANY POTENTIAL TAX LIABILITY.

The second question deals with Frontier's tax liability on a potential damages award.

(*See* Trial Tr. 814:12-21).  Frontier is asking for an additional amount to be awarded to offset

potential future tax liability on any damages award.  This unorthodox request should be rejected

as a matter of law.

Under general contract law, a plaintiff may not recover income tax liability as part of a

damages award for breach of contract.  *See* 50 A.L.R.4th 452 (1986) ("Those courts that have

considered the question of whether income tax considerations may be taken into account in

determining the amount of damages recoverable by a successful party in a breach of contract

action have held that the award may not be inflated by the amount of income taxes that the

successful party will be required to pay on the award."); 22 Am. Jur. 2d Damages § 91 ("Any

additional income tax which the plaintiff has to pay because he or she received damages for

breach of contract in a lump sum in a single tax year, rather than in several tax years as agreed

upon by the defendant, is not an item of damages for which the defendant must compensate the

plaintiff.").

Some of the reasoning behind this sensible approach can be found in *Paris v. Remington*

*Rand*, 101 F.2d 64 (2d Cir. 1939), an appellate decision overturning a damages award that

included potential tax liability.  The Second Circuit explained:

> To calculate such an item of damages [taxes on a lump sum judgment] permits of
> wide speculation.  If such damages are awarded, the amount of tax differential
> will depend on the method by which appellee has kept his books—cash or accrual
> basis.  Damages would vary in each instance.  Another consideration would be the
> taxpayer's financial position and other earnings of the year which would enter
> into the calculations so that it would be highly speculative to find the amount of
> the damages due to appellee's breach of contract.  Such variation of tax is not a
> consequential damage flowing from the breach of contract.

*Id.* at 68.  As articulated in this decision, the proscription against including income tax liability as

an element of damages in a breach of contract case follows from the general principle that

damages should not be awarded if they are too speculative.  *See Tractebel Energy Marketing,*

*Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110 (2d Cir. 2007).

The practical difficulties associated with adjusting a damages award to account for tax

liability are fully on display in this case.  Specifically, Frontier has not presented any reliable

evidence as to what taxes, if any, Frontier would have to pay on a potential damages award.

Frontier's damages expert, Dr. Kevin Neels, is admittedly not an expert on income tax.  (Trial

Tr. 389:13-390:5.)  Moreover, he concedes that Frontier's effective tax rate has varied wildly

from 2019 to 2023, and he does not know what Frontier's effective tax rate will be in 2024 or

any later year.  (*See id.* 408:18-21, 409:3-11, 444:22-445:12.)  Dr. Neels therefore has neither the

expertise nor a reliable factual basis to opine with any confidence on potential income taxes to be

paid by Frontier.

For all of these reasons, Frontier's potential future tax liability should not be taken into account as a component of damages.

Dated: May 2, 2024

Respectfully submitted,

_s/ Jeff E. Butler_

Jeff E. Butler
John P. Alexander
Giannina M. Crosby
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Defendants*