**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FRONTIER AIRLINES, INC.

Plaintiff,

v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK,
N.A., solely in its capacity as OWNER
TRUSTEE,

Defendants.

Case No.:  1:20-cv-09713-LLS

<u>**PLAINTIFF FRONTIER AIRLINES, INC.'S MEMORANDUM OF LAW**</u>
<u>**IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**</u>

022510.0155/9791297.3

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................... 1

        A.      Defendants Are Contractually Liable To Frontier For All Fees, Costs, And
                Expenses Frontier Incurred To Enforce Its Rights Under The Parties'
                Agreements. ...................................................................................................... 1

        B.      The Court Found That Defendants Breached The Agreements And Are
                Jointly Liable To Frontier. ................................................................................. 2

III.    ARGUMENT ................................................................................................................ 5

        A.      Frontier's Reasonable Attorney's Fees. .............................................................. 5

                1.      The Guaranties entitle Frontier to an award of attorney's fees.................. 5

                2.      The attorney's fees requested by Frontier are reasonable........................... 8

                        a.      The requested rates are reasonable and reflect the caliber of
                                lawyering, the difficulty of the matter, and the results
                                achieved. .................................................................................... 9

                        b.      The hours expended to litigate this matter were reasonable
                                and necessary to obtain a successful outcome for Frontier.......... 14

        B.      Frontier's Reasonable Costs And Expenses. ..................................................... 16

IV.     CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

Page

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 226 (2d Cir. 1987)..........................................................................................9, 11

*Acme Widget, L.P. v. Q Invs. Grp., Inc.*,
    2012 WL 13135193 (E.D.N.Y. Feb. 10, 2012), report and recommendation
    adopted, 2012 WL 715899 (E.D.N.Y. Mar. 5, 2012) ..............................................9

*Am. Cas. Co. of Reading, Pennsylvania v. Morgan-White Underwriters, Inc.*,
    2003 WL 23374768 (S.D.N.Y. Sept. 30, 2003)....................................................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany*
    *Cty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008)...................................................................................9

*Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*,
    2008 WL 4833025 (S.D.N.Y. Nov. 3, 2008)....................................................17, 18

*Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*,
    34 F.3d 1148 (2d Cir. 1994)...................................................................................9

*Danaher Corp. v. Travelers Indem. Co.*,
    2014 WL 4898754 (S.D.N.Y. Sept. 30, 2014)..........................................................9

*Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*,
    2020 WL 9762874 (S.D.N.Y. May 29, 2020) .......................................................12

*Himmel v. Country in N.Y., LLC*,
    2011 WL 31045 (S.D.N.Y. Jan. 4, 2011) ..............................................................16

*Hooper Assocs., Ltd. v. AGS Computs., Inc.*,
    74 N.Y.2d 487 (1989) ...........................................................................................5

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
    2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010) .......................................................9

*K2M Design, Inc. v. Schmidt*,
    2023 WL 10674525 (S.D.N.Y. Nov. 30, 2023), report and recommendation
    adopted, 2024 WL 1208910 (S.D.N.Y. Mar 21, 2024) .........................................10

*Kuzma v. I.R.S.*,
    821 F.2d 930 (2d Cir. 1987)..................................................................................16

*McGuire v. Russell Miller, Inc.*,
1 F.3d 1306 (2d Cir. 1993)..................................................................................5

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)............................................................................14

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008)...............................................................................5

*Proimmune Co., LLC v. Holista Colltech Ltd.*,
No. 20-CV-1247 (KMK), 2024 WL 54281 (S.D.N.Y. Jan. 4, 2024) .....................12

*Reisman v. Ne. Power & Gas LLC*,
2024 WL 1076894 (S.D.N.Y. Mar. 12, 2024) .......................................................12

*Rotella v. Bd. of Educ. of City of New York*,
2002 WL 59106 (E.D.N.Y. Jan. 17, 2002) ...........................................................10

*Simmons v. N.Y.C. Transit Auth.*,
575 F.3d 170 (2d Cir. 2009)...............................................................................9

*Summers Lab'ys, Inc. v. Shionogi Inc.*,
2020 WL 423400 (S.D.N.Y. Jan. 27, 2020) ..........................................................7

*Tessemae's LLC v. Atlantis Cap. LLC*,
2019 WL 2635956 (S.D.N.Y. June 27, 2019) ......................................................12

*TufAmerica Inc. v. Diamond*,
2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) ........................................................16

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
369 F.3d 34 (2d Cir. 2004).................................................................................5

*W6 Facility X, LLC v. W. 6 Care Ctr., Inc.*,
95 N.Y.S.3d 95 (2019)........................................................................................7

