UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>　　　　　　　Defendants. | 20 Civ. 9713 (LLS) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments Aircraft 4 Limited ("Accipiter") and Vermillion Aviation (Two) Limited ("Vermillion") submit this Memorandum of Law in support of Defendants' Motion for Judgment as a Matter of Law pursuant to Rule 52(b) of the Federal Rules of Civil Procedure.

### Introduction

On summary judgment, the Court ruled as a matter of law that the writing requirement contained in the Lease Agreements and the Framework Agreement is unambiguous and does not apply to an express waiver. *See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 681 F. Supp. 3d 81, 96 (S.D.N.Y. 2023) ("Giving life to the plain meaning of the unambiguous text, the Court finds that the written requirement is limited to variations."). This legal conclusion was reiterated in the Opinion & Order entered following trial. (*See* Dkt. No. 175, Amended Opinion & Order at 13.)

Since this legal question was determined on summary judgment, Defendants did not attempt to reargue this point at trial.  However, based on a recent Second Circuit decision, it appears to be necessary to raise the issue again on a Rule 52 motion to preserve it for appeal. *See Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 252 (2021) ("Where a party could have moved pursuant to Rule 50 (or Rule 52 in a bench trial), this court will not hear an appeal of a prior denied motion for summary judgment after a full trial on the merits.").  Accordingly, Defendants now move under Rule 52(b) for reconsideration of the summary judgment ruling.

**Argument**

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, following a bench trial, the Court may "amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b).  On a Rule 52 motion, the Court may, among other things, correct "manifest errors of law." *United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993).

The Lease Agreements and the Framework Agreement contain identical language concerning waiver and variation.  Subsection 20.4(a) of the Lease Agreements provides in relevant part:

> The rights of both parties against the other or in relation to the Aircraft (whether arising under this Agreement or the general law) shall not be capable of being waived or varied otherwise than by an express waiver or variation in writing; and in particular any failure to exercise or any delay in exercising any such rights shall not operate as a waiver or variation of that or any other such right; any defective or partial exercise of any of such rights shall not preclude any other or further exercise of that or any other such right; and no act or course of conduct or negotiation on the part of such party or on its behalf shall in any way preclude it from exercising any such right or constitute a suspension or any variation of any such right.

(JX 2; *see also* JX 24, § 8.4.1.)  On summary judgment, the Court accepted Frontier's argument that the terms "waiver" and "variation" have distinct meanings, and that the modifier "in

- 2 -

writing" applies only to a variation and not to a waiver. 681 F. Supp. 3d at 96.

The phrase in question employs two modifiers—"express" and "in writing"—which serve different purposes based on their plain meanings. The modifier "express" means "not implied" and also cannotes a degree of clarity and specificity. For example, common dictionary definitions of "express" include "directly, firmly and explicitly stated" as well as "exact, precise." *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). The modifier "in writing" means supported by written text and not oral or implied by conduct.

The interpretation adopted by the Court is that the modifier "express" applies only to "waiver" and the modifier "in writing" applies only to variation. This interpretation embraces the possibility of an *implied* variation so long as the variation is supported by written text. This is inconsistent with subsequent language in the same clause that plainly disfavors variation implied by "act or course of conduct or negotiation." Moreover, it is hard to imagine the parties in this high stakes, commercial context intended to permit variations implied by ambiguous writings. Thus, the interpretation that the modifier "express" applies only to waiver and "in writing" applies only to variation is unreasonable.

In addition, the term "variation" is not defined in the Lease Agreements or the Framework Agreement, and it does not have a well-defined meaning under New York law. Because the meaning of variation is not clear, the Court should not have concluded as a matter of law that waiver and variation have clear and distinct meanings in the Lease Agreements. Given the ambiguity of the term "variation," the Court should have concluded that the parties intended the words "waiver or variation" to be read together to refer to any modification of a contract right. In this way, yet again, the modifiers "express" and "in writing" would apply to both a waiver and a variation. At a minimum, the Court should have found this text to be ambiguous,

which would have been clarified at trial by evidence of the custom in this industry to document all material changes in writing.  (*See, e.g.*, Trial Tr. 591:23-592:2.)

Finally, the terms waiver and variation are not mutually exclusive.  Assuming, for purposes of argument, that variation refers to a *bilateral* agreement, as opposed to a unilateral waiver, there is still a large area of overlap between the two terms.  Certainly, a bilateral agreement could include the waiver of a right by one party.  Indeed, a bilateral agreement could consist *solely* of a waiver of a right by one party.  Such an agreement would qualify as *both* a variation and a waiver and, in that case, the "in writing" requirement would apply.

The possibility of an agreement that is both a variation and a waiver has direct relevance in this case.  After the April 7 telephone call, James Dempsey texted his colleagues:  "Just spoke to Paul Sheridan.  He has *agreed* to do the deferral on a month to month basis."  (JX 73, emphasis added.)  The Court accepted Mr. Dempsey's account of the telephone call but appears to have concluded that the agreement on deferral was a waiver and *not* a variation.  The Court should have concluded that the agreement on the April 7 call was *both* a waiver and a variation, and therefore subject to the "in writing" requirement under the plain language of the Lease Agreements.

**Conclusion**

For the reasons set forth herein, this Motion for Judgment as a Matter of Law should be granted, and the Amended Opinion & Order dated July 1, 2024 and the Amended Judgment dated July 2, 2024 should be amended to find that AMCK did not waive the right to timely payment under the Lease Agreements on the April 7, 2024 telephone call and to dismiss Frontier's breach of contract claim.

Dated: July 12, 2024

                                                Respectfully submitted,

                                                   s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Giannina Crosby
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

*Attorneys for Defendants*