**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRONTIER AIRLINES, INC. | Case No.: 1:20-cv-09713-LLS |
| Plaintiff, | |
| v. | |
| AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE, | |
| Defendants. | |

**PLAINTIFF FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**

## I. INTRODUCTION

The Court has already held that AMCK breached the Framework Agreement, that "Accipiter and Vermillion's related contracts should be read as one with the Framework Agreement," and that all Defendants are liable to Frontier for its attorney's fees, costs, and expenses related to Defendants' breach. In Opposition to Frontier's Motion for Fees and Costs, Defendants do not dispute that Frontier's fees and costs are reasonable—they concede the point. Rather, Defendants use their Opposition to improperly relitigate the Court's underlying finding that Defendants owe these expenses. The Opposition should be disregarded for that reason alone. Further, it is immaterial that the fees, costs, and expenses are provided in the Guaranties instead of the Lease Agreements or Framework Agreement. That is because the Guaranties guarantee the performance of those breached contracts such that an action to enforce the performance of the Lease Agreements and Framework Agreement *is* an action to enforce the Guaranties. Accounting for the additional fees and costs incurred since the Motion, Frontier's reasonable fees, costs, and expenses now equal $2,591,829.44.

## II. DISCUSSION

**A.    The Guaranties Provide for Fees, Costs, and Expenses in This Case.**

Defendants' main argument is that Guaranties only guarantee the performance of themselves, not the interrelated Lease Agreements or Framework Agreement, and that somehow this means the Guaranties' fees and cost provision is inapplicable. That premise is wrong for numerous reasons.

First, it contradicts the express language in the Guaranties. Under the Guaranties, the Guarantor "irrevocably and unconditionally guarantees the due and punctual payment and performance *of all of the obligations of Lessor under the Lease*." *See, e.g.*, JX 4 § 1 (emphasis added); JX 26 § 1 (emphasis added). If the Lessor (here, UMB Bank or Wells Fargo) fails to

2

perform its Lease obligations, then the Guarantor "agrees to pay, perform or cause to be paid and/or performed, on demand, such Guaranteed Obligation(s) to the same extent as if it were the primary obligor." *Id.* The Guarantors are "liable for the payment of all reasonable fees and expenses, including attorney's fees, incurred by [Frontier] in connection with the enforcement of this Guaranty." JX 4 § 2.2; JX 26 § 2.2. In other words, the Guaranties do not guarantee only themselves; they guarantee the performance of the interrelated leasing contracts. And that is precisely what this lawsuit concerns: Frontier's efforts to enforce the Lessors' performance of their obligations under the Leases and, by express extension, the Guarantors' obligations under the Guaranties. Because the Lessors failed to perform their Lease obligations—by improperly declaring defaults under the Leases to abandon the remaining obligations under the Framework Agreement—the Guarantors likewise breached their agreement to ensure performance as provided in the Guaranties. Put another way, an action to enforce the Lessor's performance and obligations *is* an action to enforce the Guaranties for which attorney's fees, costs, and expenses are provided.

Notably, Defendants do not mention, let alone distinguish, the cases Frontier cited that show that New York courts regularly award attorney's fees against guarantors in similar contractual schemes. *See generally* Opp. (Dkt. 184); *but see* Mot. (Dkt. 178) at 7 (discussing *W6 Facility X, LLC v. W. 6 Care Ctr., Inc.*, 95 N.Y.S.3d 95, 97 (2019) (holding that the guarantor was responsible for paying attorney's fees in part because "the guaranty provided for the recovery of attorney's fees in connection with an action to enforce the lease or guarantee"), and *Summers Lab'ys, Inc. v. Shionogi Inc.*, No. 19 Civ. 2754 (AT), 2020 WL 423400, at *5–6 (S.D.N.Y. Jan. 27, 2020) (holding that the guarantor was responsible for paying attorney's fees and costs provided by the guaranty in connection with a breach of a related asset purchase agreement)). Also notable, Defendants do not cite a single case that supports their interpretation.

