UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTIER AIRLINES, INC.              Case No.:  1:20-cv-09713-LLS

        Plaintiff,

   v.

AMCK AVIATION HOLDINGS IRELAND
LIMITED, ACCIPITER INVESTMENT 4
LIMITED, VERMILLION AVIATION
(TWO) LIMITED, WELLS FARGO TRUST
COMPANY, N.A., solely in its capacity as
OWNER TRUSTEE, and UMB BANK,
N.A., solely in its capacity as OWNER
TRUSTEE,

        Defendants.

**PLAINTIFF FRONTIER AIRLINES, INC.'S OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW**

## I. INTRODUCTION

The Court correctly held that "the plain meaning of the unambiguous text" in the parties' contracts does not require waivers to be in writing. *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 681 F. Supp. 3d 81, 96–97 (S.D.N.Y. 2023). Over one year later, Defendants improperly attempt to relitigate the same legal theory without any new evidence. That is improper under Federal Rule of Civil Procedure 52(b). More to the point, there were no manifest errors of law or fact in the Court's holding. Indeed, Defendants do not even cite this standard, let alone allege they have met it. The Court's reading of the parties' contracts accords with well-established principles, and additional ones are available that would allow the Court to reach the same result. For all these reasons, the Court should deny Defendants' Motion for Judgment as a Matter of Law.

## II. DISCUSSION

### A. Defendants' Motion is Improper Under Rule 52(b).

"The purpose of post-judgment motions under Rule 52(b) is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." *United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993). Rule 52(b) motions are "not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories." *Wallace v. Brown*, 485 F. Supp. 77, 78 (S.D.N.Y. 1979) (citation omitted); *see also Berry v. Sturtz*, 40 F. App'x 647, 647–48 (2d. Cir. 2002).

> The primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and the judgment entered thereon. A party who failed to prove his strongest case is not entitled to a second opportunity to litigate a point, to present evidence that was available but not previously offered, or to advance new theories by moving to amend a particular finding of fact or a conclusion of law.

9C Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Civ.* § 2582 (3d ed. 2024).

Defendants present no new evidence with their Motion. Rather, they relitigate old arguments with a slightly new veneer, which was always available but never before offered. Defendants' Motion therefore is improper under Rule 52(b).

The thrust of Defendants' Motion is to reargue their preferred reading of Section 8.4.1 of the Framework Agreement and Section 20.4(a) of the Lease Agreements. Those sections state:

> The rights of both parties under this Agreement are cumulative, may be exercised as often as the relevant party considers appropriate and are in addition to its rights under the general law. The rights of both parties against the other or in relation to the Aircraft (whether arising under this Agreement or the general law) shall not be capable of being waived or varied otherwise than by an express waiver or variation in writing; and in particular any failure to exercise or any delay in exercising any such rights shall not operate as a waiver or variation of that or any other such right; any defective or partial exercise of any of such rights shall not preclude any other or further exercise of that or any other such right; and no act or course of conduct or negotiation on the part of such party or on its behalf shall in any way preclude it from exercising any such right or constitute a suspension or any variation of any such right.

JX 24 § 8.4.1; JX 2 § 20.4(a). Defendants argue that the phrase "express waiver or variation in writing," means that "in writing" applies to both waivers and variations. Putting aside the merits of that reading for a moment, *see infra* § II.B, the parties addressed this argument head-on in summary judgment briefing. Analyzing these same provisions, Defendants asserted in their opening brief that "[t]he Framework Agreement expressly provides that its terms can be amended or waived only in writing." MSJ (Dkt. 97) at 3–4, 12, 16. In response, Frontier argued that "[a]n 'express waiver' does not need to be in writing." MSJ Opp. (Dkt. 105) at 25–26. Defendants replied, *inter alia*, that "Section 8.4.1 treats waivers and variations in the same way, and requires that they be both express and in writing." MSJ Reply (Dkt. 119) at 8. With the benefit of this briefing, as well as five witness declarations and well over 100 exhibits, *see* Dkts. 94–96, 107–10,

the Court held that waivers did not need to be in writing. Rule 52(b) does not allow Defendants to relitigate their unsuccessful argument. *Wallace*, 485 F. Supp. at 78.

