UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRONTIER AIRLINES, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>AMCK AVIATION HOLDINGS IRELAND LIMITED, ACCIPITER INVESTMENT 4 LIMITED, VERMILLION AVIATION (TWO) LIMITED, WELLS FARGO TRUST COMPANY, N.A., solely in its capacity as OWNER TRUSTEE, and UMB BANK, N.A., solely in its capacity as OWNER TRUSTEE,<br><br>                    Defendants. | 20 Civ. 9713 (LLS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants AMCK Aviation Holdings Ireland Limited ("AMCK"), Accipiter Investments Aircraft 4 Limited ("Accipiter") and Vermillion Aviation (Two) Limited ("Vermillion") submit this Reply Memorandum of Law in support of their Motion for Judgment as a Matter of Law.

**Argument**

Frontier argues that Defendants' motion is procedurally improper because the Court already ruled on the contract interpretation issues in the summary judgment decision. (Opp. at 3–4.)  However, Frontier ignores the Second Circuit's decision in *Omega SA v. 375 Canal, LLC*, 984 F.3d 244 (2d Cir. 2021).  As explained in the opening brief (*see* Mem. at 2), *Omega* appears to require raising an issue decided on summary judgment again on a Rule 52 motion to preserve it for appeal.  *See* 984 F.3d at 252.  Defendants' motion is therefore not only proper, but procedurally required, under current Second Circuit authority.

On the merits, Frontier argues principally that its preferred contract interpretation is required by the "last antecedent rule" of construction. Specifically, Frontier contends that the phrase "in writing" must refer only to a "variation," and not to a "waiver," because "variation" is the immediately preceding noun. (*See* Opp. at 4–5.) This argument should be rejected.

As an initial matter, canons of construction are to be used only as guidelines. *See Bazdaric v. Almah Partners LLC*, 41 N.Y.3d 310, 319 (2024) (noting that "canons of construction need not be conclusive" and "should not be abused as talismanic" (internal quotation marks omitted)). This is true of the last antecedent rule. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 (2021) (noting that the "rule of the last antecedent is context dependent" and the Court sometimes has "declined to apply" it); *Borenstein v. Comm'r of Internal Revenue*, 919 F.3d 746, 750 (2d Cir. 2019) (explaining that the rule "is not an absolute and can assuredly be overcome by other indicia of meaning" (internal quotation marks omitted)).

In addition, Frontier glosses over the fact that—even under the last antecedent rule—a limiting clause sometimes should be read to apply not just to the immediately preceding *noun*, but also to the immediately preceding *phrase*. *See Borenstein*, 919 F.3d at 750 ("[A] limiting clause or phrase should ordinarily be read as modifying only the noun *or phrase* that it immediately follows." (emphasis in original; internal quotation marks omitted)). Consistent with this, other principles of interpretation sometimes require applying a modifier to more than the last antecedent word when that is the most natural reading. *See, e.g., Facebook*, 592 U.S. at 402–03 ("Under conventional rules of grammar, when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." (internal quotation marks omitted)); *Paroline v. United States*, 572 U.S. 434, 447 (2014) ("'When several words are followed by a clause which is applicable as

much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" (quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920))).

Here, Frontier insists that the limiting clause ("in writing") should apply only to the immediately preceding noun ("variation") and not to the immediately preceding phrase ("waiver or variation"). This misapplies the principles discussed above. It is just as natural to read the "in writing" modifier as applying to a waiver as to a variation. Indeed, parties often agree that waivers must be in writing and so it should be no surprise that they did so here. *See Paramount Leasehold, L.P. v. 43rd St. Deli, Inc.*, 136 A.D.3d 563, 569 (1st Dep't 2016) ("[A] nonbreaching party should not have to litigate the issue based only on the breaching party's unsupported and uncorroborated representation that it orally waived a provision. This is the very reason why many contracts require waivers to be in writing."). The last antecedent rule therefore should not be applied in the simplistic way proposed by Frontier. *See Borenstein*, 919 F.3d at 750 (applying a modifier to the full phrase preceding it was "at least as plausible" as not, and therefore relying on other interpretive tools to determine the contract meaning).

At a minimum, the Court should have found the contract language to be ambiguous. In that scenario, extrinsic evidence would have clarified the ambiguity by showing that industry custom and the parties' course of dealing was to document waivers in writing.

Finally, Frontier contends that waivers and variations should be treated as logically distinct terms. Frontier acknowledges, however, that the term "variation" is not defined and does not have "a singular definition in caselaw." (Opp. at 5.) This implies that "variation" does not have a plain meaning that can be readily determined as a matter of law. Frontier argues that "a waiver abandons a right . . . whereas a variation changes the right." (Opp. at 6.) This semantic

distinction falls apart under scrutiny.  After all, almost any abandonment of a right (waiver) can be recharacterized as a change in a right (variation).  To use an example relevant to this case, an *abandonment* of the right to timely payment by AMCK is also a *change* to the payment schedule under a lease agreement.  For this reason, the terms "waiver" and "variation" should be viewed as fluid, overlapping terms, and not as clear and distinct legal concepts.

Notably, Frontier does not argue for the more logical distinction that a "waiver" can be unilateral whereas a "variation" is bilateral.  This may be because the evidence at trial showed that a bilateral "agreement" was discussed on the April 7 telephone call (*see* Dkt. No. 175, ("Amended Opinion & Order") at 9, 17), and that both sides expected the agreement to be set down in writing (*see, e.g.*, JX 73; JX 79).  The Court also found that the waiver was supported by consideration and that this meant that the supposed waiver actually "form[ed] a new contract or a binding modification of the original contract."  (Amended Opinion & Order at 13–14.)  These circumstances are more consistent with a bilateral variation than a unilateral waiver.

## Conclusion

For the foregoing reasons, Defendants' Motion for Judgment as a Matter of Law should be granted.

Dated: August 2, 2024

                                                  Respectfully submitted,

                                                   s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Giannina Crosby
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001
212-878-8000
jeff.butler@cliffordchance.com

*Attorneys for Defendants*