022510.0155/9791297.3

# I. **INTRODUCTION**

After a nearly two-week bench trial, the Court found that Plaintiff Frontier Airlines, Inc. (Frontier) is contractually entitled to the fees, costs, and expenses it expended in enforcing its rights under the contracts in dispute.  *See* Order (Dkt. 170); Judgment (Dkt. 171).  Specifically, the Court held that Defendants AMCK Aviation Holdings Ireland Limited (AMCK), Accipiter Investment 4 Limited (Accipiter), and Vermillion Aviation (Two) Limited (Vermillion) (collectively, Defendants) are "liable to Frontier for all losses, fees, costs, and expenses— including attorneys' fees—under the Original Leases and the Framework Agreement."  Order at 24; Judgment at 1.  Frontier now asks the Court to find that the fees and expenses detailed below and in the Declaration of David G. Hosenpud are reasonable and proper, and to enter an order and supplemental judgment directing Defendants to pay this amount.

# II. **BACKGROUND**

## A.     **Defendants Are Contractually Liable To Frontier For All Fees, Costs, And Expenses Frontier Incurred To Enforce Its Rights Under The Parties' Agreements.**

By the end of September 2019, AMCK, through subsidiaries and owner trustees, owned and leased 14 aircraft to Frontier pursuant to 14 individual lease agreements (Original Leases).  Order at 4–6. Wells Fargo and UMB Bank, N.A., as owner trustees, executed the Original Leases with Frontier.  *Id.*  For each of these Original Leases, either Accipiter or Accipiter Holdings DAC (AMCK's predecessor) provided Guaranties in favor of Frontier, guaranteeing "the due and punctual payment and performance of all of the obligations" under the Original Leases.  *Id.*; *see, e.g.*, Joint Exhibit (JX) 4 § 1;(Trial Tr. at 42:22–43:4 (explaining that all of the Original Leases and associated Trust Agreements and Guaranties contain similar terms).

Under these Guaranties, Accipiter, and Accipiter Holdings DAC "agree[d] to be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by [Frontier] in connection with the enforcement of this Guaranty." JX 4 § 2.2; (Trial Tr. at 42:22–43:4 (explaining that all of the Original Leases and associated Trust Agreements and Guaranties contain similar terms).

On March 16, 2020, Frontier and AMCK executed the Framework Agreement, which obligated AMCK to purchase six aircraft and lease them back to Frontier through Owner Trustee/Lessor UMB. Also on March 16, 2020, AMCK purchased the first of these six aircraft, MSN 10038. Order at 5. As with the 14 Original Leases, AMCK, by and through its affiliates, executed corresponding lease documents with Frontier for MSN 10038. *Id.* In particular, Vermillion executed a Trust Agreement with UMB, relating to the ownership of MSN 10038. *Id.* at 5–6. UMB, not in its individual capacity but solely as owner trustee, executed a corresponding Lease with Frontier. *Id.*; JX 29 (MSN 10038 Lease). Vermillion also provided a Guaranty in favor of Frontier. Order at 6; JX 26.The MSN 10038 Guaranty is materially the same as the Guaranties for the Original Leases, including that Vermillion is "liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by [Frontier] in connection with the enforcement of this Guaranty." JX 26 § 2.2.

Under the Framework Agreement and the resulting interconnected lease documents, AMCK paid Airbus $51 million for MSN 10038, and Frontier agreed to pay AMCK $269,525.94 in monthly rent. Order at 6. The five remaining aircraft due under the Framework Agreement would be purchased at the same price and leased at a similar monthly rent. *Id.*

**B.    The Court Found That Defendants Breached The Agreements And Are Jointly Liable To Frontier.**

Also in March 2020, and due to the effects of the COVID-19 pandemic, Frontier and

AMCK began negotiating a temporary deferral of Frontier's monthly rent payments under the Original Leases and the MSN 10038 Lease, as well as a corresponding request from AMCK that Frontier achieve delivery delays with Airbus (the airplane manufacturer) for the upcoming five Framework Agreement aircraft. Order at 6–7. The Court found that, to provide Frontier the time needed to negotiate with Airbus and thereafter reach a formal rent deferral agreement with AMCK, AMCK granted Frontier a waiver of timely rent payments—first for ten business days and later extending to a month-to-month basis. *Id.* at 8–9, 17–22. The Court determined this waiver was supported by consideration and that, accordingly, "[w]ithdrawal of that waiver required mutual assent or, at a minimum, notice and a reasonable opportunity to cure." *Id.* at 21.