3

Second, Defendants' argument disregards (or seeks to overturn) the Court's holding that "Accipiter and Vermillion's related contracts should be read as one with the Framework Agreement." Order (Dkt. 170) at 22–24. These contracts include the Original Leases, the MSN 10038 Lease, the Trust Agreements, the Guaranties, and the Framework Agreement. *Id.* As the Court correctly explained:

> In fact, it was through this very interrelation that AMCK held Frontier to be in default of the Framework Agreement, using Frontier's alleged outstanding rent payments on the Original Leases (to which Accipiter Holdings DAC, Accipiter's parent company, was a party) to create a breach of the MSN 10038 Lease and a cross default under the Framework Agreement. JX-1-4; Tr. 32:12-43:4. The May 8 Termination Notice specifically relied on the interrelatedness of those contracts and the relevant parties, with numerous references to them. JX-146, ¶¶ 2, 4, 7. It would make little sense to allow Accipiter and Vermillion to avoid the very mechanism of interconnection through which AMCK claimed Frontier to be in default.

Order at 23. Even though it made "little sense" for Defendants to claim these documents were not interconnected the first time, they try again in their Opposition. This is despite the fact that, under the <u>Trust Agreements</u>, Defendants could only declare a "default or event of default" under the <u>Leases</u>—the performance of which is guaranteed by the <u>Guaranties</u>—and thereby declare an event of default under the <u>Framework Agreement</u> if the <u>Trustors/Guarantors</u> (*i.e.*, Accipiter and Vermillion) "specified [it] in written instructions." *See* JX 3 § 3.14; JX 25 § 3.14. According to Defendants' May 8, 2020 Termination Notice, that is exactly what Accipiter and Vermillion did, prompting the Lessors to cite Frontier's alleged outstanding rent payments under the Original Leases, to claim that Frontier breached the MSN 10038 Lease, thus justifying Defendants to terminate the Framework Agreement under cross-default provisions that tie all of these agreements together. Order at 23. The Court remains correct—and Defendants remain wrong—that the Guaranties should not be segregated from the documents and performance that they guarantee.

4

022510.0155/9816266.2

Third, the Court's Summary Judgment Order does not change the analysis. In that Order, the Court dismissed Frontier's claim for breach of the underlying Lease Agreements. The Court determined there was no breach *of those agreements* by virtue of Defendants improperly declaring a default, and thus no related breach of the Guaranties for *this cause of action*. But that discussion is inapposite to the present Motion. In the Summary Judgment Order itself, the Court confines this discussion to only that one claim. In contrast, the Court allowed the breach of contract claim regarding the Framework Agreement to survive—which Frontier prevailed on at trial—and held there was sufficient evidence to read all the related contracts (including the Guaranties) as one with the Framework Agreement. MSJ Order (Dkt. 123) at 27-30. Indeed, the Court expressly considered Defendants current argument in the Summary Judgment Order—that "Accipiter and Vermillion only guaranteed the due and punctual performance of the Lessors' (UMB and Wells Fargo) obligations under each of the Lease Agreements, not the Framework Agreement," *id.* at 28—and determined all the contracts could still be read together. To the extent there was any uncertainty in this interlocutory order, it was clarified in the Court's Opinion and Order following the nearly two-week trial, which held that "Accipiter and Vermillion's related contracts should be read as one with the Framework Agreement." Order at 22. There is no carveout for the Guaranties.

**B.      Frontier is Entitled to All of its Reasonable Attorney's Fees and Costs.**

Defendants try to fraction off the fees Frontier spent related to Guaranties that were signed by Defendants' affiliate Accipiter Holdings DAC. Defendants are wrong.

To improperly abandon their obligations under the Framework Agreement, Defendants claimed that Frontier failed to timely pay rent on *all* of the Original Leases, any of which would trigger an event of default under the MSN 10038 Lease, allowing Defendants to declare an event of default under the Framework Agreement. *See* JX 146. To meaningfully prevail on a claim for breach of the Framework Agreement, Frontier needed to succeed in establishing that it timely paid

5

rent on all 15 Leases. Undoubtedly, had Frontier made this showing for only some of the Leases, Defendants would claim they were still entitled to abandon the Framework Agreement.