Defendants also retry the argument from new angles. In particular, Defendants claim that waivers and variations are actually the same thing and that the Court's prior holding impermissibly allows for "implied" variations in writing. Mot. (Dkt. 182) at 3–4. Again, before addressing the merits, *see infra* § II.B, these claims should be rejected because: (1) they merely repackage the same argument the Court already considered—*i.e.*, that waivers must be in writing; and/or (2) they are new legal theories, based on no new evidence, that were always available to Defendants but never before offered. Under either circumstance, the tactic is improper under Rule 52(b).

**B.     The Court Correctly Interpreted the Contracts.**

The Court's holding on summary judgment—"Giving life to the plain meaning of the unambiguous text, the Court finds that the written requirement is limited to variations"—is correct. *Frontier*, 681 F. Supp. 3d at 96–97. The Court also correctly relied on New York law that explains waivers do not need to be in writing. *Frontier*, 681 F. Supp. 3d at 96–97 (citing *Fund. Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (N.Y. 2006)).

Although not cited in the Court's Summary Judgment Order, this holding is consistent with the last antecedent rule. This well-established rule applies to both statutory construction, *see T-Mobile Ne., LLC v. DeBellis*, 32 N.Y.3d 594, 608 (N.Y. 2018), and contract interpretation, *see In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 321–22 (S.D.N.Y. 2008); *Taylor v. Prudential Ins. Co. of Am.*, 253 N.Y.S. 55, 59–61 (Sup. Ct. 1931). Under the last antecedent rule, "[r]elative and qualifying words or clauses in a statute are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to others more remote." *T-Mobile*, 32 N.Y.3d at 608; *see also Lockhart v. United States*, 577 U.S. 347, 351–52 (2016). Put another way, "where no contrary intention appears, a limiting clause or phrase should ordinarily be read as modifying

4

only the noun or phrase that it immediately follows." *In re Enron*, 380 B.R. at 319 (citing 2A Norman J. Singer, *Sutherland Statutes & Statutory Construction* § 47:33 (7th ed. 2007)). "[I]n line with the maxim that contract language is to be interpreted pursuant to the plain, ordinary and usual meaning of the words used, a court should apply settled rules of grammatical construction unless it clearly appears that the parties intended otherwise." *Id.* (internal citation omitted).

Applying this rule to the phrase Defendants dispute—"express waiver or variation in writing"—supports that "in writing" (the limiting clause) applies only to "variation" (the noun immediately preceding it), and not to waiver (a more remote noun separated by "or"). Neither the parties nor the contracts evinced a clear intent to discard this rule.

Defendants do not address this rule, or any contract interpretation principle for that matter. Instead, Defendants argue that because the term "variation" is undefined in the contracts, it must mean the same thing as "waiver." Mot. at 3–4. Defendants cite no case to support this confluence. Further, it violates another fundamental contract interpretation principle: "the court may not read the agreement to make any of its terms meaningless, or construe its language to render particular provisions 'mere surplusage.'" *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) (quoting *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (N.Y. 2001)).

Defendants' reading is also inconsistent with the plain—and distinct—meaning of the terms: Waiver means the "relinquishment of a known [contract] right." *Randolph Equities, LLC v. Carbon Cap., Inc.*, 648 F. Supp. 2d 507, 516 (S.D.N.Y. 2009). Although "variation" does not have a singular definition in caselaw, the first definition of "vary" in Black's Law Dictionary is "To change in some usu. small way; to make somewhat different <by editing the contract, he varied its standard terms>." *Vary*, BLACK'S LAW DICTIONARY (12th ed. 2024). In other words, a waiver abandons a right (*e.g.*, Defendants did not require Frontier to pay the monthly rent required in the

5

Original Leases while the parties worked toward a formal deal), whereas a variation changes the right (*e.g.*, Frontier would need to pay rent at a different rate than provided in the Original Leases). These are distinct concepts.

It is likewise not surprising that the parties agreed that waivers could occur orally but variations must be in writing. Similar to our case, waivers often provide temporary relief in times of unforeseen but immediate need, and may need to be less formal. When the need or time for the waiver is over, the parties' revert to their unaltered contract. Variations, on the other hand, denote a more permanent change to the contract, *see Vary*, BLACK'S LAW DICTIONARY (12th ed. 2024)—one that should be codified in writing to ensure it is available for the life of the contract, which could span multiple decision-makers. In short, "waiver" and "variation" are meaningfully different terms, and it makes perfect sense for the parties to treat them as such as they did here.