On May 8, 2020, while the rent payment waiver was ongoing, and without either Frontier's mutual assent to withdraw the waiver or providing notice and an opportunity to cure any alleged outstanding payments, AMCK sent Frontier a Notice of Termination due to non-payment of rent in April 2020 related to the Original Leases. *Id.* at 10, 21–22. AMCK cited Frontier's non-payment of rent on the Original Leases as a breach of the MSN 10038 Lease, which AMCK deemed an event of default under the Framework Agreement, which AMCK cited as the basis for terminating its obligations to deliver the remaining five Framework Agreement aircraft. *Id.* On May 13, 2020—three business days and five calendar days later—Frontier paid all alleged outstanding rent. *Id.* at 10–11 (citing JX 14; JX 148; JX 150–51). AMCK nonetheless terminated the Framework Agreement and did not consummate the five remaining lease arrangements. *Id.* Because AMCK failed to obtain Frontier's mutual consent to withdraw the waiver, or at least provide notice and an opportunity to cure, and maintained the termination even after Frontier became current on all rent within a reasonable time period, the Court held that AMCK is "liable for breach of the Framework Agreement." *Id.* at 21–22.

In addition, the Court held that all Defendants were proper parties to the lawsuit. That is because the contracts at issue—including the Framework Agreement, as well as the Lease Agreements, Trust Agreements, Guaranties, and all other "Operative Documents" (as defined in the Framework Agreement) relating to the 15 aircraft under lease between Frontier and AMCK— are deeply intertwined and make numerous cross-references to each other. Order at 6 (citing JX 1–4; JX 7; JX 24, §§ 1.1, 2.1.1, 3.3.1; JX 25, §§ 1, 2, 8.01–.02, 9.01(b); JX 26 at 1, § 1; JX 29 at 1, 15). The Court held that these "related contracts should be read as one with the Framework Agreement." Order at 22. That is because these documents "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as one." *Id.* at 23 (quoting *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197 (1941)). More specifically, "[a]ll of the contracts at issue are interconnected and have numerous cross-references," and "it was through this very interrelation that AMCK held Frontier to be in default of the Framework Agreement, using Frontier's alleged outstanding rent payments on the Original Leases . . . to create a breach of the MSN 10038 Lease and a cross-default under the Framework Agreement." *Id.* Further, Defendants' "May 8 Termination Notice specifically relied on the interrelatedness of those contracts and the relevant parties, with numerous references to them." *Id.*

Based on these findings and the express language in the parties' interconnected contracts, the Court awarded Frontier its losses associated with finding replacement lessors to take over the lease arrangements for the five remaining aircraft scheduled under the Framework Agreement, as well as its "fees, costs, and expenses—including attorneys' fees—under the Original Leases and the Framework Agreement." Order at 24. Frontier's reasonable fees and expenses including attorney's fees in the total amount of $2,581,727.09. Hosenpud Decl. ¶ 2, Exs. 2, 3, 5-10, 12, and 13. This motion follows.

## III. <u>ARGUMENT</u>

**A.    Frontier's Reasonable Attorney's Fees.**

Parties may agree by contract to permit the recovery of attorney's fees, and "a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993); *see also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (same).  Where "a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *McGuire*, 1 F.3d at 1313.  Under New York law, such contractual provisions are presumptively valid and enforceable as long as it is "unmistakably clear from the language of the promise." *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492 (1989); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear.").

**1.    The Guaranties entitle Frontier to an award of attorney's fees.**  The Court has already held that, under the parties' contracts, Defendants are liable to Frontier for its attorney's fees.  This holding is consistent with the express language in the contracts, including the Guaranties linked to the Original Leases and the MSN 10038 Lease, in which Defendants "agree[d] to be liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by [Frontier] in connection with the enforcement of this Guaranty."[1]  All Defendants are Guarantors of at least some of the Original Leases and the MSN 10038 Lease.  And, as the Court already

---

[1] The Court's Order cited to provisions in the Original Leases and the Framework Agreement that provide for fees and costs arising from contract breaches.  Order at 24 (citing JX 2, 7, 24).  Those provisions speak in terms of Frontier indemnifying AMCK and its affiliates for Frontier's breaches.  The Guaranties—which "should be read as one" with the leases and the Framework Agreement, Order at 22—speak in terms of Frontier recovering its fees, costs, and expenses for AMCK's and its affiliates' breaches.  The Court's underlying holding is correct.

determined, the Original Leases, the MSN 10038 Lease, the related Trust Agreements, the related

Guaranties, and the Framework Agreement "should be read as one."

That finding accords with common sense and the plain language of the Guaranties because

they expressly obligate Defendants to ensure unconditional performance of the leases themselves:

> **Section 1.  Guaranty by Guarantor.**  (a) From and after the date of this Guaranty,
> Guarantor hereby irrevocably and unconditionally guarantees the due and punctual
> payment and performance of all of the obligations of Lessor under the Lease, in
> each case after any applicable notice requirements in accordance with the Lease
> (such obligations of Lessor being referred to herein as the "**Guaranteed
> Obligations**").  If Lessor fails to perform or comply with any such Guaranteed
> Obligation(s) in accordance with the Lease, then Guarantor hereby agrees to pay,
> perform or cause to be paid and/or performed, on demand, such Guaranteed
> Obligation(s) to the same extent as if it were the primary obligor. . . .