It is a related and well accepted principle that a prevailing party can obtain their attorney's fees *even for unsuccessful claims* when those claims are "intertwined" with successful ones. *See Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999)). To be intertwined, the claims must "involve a common core of facts" or be "based on related legal theories." *Id.*

As discussed above, the Court already determined that the 15 Lease Agreements and their related Guaranties "should be read as one" in part because that is exactly how Defendants treated them when abandoning the Framework Agreement. At trial, Frontier succeeded—as it needed to—in proving that Defendants improperly claimed non-payments under all 15 Lease Agreements. Establishing this for all 15 Lease Agreements involved "a common core of facts" and was based on the exact same legal theory of waiver. No severable fees were spent on the nine Leases (or Guaranties) that were signed by non-party Accipiter Holdings DAC, who is an affiliate of AMCK, the owner of Accipiter, and the direct parent of Vermillion. *See* 2024.4.16 Trial Tr. (Dkt. 166) at 663:23–664:25; *cf. Green*, 361 F.3d at 98 (explaining that attorney's fees may be excluded when "spent on severable unsuccessful claims"). To that end, Defendants' request that the Court hold further proceedings to determine the amount of attorney's fees incurred in connection with the six Accipiter and Vermillion Guaranties is legally unnecessary and practically impossible.

Likewise, even if AMCK is not a Guarantor, this does not mean that Frontier cannot recover its full fees, costs, and expenses. Rather, it means only that the full amounts should come from Accipiter and Vermillion—the parties who needed to "specif[y] in written instructions" that Defendants declare the defaults necessary to abandon the Framework Agreement.

022510.0155/9816266.2

### C. Additional Reasonable Fees and Costs.

In connection with filing this Reply, Frontier has incurred $9,502.35 in additional attorney's fees at rates similar to those discussed in Frontier's underlying Motion and Hosenpud Declaration. *See* Mot. at 8–16; Hosenpud Decl. (Dkt. 179) ¶ 4, Exs. 2–3. These amounts are detailed in the Supplemental Hosenpud Declaration. (Supp. Hosenpud Decl.) ¶ 3, Ex. 15. Further, Frontier now adds the $600.00 cost for the 2023 Wolters Kluwer *Real Rate Report* that it cited and relied upon in the underlying Motion, but did not yet include in its cost request. Mot. at 11; Supp. Hosenpud Decl. ¶ 3, Ex. 15. For all the reasons explained in the Motion, these additional fees and costs are reasonable and should be awarded in full. With these additions, Frontier's total fees, costs, and expenses equal $2,591,829.44. *Id.*; *see also* Hosenpud Decl., Exs. 1–14.

### III. CONCLUSION

The Court should decline Defendants' request to overturn the underlying Opinion and Order that found that all the contracts should be read as one and that Defendants owe Frontier its reasonable attorney's fees, costs, and expenses in connection with successfully prosecuting Defendants' breach of these contracts. Because Frontier's fees and costs are reasonable—a point Defendants do not contest—the Court should award the requested amount of $2,591,829.44 in full.

DATED: July 22, 2024

                            **LANE POWELL PC**

By: s/ David G. Hosenpud
   David G. Hosenpud (*pro hac vice*)
   601 SW Second Avenue, Suite 2100
   Portland, Oregon 97204-3158
   Telephone No.: 503.778.2100
   Facsimile No.: 503.778.2200
   E-mail: hosenpudd@lanepowell.com

   Aaron Schaer, (*pro hac vice*)
   1420 Fifth Avenue, Suite 4200
   P.O. Box 91302
   Seattle, WA 98111-9402
   Telephone: 206.223.7103
   Facsimile: 206.223.7107
   E-mail: schaera@lanepowell.com

   -and-

**BINDER & SCHWARTZ LLP**
Neil S. Binder
675 Third Avenue, 26th Floor
New York, New York 10017
Telephone No.: 212.510.7008
Facsimile No.: 212.510.7299
E-mail: nbinder@binderschwartz.com

*Attorneys for Plaintiff, Frontier Airlines, Inc.*