Defendants' other "new" argument is that by reading "express waiver" separately from "variation in writing," it means a variation *created* by a writing can be "implied." Defendants assert this poses a possible hypothetical conflict with the contracts' prohibition against *creating* waivers or variations through "act or course of conduct or negotiation." This argument is nonsense and easily dispatched.

First, Defendants' argument relies on grafting the word "implied" into the contracts. To do this, Defendants violate yet another fundamental contract interpretation principle—this time selectively altering the text. *See Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157, 468 N.Y.S.2d 649, 654 (1983) ("It is fundamental that courts enforce contracts and do not rewrite them. . . . The courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (internal citations and quotations omitted)). The Court should reject this attempt.

6

022510.0155/9824248.2

Second, even with this contractual edit, Defendants' argument is wrong because it rests on misreading of the contracts. In particular, through a sleight of hand, Defendants conflate *creating* a variation through act or conduct (which the contracts do not allow) with *interpreting* an ambiguous variation through act or conduct (which is permissible). Mot. at 3; *see also id.* (arguing "implied" should be read as synonymous with "ambiguous"). "It is hornbook law that where there is ambiguity in a contract the intent of the parties may be ascertained by reference to their subsequent course of conduct." *Factors Etc., Inc. v. Creative Card Co.*, 444 F. Supp. 279, 281–82 (S.D.N.Y. 1977). Thus, were the parties to create an "ambiguous/implied variation" in writing, there would be no issue considering their acts or conduct to interpret the written variation. The Court has already recognized that this principle applies in this case. *See* Order (Dkt. 170) at 21 ("While the Framework Agreement forbids looking at course of conduct for the creation of a waiver, the parties' actions after April 7 help to confirm Dempsey's account that a waiver was made on that phone call.").

However, even if the Court read the contracts as Defendants incorrectly suggest to say that acts and conduct cannot even be used to *interpret* ambiguous written terms, there is still no issue. The Court would simply utilize the many other available tools to interpret an ambiguous writing. Either way, there is no inconsistency as the Court concluded: waivers must be express, variations must be in writing, and neither can be *created* by acts or conduct.

Finally, the actual text in the contracts—consistent with the Court's interpretation—already cures Defendants' strawman. Using "express" to qualify "waiver" helpfully clarifies that the contracts do not allow for waivers to be created by conduct, which is an otherwise permissible ground to establish waiver. *Dice v. Inwood Hills Condo.*, 237 A.D.2d 403, 404 (App. Div. 2d Dep't 1997) (explaining that waiver can occur "by express agreement or by such conduct or failure to

7

act as to evince an intent not to claim the purported advantage"). Qualifying "variation" with "in writing" serves this same purpose, and actually dispels Defendants' concern with "implied" variations. New York recognizes "implied in fact" contracts, which "may result as an inference from the facts and circumstances of the case, although not formally stated in words, and [are] derived from the 'presumed' intention of the parties as indicated by their conduct." *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503 (N.Y. 1975) (citations omitted); *Parsa v. State*, 64 N.Y.2d 143, 148 (N.Y. 1984) (an implied-in-fact contract "rests upon the conduct of the parties and not their verbal or written words"). By stating that all variations must be in writing, however, the contracts underscore that there can be no "implied" variations—as that term is understood in contract law—because those are created through conduct.

### III. CONCLUSION

Defendants misuse Rule 52(b), ignore numerous fundamental contract interpretation principles, and misread the plain (and invented) language of the contracts to assert the same argument the Court rejected more than a year ago. The Court remains correct that the contracts do not require waivers to be in writing. For all these reasons, the Court should deny Defendants' Motion in full.

DATED:  July 26, 2024

**LANE POWELL PC**

By: s/ David G. Hosenpud
David G. Hosenpud (*pro hac vice*)
601 SW Second Avenue, Suite 2100
Portland, Oregon  97204-3158
Telephone No.:  503.778.2100
Facsimile No.:  503.778.2200
E-mail:  hosenpudd@lanepowell.com

Aaron Schaer, (*pro hac vice*)
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
Telephone:  206.223.7103
Facsimile:  206.223.7107
E-mail:  schaera@lanepowell.com

-and-

**BINDER & SCHWARTZ LLP**
Neil S. Binder
675 Third Avenue, 26th Floor
New York, New York  10017
Telephone No.:  212.510.7008
Facsimile No.:  212.510.7299
E-mail:  nbinder@binderschwartz.com

*Attorneys for Plaintiff, Frontier Airlines, Inc.*

022510.0155/9824248.2