*See, e.g.*, JX 4 (MSN 8402 Guaranty, in which Accipiter Holdings DAC, the predecessor to

Defendant AMCK, is the Guarantor); JX 26 (MSN 10038 Guaranty, in which Defendant

Vermillion is the Guarantor); Trial Tr. at 42:22–43:4 (explaining that all of the Original Leases

and associated Trust Agreements and Guaranties contain similar terms).  In other words, any action

to enforce the Original Leases or the MSN 10038 Lease is also an action to enforce the Guarantors'

obligations on the Guaranties.

Further, each Guaranty expressly provides for all reasonable fees and expenses:

> **2.2  Expenses.**  Guarantor agrees to be liable for the payment of all reasonable fees
> and expenses, including attorney's fees, incurred by [Frontier] in connection with
> the enforcement of this Guaranty.

This lawsuit arises from Frontier's efforts to enforce the Lessor's performance of their

obligations under the Leases and, by express extension, the Guarantors' obligations under the

Guaranties. Because the Lessors failed to perform their Lease obligations—by improperly

declaring defaults under the various agreements and abandoning the remaining obligations under

the Framework Agreement—the Guarantors likewise breached their agreement to ensure

performance under the Guaranties.  As a result, all Defendants are liable for Frontier's reasonable

attorney's fees to enforce performance.  Indeed, Frontier expressly cited the Guaranties in its underlying Complaint, explaining that all Defendants had provided Guaranties on the Original Leases and the MSN 10038 Lease, which included a requirement to pay Frontier's "reasonable fees and expenses, including attorney's fees incurred by Frontier in connection with the enforcement of its rights." Compl. (Dkt. 1) ¶¶ 22–24, 96–97. Frontier likewise sought its "reasonably attorney's fees and costs" in the Complaint.  *Id.* at 24.

Courts regularly award attorney's fees against guarantors in these situations.  For example, in *W6 Facility X, LLC v. W. 6 Care Ctr., Inc.*, 95 N.Y.S.3d 95, 96 (2019), the plaintiff sued a tenant and its guarantor for failure to pay under rent under a commercial lease.  Beyond the terms of the commercial lease, "the guaranty provided for the recovery of attorney's fees in connection with an action to enforce the lease or guarantee." *Id.* at 97.  Accordingly, the court held that the plaintiff was entitled to its attorney's fees in connection with its action, and remitted the action to the lower court to determine the amount of fees.  Likewise, in *Summers Lab'ys, Inc. v. Shionogi Inc.*, 2020 WL 423400, at *1–2 (S.D.N.Y. Jan. 27, 2020), the petitioner originally filed arbitration against the respondent based on a breach of interrelated contracts, including an asset purchase agreement (APA) and a guaranty, which contained an attorney's fees and costs provision.  *Id.*  The arbitration panel found that the respondent breached the APA, and therefore owed attorney's fees and costs under the guaranty.  *Id.*  This Court confirmed the arbitration award, noting "the relationship between the APA and the Guaranty," and that "the Panel's reliance on the Guaranty when awarding attorney's fees was well within its authority." *Id.* at *4–7.

The Court already unequivocally held that the contracts are interrelated and enforceable, that Defendants breached those contracts, and that Defendants are liable to Frontier for its attorney's fees incurred in connection with prosecuting Defendants' breaches.

2.      **The attorney's fees requested by Frontier are reasonable.**  Frontier's attorney's fees are reasonable and therefore should be awarded in full.  This was a matter of extreme sensitivity and importance to Frontier, involving significant damages, and complex contractual relationships that implicated numerous entities—including non-party Airbus with whom Frontier's relationship is paramount, and Defendants' Hong Kong-based shareholders.  Further, AMCK was Frontier's largest lessor-partner at the time of the breach, contracting with Frontier on 15 lease arrangements.  Beyond Defendants abandoning their obligations to take delivery of the five remaining Framework Agreement aircraft, a finding that Defendants lawfully terminated the Framework Agreement based on non-payment of the Original Leases may have allowed Defendants to take even more extreme remedies, such as grounding and repossessing the 15 aircraft.  In sum, Defendants caused significant damages to Frontier, and were uniquely positioned to cause even more drastic harm.

The high stakes and complexity of this litigation required Frontier to retain highly experienced, sophisticated, and capable litigation counsel.  Frontier seeks to recover $2,033,824.72 in attorney's fees charged by its counsel during the nearly four-year duration of this lawsuit, June 9, 2020 to May 10, 2024.  This consists of $1,997,575.10 in fees for 3,949.1 hours of worked by attorneys and litigation support staff from Lane Powell PC (Lane Powell).  Hosenpud Decl. ¶ 5; Ex. 3.  In addition, this includes $36,249.50 in fees for 58.6 hours of work by attorneys and litigation support staff from Binder & Schwartz LLP (Binder & Schwartz).  Hosenpud Decl. ¶ 5, Exs. 5-6.  The amount attorney's fees requested here reflects the amount actually incurred by Frontier.  *Id.*  Further, as discussed below, the rates and time charged are reasonable and should be fully awarded.

a.    **The requested rates are reasonable and reflect the caliber of lawyering,**

**the difficulty of the matter, and the results achieved.**    "The presumptively reasonable fee boils

down to what a reasonable, paying client would be willing to pay, given that such a party wishes

to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*,

575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of*

*Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly

rate is the rate a paying client would be willing to pay."); *Danaher Corp. v. Travelers Indem. Co*.,

2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) ("[T]he amount actually paid to counsel by

paying clients is compelling evidence of a reasonable market rate.").   Given that the amount of

attorney's fees requested here reflects the payment agreed to by Frontier, *see* Hosenpud Decl. ¶¶ 4-

5, and 7, Exs. 2-3, 5-6, Frontier's counsel's rates are presumptively reasonable.

Further, to determine the reasonableness of attorney's fees in a breach of contract claim,

courts may examine numerous factors, including "the difficulty of the questions involved; the skill

required to handle the problem; the time and labor required; the lawyer's experience, ability and

reputation; the customary fee charged . . . for similar services; and the amount involved." *HSH*

*Nordbank AG N.Y. Branch v. Swerdlow*, 2010 WL 1141145, at *6 (S.D.N.Y. Mar. 24, 2010)

(applying New York law).  The relevant community for determining the reasonableness of rates is

the "district in which the reviewing court sits," *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d

226, 232 (2d Cir. 1987), among lawyers of "reasonably comparable skill, experience, and

reputation," *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir.

1994).  The "relevant community" remains the same even when the attorneys are based outside

the community and appear *pro hac vice.  See, e.g.*, *Acme Widget, L.P. v. Q Invs. Grp., Inc.*, 2012

WL 13135193, at *8 (E.D.N.Y. Feb. 10, 2012), report and recommendation adopted, 2012 WL

715899 (E.D.N.Y. Mar. 5, 2012) (analyzing Texas-based attorney's rates "in light of the fees generally considered reasonable in the Eastern District of New York for this type of work"); *Rotella v. Bd. of Educ. of City of New York*, 2002 WL 59106, at *2 n.2 (E.D.N.Y. Jan. 17, 2002) (awarding fees at prevailing Eastern District of New York rate to Florida attorney admitted *pro hac vice*); *see also Am. Cas. Co. of Reading, Pennsylvania v. Morgan-White Underwriters, Inc.*, 2003 WL 23374768, at *10 (S.D.N.Y. Sept. 30, 2003) (citing *Rotella* for the proposition that attorneys admitted *pro hac vice* are entitled to the market rates of "the district in which the case was brought."); *K2M Design, Inc. v. Schmidt*, 2023 WL 10674525, at *11 (S.D.N.Y. Nov. 30, 2023), report and recommendation adopted, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024) ("In its evaluation of whether the timekeepers' rates are reasonable, the Court need not undertake a bifurcated geographical analysis because '[i]n the Southern District of New York, the prevailing rates are those of Manhattan attorneys.'" (quoting *S.W. ex rel. N.W. v. Bd. of Educ.*, 257 F. Supp. 2d 600, 604 (S.D.N.Y. 2003)).  All of these factors weigh in favor of finding that Frontier's attorney's fees are reasonable.

First, this case presented difficulties that required both considerable time and skill on the part of Frontier's counsel.  Frontier bore the burden of proving that Defendants provided Frontier a waiver to timely rent payments while the parties negotiated complex further arrangements involving themselves and Airbus.  Moreover, the breach of contract claim relied on a series of complex, interrelated, and interconnected contracts.  And the operative conversations surrounding the events in question were being had between multiple individuals at multiple entities on multiple continents.  Proving Frontier's case required extensive research into the contract principles surrounding such issues as waiver, anticipatory repudiation, reading multiple contracts as a single transaction, and the admissibility of certain evidence to support the eventual holding that AMCK

provided Frontier a month-to-month waiver. In the nearly four years of this litigation, Frontier's counsel had to expend significant resources developing the factual record and analyzing documents to assemble the Complaint, take depositions of numerous high-ranking individuals who lived overseas in Ireland and Hong Kong including prevailing against a motion for a protective order to prevent depositions of certain "apex" shareholders, defend depositions of high-ranking individuals with Frontier, answer significant and far-reaching discovery requests, work through expert discovery related to aircraft financing and proper discount rates for financial instruments that cover more than a decade, defeat two dispositive motions, and prepare for and participate in a trial covering nearly two weeks to recover nearly $50 million in underlying damages.

Second, the rates charged by Lane Powell and Binder & Schwartz, and paid by Frontier, accord with prevailing market rates in the Southern District of New York for attorneys of comparable skill and experience. *See Agent Orange*, 818 F.2d at 232. For example, excerpts from a 2023 survey of the prevailing market rates for comparable legal services in *Real Rate Report*, published by Wolters Kluwer, shows similar rates among attorneys in New York City. *See* Hosenpud Decl. ¶ 14; Ex. 14 at 4 (average rates of $857 for all litigation partners and $595 for all litigation associates; third quartile rate of $1,205 for all litigation partners and $783 for all litigation associates); *id.* at 5 (average rate of $771 for all associates with seven or more years of practice; third quartile rate of $1,035); *id.* at 6 (average rate of $1,132 for all partners with 21 or more years of practice; third quartile rate of $1,611); *id.* at 7 (average rate of $1,179 for commercial litigation partners and $812 for commercial litigation associates; third quartile rate of $1,688 for commercial litigation partners and $1,086 for commercial litigation associates). The vast majority of the work in this case was performed by attorneys at Lane Powell, with partner rates averaging around $600 and associate rates averaging around $475. Hosenpud Decl. ¶ 5; Ex. 3. A limited amount of work

was performed by attorneys at Binder & Schwartz, with partner rates averaging around $950 and associate rates averaging around $625.  Hosenpud Decl. ¶¶ 5-7; Exs. 5-6.  The rates claimed in Frontier's fee application are within the range of reasonableness established for this market.  *Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) (collecting cases and finding that, "in straight forward breach of contract actions," the Southern District of New York has "found partner rates in the range of $375 to $650 to be reasonable"); *Reisman v. Ne. Power & Gas LLC*, 2024 WL 1076894, at *9 (S.D.N.Y. Mar. 12, 2024) (collecting cases and approving rates of $695 for partners and $475 for senior associates at a law firm based in Georgia for a "relatively non-complex matter[]"); *Proimmune Co., LLC v. Holista Colltech Ltd.*, No. 20-CV-1247 (KMK), 2024 WL 54281, at *3 (S.D.N.Y. Jan. 4, 2024) (collecting cases and approving rates of $895 and $395, finding them "well within the reasonable range for commercial litigation cases generally"); *Tessemae's LLC v. Atlantis Cap. LLC*, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases and finding that "Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable.").  In assessing rates, courts should also consider that "cases examining prevailing community rates are backward-looking. So courts may increase[] the rates awarded in the same case over time as hourly rates continue to increase." *Proimmune*, 2024 WL 54281, at *3 (internal quotations omitted). !

Third, Lane Powell and Binder & Schwartz were well-qualified to represent Frontier in this litigation.  Lane Powell is a widely respected law firm based in the Pacific Northwest, with a national and international presence representing numerous Fortune 500 companies.  Among other accolades, Lane Powell is consistently recognized as one of the nation's "Best Law Firms®" by U.S. News – Best Lawyers®, nationally ranked in 19 different practice areas including commercial

litigation.  In particular, Mr. Hosenpud, a litigation partner at Lane Powell, is a member of the

firm's Commercial Litigation group, and has practiced as an attorney for over 40 years, with

extensive experience litigating disputes arising from complex, significant commercial matters,

including at trial. Hosenpud Decl. ¶ 3; Ex. 1.  Over the course of his career, Mr. Hosenpud has

been ranked as: a Leading Lawyer for Business by Chambers USA; a Best Lawyer in America for

Commercial Litigation; an Oregon Super Lawyer by Thomson Reuters; a Portland Lawyer of the

Year; and an AV Preeminent in Martindale-Hubbell Peer Review Rankings.  *Id.*  Mr. Schaer, who

was a senior associate in 2022 when he began working on this matter but became a litigation

partner in 2023, is also a member of the firm's Commercial Litigation group, has practiced as an

attorney for nearly nine years, with significant experience litigating complex commercial disputes

after completing two federal district court clerkships.  Hosenpud Decl. ¶ 3; Ex. 1.  Over the course

of his career, Mr. Schaer has been ranked as a Rising Star Best Lawyers for Commercial Litigation

and as a Washington Rising Star by Thomson Reuters. Hosenpud Decl. *Id.*  The resumes of several

Lane Powell attorneys who worked on this matter are provided in the Hosenpud Declaration.  The

assistance provided by litigation support staff is reflected in Lane Powell's invoices.  Hosenpud

Decl.; Ex. 2.  *Id.*

Binder & Schwartz, who served as local counsel in this matter, is a premier litigation

boutique based in New York City, with a number of its attorneys previously serving as Assistant

United States Attorneys in the Southern District of New York.  In particular, Neil Binder has 28

years of experience as an attorney.  He is a founding partner of Binder & Schwartz, has extensive

trial and appellate experience in an array of commercial litigation matters, and served as an

Assistant United States Attorney in the Southern District of New York for five years.  Hosenpud

Decl. ¶ 6; Ex. 4.  Eric Fisher is also a partner at Binder & Schwartz, similarly has 28 years of

experience as an attorney, has been lead counsel in numerous jury and bench trials in the Southern District of New York, and also served as an Assistant United States Attorney in the Southern District of New York for four years.  Hosenpud Decl. ¶ 6; Ex. 4.  Finally, Tessa Harvey is counsel at Binder & Schwartz, has 11 years of experience as an attorney litigating a variety of complex commercial contract disputes, and has been selected as a New York Rising Star Super Lawyer. Hosenpud Decl. ¶ 6; Ex. 4.  The invoices of Binder & Schwartz reflect the additional support staff who worked on this matter.  Hosenpud Decl. ¶ 7, Exs. 5-6.

> **b.    The hours expended to litigate this matter were reasonable and necessary to obtain a successful outcome for Frontier.**  Litigating this lawsuit required a substantial amount of attorney time, which reflects the complexity of the factual background, the multiple legal issues, the numerous dispositive motions and discovery issues, the four-year duration of this lawsuit that culminated in a nearly two-week bench trial, and the importance of the outcome of this case to Frontier.

Frontier's attorney's contemporaneous monthly time records, describing the work performed on this matter by Lane Powell and Binder & Schwartz attorneys and litigation support staff, identify 4007.7 hours of work by Frontier's attorneys and litigation support staff in connection with this litigation and, for each entry, specify "the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); Hosenpud Decl. ¶¶ 5, 7.  In these records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered.  Hosenpud Decl. ¶¶ 5, 7.

The hours for which Frontier seeks recovery were reasonable given the scope of this litigation and were necessary to obtain a successful outcome.  Frontier's requested fee award

reflects the tasks that were necessary to prevail in this lawsuit. Among other things, Frontier seeks fees incurred over the nearly four years of this litigation for: (a) conducting initial factual diligence, developing the factual record, conducting substantial legal research, strategizing with Frontier, and bringing a complaint; (b) attempting to negotiate on a number of occasions with Defendants to resolve the case; (c) successfully opposing Defendants' motion to dismiss; (d) engaging in substantial discovery, including propounding and responding to requests for production, interrogatories, and requests for admission; (e) reviewing thousands of Frontier documents for responsiveness, relevance, and privilege, and ultimately producing nearly 4,000 documents (totaling 12,560 pages) to Defendants; (f) reviewing nearly 10,000 documents (totaling 47,055 pages) produced by Defendants to further develop the factual background and apply it to the legal theories at issue; (g) taking and defending a total of 13 depositions; (h) successfully opposing Defendants' motion for a protective order to prevent Frontier from deposing two principals from Defendants' shareholder; (i) defeating in part Defendants' motion for summary judgment that sought to dismiss the case in its entirety, in which Frontier's memorandum of law totaled 42 pages, its response to Defendants' statement of material facts totaled 39 pages, and it relied upon 88 different exhibits; (j) preparing pretrial filings, which included over 200 potential exhibits; (k) working with its experts to determine the appropriate damages arising from complex transactions with payments spanning more than a decade; (l) preparing for and attending numerous conferences with the Court; (m) preparing for and litigating a nearly two-week bench trial that involved seven live witnesses and designating deposition transcripts and videos for six additional witnesses; and (n) preparing the motion for attorney's fees, costs, and expenses and the accompanying research. Hosenpud Decl. ¶ 8. The plain language of the Guaranty—"Guarantor agrees to be liable for the payment of all reasonable fees and expenses, including attorney's fees,

incurred by [Frontier] in connection with the enforcement of this Guaranty"—encompasses all of the work described above and outlined in detail in Frontier's counsels' contemporaneous monthly time records.

Further, and in order to make Frontier whole for its enforcement of the operative contracts, including the Guaranties, counsel prepared this fee application consisting of a motion for attorney's fees and costs, memorandum of law in support of the motion, factual declaration, and exhibits. Frontier is entitled to attorney's fees for the time reasonably spent preparing this fee application. *See, e.g.*, *Himmel v. Country in N.Y., LLC*, 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011) ("In general, a party that has been awarded attorneys' fees is entitled to recover the reasonable cost of making a fee application.") (citing *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("a reasonable fee should be awarded for time reasonably spent in preparing an application for . . . fees."))

Given all of this work and the time spent litigating this matter, the fees incurred were reasonable under the circumstances and are supported by detailed time records.

**B.    Frontier's Reasonable Costs And Expenses.**

In addition to attorney's fees, the Guaranties provide that Defendants (all Guarantors) are "liable for the payment of all reasonable . . . expenses . . . incurred by [Frontier] in connection with the enforcement of this Guaranty." For the same reasons articulated above, this provision is valid and enforceable as to Defendants, and courts routinely grant such requests. The Second Circuit has consistently held that "attorney's fee awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients,'" such as "mailing, postage, printing, legal research, and deposition-related expenses." *TufAmerica Inc. v. Diamond*, 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)); *see also Kuzma v. I.R.S.*, 821 F.2d 930, 933–34 (2d Cir. 1987) (including

16

travel as a compensable cost).  Further, in the specific setting of aircraft transaction contracts, this Court has determined that contracts saying a prevailing party can recover its "reasonable attorneys' fees and other costs incurred" allows for a recovery all "reasonable out-of-pocket expenses," including those spent on expert witnesses.  *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 2008 WL 4833025, at *8–9 (S.D.N.Y. Nov. 3, 2008).

Frontier seeks recovery of costs and expenses of $240,300.49 relating to the work of its attorneys and litigation support staff on this matter, which were reasonable and necessary to obtain a successful outcome.  These costs include, among other things, travel costs for court hearings and trial, costs associated with depositions, and costs for trial transcripts and are calculated through June 24, 2024 Hosenpud Decl. ¶ 9; Exs. 7-10.  These costs are reasonable because they are not associated with ordinary office overhead, but instead relate to identifiable "out-of-pocket expenses incurred by attorneys and *ordinarily charged to their clients*."  *Austrian Airlines*, 2008 WL 4833025, at *9.

Frontier likewise seeks recovery of $307,602.41 relating to the work of its expert witnesses. This amount reflects work completed that relates to analyzing the financial losses and implications of a complex set of interrelated aircraft transactional contracts that include payments spanning over a decade, drafting an expert report, drafting a supplemental expert report, preparing for a deposition, analyzing Defendants' expert report and deposition testimony, preparing a pretrial declaration that updated the expert analysis, further updating the analysis for trial to bring the amounts current given the passage of time, and preparing for and testifying as a witness at trial. Hosenpud Decl. ¶ 13; Ex. 11.  This work was performed primarily by Dr. Kevin Neels, who has more than 40 years of experience as a consultant and expert witness in the aviation, rail, trucking, courier, postal, and automotive industries.  *Id*.  Dr. Neels is currently self-employed, but was

previously the Principal and Transportation Practice Leader at The Brattle Group.  *Id.*  He charged $600 per hour for his expert services.  In addition, Dr. Nicholas Powers is a Principal at The Brattle Group and assisted Dr. Neels in all of the items discussed above.  Dr. Powers specializes in conducting econometric and economic analyses and performing regression-based costing models. Dr. Powers charged $580 per hour for his expert services. Hosenpud Decl. ¶¶ 10-12, Exs. 11-13. The resumes of the other  individuals who assisted in the expert analysis provided by Dr. Neels and The Brattle Group are provided in the Hosenpud Declaration.  Hosenpud Decl. ¶ 10; Ex. 11. Frontier's expert fees were incurred during nearly two years of work on this case.  *Id.*  These amounts are reasonable, especially in a litigation in which nearly $50 million was in dispute.  *See, e.g.*, *Austrian Airlines*, 2008 WL 4833025, at *1, 9 (approving $568,148 in fees paid to consultant and expert witnesses).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Frontier respectfully requests that this Court grant its motion, finding that Frontier's attorney's fees, costs, and expenses totaling $2,581,727.09 reasonable and proper, and enter an order and supplemental judgment directing Defendants to pay this amount.

022510.0155/9791297.3

DATED:  July 1, 2024

**LANE POWELL PC**

By: s/ David G. Hosenpud
    David G. Hosenpud (*pro hac vice*)
    601 SW Second Avenue, Suite 2100
    Portland, Oregon  97204-3158
    Telephone No.:  503.778.2100
    Facsimile No.:  503.778.2200
    E-mail:  hosenpudd@lanepowell.com

    Aaron Schaer, (*pro hac vice*)
    1420 Fifth Avenue, Suite 4200
    P.O. Box 91302
    Seattle, WA  98111-9402
    Telephone:  206.223.7103
    Facsimile:  206.223.7107
    E-mail:  schaera@lanepowell.com

    -and-

**BINDER & SCHWARTZ LLP**
Neil S. Binder
675 Third Avenue, 26th Floor
New York, New York  10017
Telephone No.:  212.510.7008
Facsimile No.:  212.510.7299
E-mail:  nbinder@binderschwartz.com

*Attorneys for Plaintiff, Frontier Airlines, Inc.*

022510.0155/9791297.3